Jeffry A. Davis (SBN 103299)
Joseph R. Dunn (SBN 238069)
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Tel: 858 314-1500
Fax: 858 314-1501

Proposed Attorneys for Debtor
Blossom Valley Investors, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 09-57669 RLE |
| BLOSSOM VALLEY INVESTORS, INC., | Chapter 11 |
| Debtor. | **APPLICATION OF DEBTOR IN POSSESSION TO EMPLOY MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C. AS BANKRUPTCY COUNSEL PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a) AND 1107 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014; DECLARATION OF JEFFRY A. DAVIS** |
| | **[No Hearing Required]** |
| | Judge: Roger L. Efremsky |

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE ROGER L.

EFREMSKY, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR'S

20 LARGEST UNSECURED CREDITORS, AND OTHER PARTIES ENTITLED TO NOTICE:

Blossom Valley Investors, Inc., a California corporation, debtor and debtor in possession in

the above-captioned chapter 11 case ("Debtor" or "Blossom Valley"), hereby applies to the Court for

an order authorizing the employment of Mintz Levin Cohn Ferris Glovsky and Popeo, P.C. ("Mintz

Levin") as bankruptcy counsel. In support of its application, the Debtor respectfully represents:

# I.

## INTRODUCTION

Blossom Valley commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 10, 2009 (the "Petition Date").

Blossom Valley was formed to manage real estate development and is currently managing three residential real estate projects in the greater San Jose, California area. Messina Gardens is a townhome project comprised of 33 partially complete homes, 40 finished lots and 110 podium lots. Oak Knoll is a single-family home development comprised of 25 nearly finished lots. Grandview is a townhome project comprised of 36 nearly complete homes. Sales activity is active at Messina Gardens, and was active at Grandview until Pacific National Bank posted notices of its foreclosure sale at that project site.

Blossom Valley's chapter 11 filing was precipitated by an impending foreclosure of the Oak Knoll and Grandview projects by Pacific National Bank and the Debtor's desire to preserve the value of such projects for Blossom Valley's other secured and unsecured creditors and equity holders.

# II.

## RELIEF REQUESTED

The Debtor wishes to employ Mintz Levin as its bankruptcy counsel in connection with this case to render, among others, the following types of professional services:

A.    Advising the Debtor with regard to the requirements of the bankruptcy court, the Bankruptcy Code, the bankruptcy rules and the Office of the United States Trustee;

B.    Representing the Debtor in proceedings or hearings before this Court;

C.    Advising the Debtor with regard to rights and remedies of the bankruptcy estate and its duties as debtor in possession;

D.    Assisting the Debtor with the negotiation, documentation and any necessary Court approval of transactions disposing of property of the estate;

E.    Preparing and assisting the Debtor in the preparation of reports, applications, pleadings and orders including, but not limited to, applications to employ professionals, interim

statements and operating reports, initial filing requirements, schedules and statements of affairs, lease pleadings, cash collateral pleadings, financing, including with respect to the Debtor's use, sale or lease of property outside the ordinary course of business;

     F.     Assisting the Debtor in the negotiation, formulation, preparation, and confirmation of a plan or reorganization; and

     G.     Performing any other services which may be appropriate in Mintz Levin's representation of Debtor during its bankruptcy case.

## III.

## COMPENSATION

Mintz Levin began providing services to the Debtor and various related homebuilder entities approximately two months prior to the Petition Date when Mintz Levin was retained to represent approximately two dozen affiliated companies (the "Affiliated Companies") in workout negotiations with their secured creditors, including Pacific National Bank and Bank of the West. While those negotiations continue as to most of the Affiliated Companies, two companies, the Debtor and Pear Ave LLC were forced to file chapter 11 petitions to fend off imminent foreclosure. Given the inter-related nature of the businesses of the Debtor and the remainder of the Affiliated Companies, Mintz Levin seeks approval of this Court to represent the Debtor at the same time it continues its representation of the other Affiliated Companies, including Pear Ave LLC, some of which are creditors of the Debtor.

Before the filing of the chapter 11 petition, Mintz Levin received a retainer of $150,000 from the Debtor. The retainer is on deposit in a client trust segregated account and serves as a security retainer to secure the payment of Mintz Levin's allowed fees and expenses. Mintz Levin will bill its services on an hourly basis at its normal hourly billing rates. At this time, it is anticipated that the bulk of the services to be provided will be rendered by Jeffry A. Davis, a member, at an hourly rate of $615, and by Joseph R. Dunn, an associate, at an hourly rate of $420. These rates are consistent with the rates charged by professionals with similar experience and background. Mintz Levin will also seek reimbursement of costs at its usual and customary rates, which are consistent with those in

4718973v.1

this Court's Guidelines. A copy of the retention agreement between the Debtor and Mintz Levin is attached as **Exhibit 1** to the accompanying Declaration of Jeffry A. Davis.

### IV.

### MINTZ LEVIN IS DISINTERESTED

To the best of Debtor's knowledge, based upon the accompanying Declaration of Jeffry A. Davis, and except as otherwise set forth in such declaration, Mintz Levin and all of its attorneys comprising or employed by it are disinterested persons who do not hold or represent an interest adverse to the estate and do not have any connection either with the Debtor, its creditors, or any other party in interest or with their respective attorneys or accountants, or any judge of the United States Bankruptcy Court for the Northern District of California, the United States Trustee, or any person employed in the office of the United States Trustee. Mintz Levin is not and was not an investment banker for any outstanding security of the Debtor nor has Mintz Levin been, within three years before the Petition Date, an investment banker for the security of the Debtor, or an attorney for such investment banker in connection with the offer, sale or issuance of any security of the Debtor.

As set forth above, for approximately two months prior to the Petition Date, Mintz Levin has represented the Affiliated Companies in connection with negotiating with the lenders of such related entities, including two lenders of the Debtor, Pacific National Bank and Bank of the West. Mintz Levin represents Bank of the West in matters unrelated to the Debtor or any of the other Affiliated Companies, and has obtained written waivers of any conflicts of interest. Another of the Affiliated Companies, Pear Ave LLC, also filed a chapter 11 petition on September 10, 2009, and Mintz Levin represents that entity as well.

WHEREFORE, the Debtor prays that this Court enter its order authorizing it to employ Mintz Levin as its bankruptcy counsel on the terms set forth herein and in the Davis Declaration.

DATED: September 25, 2009     BLOSSOM VALLEY INVESTORS, INC.

By: _____

         Alan Pinn, President

-4-

4718973v.1

# DECLARATION OF JEFFRY A. DAVIS

I, Jeffry A. Davis, declare:

1.       I am a member of the law firm of Mintz Levin Cohn Ferris Glovsky and Popeo, P.C. ("Mintz Levin"), proposed bankruptcy counsel to the above-referenced Debtor and Debtor in Possession ("Debtor"), which filed a voluntary petition for relief under chapter 11 of title 11 United States Code on September 10, 2009 (the "Petition Date").

2.       Mintz Levin is an international law firm consisting of over 400 lawyers with offices in Boston, New York, Washington DC, London, Palo Alto, Los Angeles and San Diego. The majority of services to be rendered to the Debtor in this case will be rendered by members of the firm's bankruptcy, restructuring and commercial law group.

3.       I will oversee all the services to be rendered by Mintz Levin to the Debtor. I have over 27 years of experience representing parties in chapter 11 cases. Prior to joining Mintz Levin in January 2007, I was a partner at DLA Piper US LLP, and its predecessor firms Gray Cary Ware Freidenrich and Gray Cary Ames & Frye. I have represented numerous debtors in possession and have also served as counsel in chapter 11 cases to unsecured creditor committees, equity committees, lessee committees, chapter 11 and chapter 7 trustees, examiners, unsecured creditors, secured creditors and asset purchasers.

4.       Mintz Levin has agreed to represent the Debtor as debtor in possession and will render, as bankruptcy counsel, the following types of professional services, among others:

   a.       Advising the Debtor with regards to the requirements of the bankruptcy court, the Bankruptcy Code, the bankruptcy rules and the Office of the United States Trustee;

   b.       Representing the Debtor in proceedings or hearings before this Court;

   c.       Advising the Debtor with regard to rights and remedies of the bankruptcy estate and its duties as Debtor in Possession;

   d.       Assisting the Debtor with the negotiation, documentation and any necessary Court approval of transactions disposing of property of the estate;

   e.       Preparing and assisting the Debtor in the preparation of reports, applications, pleadings and orders including, but not limited to, applications to employ professionals, interim

4718973v.1

statements, and operating reports, initial filing requirements, schedules and statements of affairs, lease pleadings, cash collateral pleadings, financing, including with respect to the Debtors use, sale or lease of property outside the ordinary course of business;

       f.      Assisting the Debtor in the negotiation, formulation, preparation, and confirmation of a plan or reorganization; and

       g.      Performing any other services which may be appropriate in Mintz Levin's representation of Debtor during its bankruptcy case.

5.      Before the filing of the chapter 11 petition, Mintz Levin received a retainer of $150,000 from the Debtor. The retainer is on deposit in a client trust segregated account and serves as a security retainer to secure the payment of Mintz Levin's allowed fees and expenses. Mintz Levin will bill its services on an hourly basis at its normal hourly billing rates. At this time, it is anticipated that the bulk of the services to be provided will be rendered by Jeffry A. Davis, a member, at an hourly rate of $615, and by Joseph R. Dunn, an associate, at an hourly rate of $420. These rates are consistent with the rates charged by professionals with similar experience and background. Mintz Levin will also seek reimbursement of costs at its usual and customary rates, which are consistent with those in this Court's Guidelines. A copy of the retention agreement between the Debtor and Mintz Levin is attached hereto as **Exhibit 1** and incorporated herein by reference.

6.      Mintz Levin has reviewed its computer database to determine if it has any such connections with parties in interest. In addition, I have made inquiry of the members of the firm whether they have any knowledge of any relationship between the firm or themselves and any party of interest. As a result of such investigation, and to the best of my knowledge, and except as otherwise set forth below in paragraph 7, Mintz Levin and its attorneys are disinterested persons who do not hold or represent an interest adverse to the estate and do not have any connection with the Debtor, its officers, directors, or creditors, or any other party in interest in this case or with any respective attorneys or accountants, or with any judge of the United States Bankruptcy Court for the Northern District of California, the United States Trustee, or any person employed in the office of the United States Trustee.

Case: 09-57669   Doc# 18   Filed: 09/25/09   Entered: 09/25/09 17:50:50   Page 6 of 22

7. Mintz Levin has and continues to represent Bank of the West, a secured creditor of the Debtor, in matters unrelated to this case or any of the Affiliated Companies. The Debtor and Bank of the West have signed a waiver of conflicts of interest in connection with this representation and no individual professional at Mintz Levin representing Bank of the West will provide services to the Debtor and vice versa. Mintz Levin has not and will not represent Bank of the West in connection with the Debtor or this case.

8. The following supplemental disclosures are made with respect to Mintz Levin's disinterestedness in this case.

   a. Mintz Levin is not and was not a creditor, in equity security holder, or insider of the Debtor, except that Mintz Levin provided services to the Affiliated Companies, including the Debtor, for approximately two months prior to the filing of the chapter 11 petition in connection with negotiations with secured lenders, and is owed fees by the other Affiliates Companies.

   b. Mintz Levin is not and was not, within two years before the Petition Date, a director, officer or employee of the Debtor.

   c. Mintz Levin is not and was not an investment banker for any outstanding security of the Debtor. Mintz Levin has not been, within three years before the Petition Date, an investment banker for a security of the Debtor, or an attorney for such investment banker in connection with the offer, sale or issuance of any security of the Debtor.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 15, 2009, at San Diego, California.

_____
Jeffry A. Davis

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to

the within action. My business address is 3580 Carmel Mountain Road, Suite 300, San Diego,

California 92130. On September 25, 2009, I served the within document:

**APPLICATION OF DEBTOR IN POSSESSION TO EMPLOY MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C. AS BANKRUPTCY COUNSEL PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a) AND 1107 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014; DECLARATION OF JEFFRY A. DAVIS**

X     FIRST-CLASS MAIL: By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California, addressed as set forth below.

SEE ATTACHED SERVICE LIST

I am readily familiar with the firm's practice of collection and processing correspondence for

mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day

with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct. Executed on

September 25, 2009, at San Diego, California.

Diane Johnson

Case: 09-57669   Doc# 18   Filed: 09/25/09   Entered: 09/25/09 17:50:50   Page 8 of 22

## SERVICE LIST

Debtor
Blossom Valley Investors, Inc.
1475 Saratoga Avenue, Suite 250
San Jose, CA 95129

United States Trustee
Office of the U.S. Trustee / San Jose
U.S. Federal Bldg.
280 S. 1st Street, #268
San Jose, CA 95113-3004

20 Largest Creditors
A&K Quality Drywall Inc.
1430 Koll Circle, Suite 109
San Jose, CA 95112

A-1 Door and Building Solutions
4300 Jetway Court
North Highlands, CA 95660

Advanced Automatic Sprinkler
1947 San Ramon Valley Blvd.
San Ramon, CA 94583

Atlantic Concrete
P.O. Box 1772
Gilroy, CA 95021

Cloverleaf Construction Co.
16120 Caputo Drive, Suite F
Morgan Hill, CA 95037

Coast Building Products
P.O. Box 815
West Sacramento, CA 95691

Elegant Surfaces
551 Carnegie Street
Manteca, CA 95337

Galante Brothers
P.O. Box 41490
San Jose, CA 95160

Groundworks
2145 Elkins Way, Suite B
Brentwood, CA 94513

HMH Incorporated
P.O. Box 611510
San Jose, CA 95161

4718973v.1

JC Heating & Air Conditioning
455 Barrett Avenue, Suite A
Morgan Hill, CA 95037

Jim Henry Construction
Retaining Walls Company North
1525 Grand Avenue
San Marcos. CA 92078

Mike McCall
4749 Clayton Road
Concord. CA 94521

Nunes Electric
10486 Dougherty Avenue
Morgan Hill, CA 95037

Purcell Murray Builder Sales
P.O. Box 49281
San Jose. CA 95131

Quality Built
15330 Avenue of Science
San Diego, CA 92128

Residential Partners, L.P.
1425 Saratoga Avenue, Suite 250
San Jose. CA 95129

Robert MacLean
Design Inspirations
P.O. Box 23377
Pleasant Hill, CA 94523

Summit Plastering
4501 E. La Palma, Suite 200
Anaheim, CA 92807

Technibuilders Iron Inc.
1049 Felipe Avenue, Suite 250
San Jose, CA 95122

Terrasearch
6293 San Ignacio Avenue, Suite A
San Jose, CA 95119

West Cabinets
2459 Radley Court
Hayward, CA 94545

Special Notice
Bank of the West
James A. Tiemstra, Esq.
Tribune Tower
4089 Thirteenth Street, 15th Floor
Oakland, CA 94612-2605

-10-

| | |
|---|---|
| 1 | Special Notice<br>Pacific National Bank |
| 2 | Ellen A. Friedman, Esq.<br>Friedman Dumas & Springwater LLP<br>150 Spear Street, Suite 1600 |
| 3 | San Francisco, CA 94105 |
| 4 | Special Notice |
| 5 | Pacific National Bank<br>Joel Zeldin, Esq.<br>Shartsis Friese LLP |
| 6 | One Maritime Plaza, 18th Floor<br>San Francisco, CA 94111 |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

# EXHIBIT 1

# MINTZ LEVIN

3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
858 314-1500
858 314-1501 fax
www.mintz.com

Jeffry A. Davis | 858 314 1503 | jadavis@mintz.com

September 8, 2009

**ATTORNEY-CLIENT PRIVILEGED**

Alan Pinn, President
Blossom Valley Investors, Inc.
1475 Saratoga Avenue, Suite 250
San Jose, CA 95129

Re:     **Engagement of Mintz Levin as Legal Counsel**

Dear Mr. Pinn:

We are very pleased that Blossom Valley Investors, Inc. ("Company") has engaged Mintz Levin as its legal counsel, and we look forward to working with you as we commit ourselves to a successful and effective relationship.

This engagement letter and the enclosed engagement documents are intended to provide the Company and Mintz Levin the clarity and protection that a carefully articulated agreement provides. The engagement documents are a formal way to (1) ensure that our representation adheres to the rules of professional responsibility that all licensed attorneys are obligated to uphold, (2) describe the scope of Mintz Levin's obligations to clients and (3) delineate the terms of representation to which clients agree.

The nature of the Firm's engagement is represent the Company in connection with filing and prosecuting a voluntary chapter 11 case in the Northern District of California, including the filing of appropriate motions, adversary proceedings, plans of reorganization and other pleadings and papers, and to advise the company in connection therewith.

Mintz Levin has long placed client satisfaction as a paramount goal of its practice, and always has recognized that client satisfaction depends both on the quality of the Firm's legal work and, as important, on strong relationships built on mutual respect and good will. This engagement letter and the enclosed engagement documents are a direct reflection of that commitment.

Terms of the Mintz Levin Engagement. This engagement letter, together with the enclosed Engagement Memorandum to Mintz Levin Clients and the Firm's Billing, Disbursement and Expense Policies, both of which are incorporated herein by reference, describe the terms of Mintz Levin's engagement. Among other things, these documents explain the Firm's billing arrangements and procedures, discuss staffing, request an advance conflict of interest waiver and explain the respective responsibilities of Mintz Levin and our clients with regard to the Firm's engagement. Please read these enclosures carefully, and call me to discuss any questions that

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Alan Pinn, President
Blossom Valley Investors, Inc.
September 8, 2009
Page 2

you may have. Execution and return of the engagement letter to us will signify the Company's agreement to the provisions of this engagement letter, the Billing, Disbursement and Expense Policies and the Engagement Memorandum. **NOTWITHSTANDING ANYTHING IN THIS LETTER TO THE CONTRARY, THE RIGHT OF THE FIRM TO RECEIVE FEES AND REIMBURSEMENT OF EXPENSES SHALL BE SUBJECT TO APPLICATION TO AND ORDER OF THE BANKRUPTCY COURT.**

<u>Initial Payment to Mintz Levin</u>. Mintz Levin requires the payment of an advance retainer in the amount of $150,000 before the chapter 11 petition is filed. This amount must be wired to Mintz Levin's Client Trust Account and received prior to the filing of the petition. Once the petition is filed, the retainer will be held in Mintz Levin's Client Trust Account and only drawn upon to the extent Mintz Levin's fees and expenses are approved by the bankruptcy court.

In connection with the chapter 11 case, the Company agrees to comply with all court rules and the requirement of the Office of the United States Trustee. Further, the Company agrees to timely provide Mintz Levin with true and accurate information, including documents, as Mintz Levin deems necessary in connection with its representation of the Company. Any surplus after payment of approved fees and expenses shall be returned to the Company.

Mintz Levin is very pleased to have the opportunity for this representation, and we look forward to working with you. *Please call us with any questions about this letter or its enclosures. Unless you have questions or special instructions for us, we shall assume that you have reviewed this letter in full and accept all of the terms outlined in this letter and the enclosures.*

Please do not hesitate to contact me at any point throughout the engagement with any questions or uncertainties you wish to discuss. We very much appreciate the opportunity to represent Blossom Valley Investors, Inc.

*__Please return an executed copy of this letter to my attention, and thank you.__*

Sincerely,

Jeffry A. Davis

Attachments (3):  Duplicate engagement letter to be signed and returned to Mintz Levin;
                  Engagement Memorandum to Clients; and
                  Billing, Disbursement and Expense Policies

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Alan Pinn, President
Blossom Valley Investors, Inc.
September 8, 2009
Page 3

AGREED TO BY CLIENT

Blossom Valley Investors, Inc.

By:_____

Alan Pinn, President,
**duly-authorized** on behalf of
Blossom Valley Investors, Inc.
and its affiliates

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Alan Pinn, President
Blossom Valley Investors, Inc.
September 8, 2009
Page 4

## Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
### Wire Transfer Instructions
### Client IOLTA Funds - Non Interest Bearing

| | |
|---|---|
| **Bank Name:** | **Bank of America** |
| **Bank Address:** | **New York, NY** |
| **Bank Telephone No. :** | **617-434-4425** |
| **Bank Routing No. :** | **026009593** |
| **SWIFT Code:** | **BOFAUS3N** (for international wires only) |
| **Account No. :** | **000053466888** |
| **Account Name:** | **Mintz Levin Cohn Ferris Glovsky and Popeo, PC IOLTA Account** |
| **Reference:** | **Attorney name, client number, matter number** |
| **Contact Address:** | **Attn: Linda Shea One Financial Center Boston, MA 02111** |
| **Contact Telephone:** | **617-348-4817** |

**Please note: for ACH Credits, please use ABA # 011000138**

Questions regarding our account may be directed to George Cotton, at (617) 542-6000, ext. 504842. Our tax identification number is 04-2718459.

# ENGAGEMENT MEMORANDUM TO MINTZ LEVIN CLIENTS

Thank you for selecting Mintz Levin to represent you. This Engagement Memorandum and the enclosed engagement letter and statement of the Firm's billing policies describe the basis upon which the Firm will provide legal services. Please forgive the legalistic nature of these engagement documents, but we believe it important to discuss and agree upon the terms of the Firm's representation at the outset. Please contact your engagement attorney with any questions.

*1. The Scope of Mintz Levin's Engagement.* Mintz Levin's engagement is limited to representation of the Client named in the engagement letter (even if someone other than the Client is responsible for paying Mintz Levin). Thus, if the Client is a corporation, partnership, joint venture, trade association or other entity, Mintz Levin has not agreed to provide representation to or for constituents of the Client entity, such as directors, officers, members, partners, shareholders, subsidiaries, affiliates, employees, etc. of the Client. In addition, the Firm's engagement is limited to the matter(s) described in the Firm's engagement letter, and for any additional matters for which the Firm expressly agrees to provide representation.

*2. Responsibilities and Understandings.* Mintz Levin will keep Client reasonably informed of developments and respond promptly to Client inquiries. Any fee estimate the Firm might provide in connection with a matter necessarily is based on a number of uncertain factors. As a result, the Firm's bills will be determined in accordance with the Firm's billing policies and may vary from any estimates given (unless a fixed fee has been agreed upon in writing).

The Client agrees to determine whether any insurance coverage is or may be available concerning the subject matter of the engagement and provide notice to all insurers that may provide coverage. If an insurer or any third-party undertakes payment of any portion of the Firm's bills, however, the Firm and Client agree that the Client will remain responsible for payment of any amounts billed by Mintz Levin not paid by an insurer. Similarly, if the Client is awarded legal fees payable by another party, the Client remains responsible for payment of Mintz Levin fees billed even if the fees awarded to the Client are less than fees billed.

The Client also acknowledges that Mintz Levin has not provided the Client with any legal advice concerning the basis, terms and conditions of the Firm's engagement.

*3. Advance Consent and Waiver of Certain Current and Future Conflicts of Interest; Confidential Information.* Mintz Levin has hundreds of lawyers and other professionals in multiple cities providing legal services to thousands of clients in an array of practice areas. Many Mintz Levin clients interact with one another as competitors, suppliers, customers and otherwise. As a result, there will be legal matters in which Mintz Levin clients will be directly adverse to one another. In these circumstances, the Firm's ability to represent one Mintz Levin client in conflict with another Mintz Levin client is governed by applicable Rules of Professional Conduct, as may be modified by agreement between the Firm and our clients. Thus, whenever

ethically permissible and feasible, Mintz Levin seeks Client agreement to a limited waiver of certain actual or potential conflicts of interest enabling the Firm to provide legal services in as many Client matters as possible.

You acknowledge and agree that, to the extent permitted under applicable ethical guidelines, if Mintz Levin is not representing you as counsel in a particular matter the Firm can represent other clients directly adverse to you in that matter including, without limitation, in matters involving counseling, commercial negotiations, bankruptcy, reorganization, workouts and other similar matters, legislative proceedings, administrative proceedings and litigation. This advance waiver will be effective, however, only if each of the following conditions are met: (1) Mintz Levin has not received confidential information from you that is directly relevant to the matter and the matter is not substantially related to any current or past matter in which Mintz Levin represented you; and (2) Mintz Levin attorneys substantially involved in your representation will not be involved in the adverse matter. In addition, before Mintz Levin undertakes representation in any such matter the Firm will assess, on the basis of then-existing circumstances, whether the proposed adverse representation is within ethical boundaries. We will advise you of any such adverse representation as soon as allowed under applicable ethical guidelines.

4. **_Termination of the Firm's Engagement; Document Retention._** Mintz Levin's engagement by a client terminates when the Firm sends the last bill to the Client for the final matter that is the subject of an engagement. As a former Client, the Firm will not have any obligation to provide advice concerning legal matters related to the Firm's prior engagement(s).

At any time, Client has the right to terminate Mintz Levin's representation, subject to the continuing obligation to pay the Firm amounts for services rendered prior to termination. Upon termination, all previously billed time charges will be due and payable immediately, along with any new bills for time already spent on the representation, but not yet billed. Subject to applicable ethical guidelines, Mintz Levin reserves the right to charge the Client, and the Client agrees to pay, for all reasonable and necessary time charges and expenses incurred in assisting the Client in making a transition to new counsel, including without limitation duplication of file materials and transfer of those materials to the Client or at the Client's direction.

Subject to applicable ethical rules and legal requirements, the Firm reserves the right to withdraw, without objection by Client, from representation, upon reasonable notice and without material adverse effect on a Client (and only after obtaining any permission from any court or tribunal that may be required), while providing the Client with a reasonable opportunity to arrange for alternative counsel. Reasons for the Firm's withdrawal might include, without limitation, Client breach of any of the terms of the engagement letter, this Engagement Memorandum or the Firm's Billing, Disbursement and Expense Policies. In addition, if you object to an adverse representation involving a matter in which the conditions for a conflict

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

waiver set forth in Section 3 of this Engagement Memorandum have been met, you agree that Mintz Levin may elect to resign from your representation and transfer your representation to other counsel of your choice, and thereby resolve your objection. In those circumstances, you agree that you will continue to be bound by your advance consent and waiver of conflicts of interest without further objection or right to disqualify the Firm.

As to document retention, Mintz Levin reserves the right to destroy or otherwise dispose of materials in your Client file within a reasonable time after termination of an engagement. Thus, subject to ethical requirements and provisions of law applicable to Client documents, Mintz Levin will have no obligation to retain files relating to the Firm's engagement beyond a reasonable period of time sufficient to permit a Client to request documents from Mintz Levin.

We very much appreciate the opportunity to represent you. You have expressed confidence in Mintz Levin by retaining the Firm, and we will strive to provide you with outstanding service and value.

*January 2009*

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Alan Pinn, President
Blossom Valley Investors, Inc.
September 8, 2009
Page 8

# Mintz Levin's Billing, Disbursement And Expense Policies

### 1.    *Billing and Attorneys' Fees.*

Mintz Levin will bill you on the basis of the Firm's schedule of hourly rates in effect when the Firm renders services. Periodically, those rates are adjusted and the adjusted rates will be applicable to all pending and future engagements to take into account the increased experience of Firm attorneys, cost of living increases and increased overhead. Time charges for tasks for which Client will be billed include, without limitation, telephone conferences, meetings, internal office conferences, negotiations, review of files and documents sent or received, drafting, correspondence, memoranda, legal and fact research, depositions, court appearances and travel. Billing statements will be the product of the hours worked multiplied by the hourly rates for the attorneys and other professionals doing the work.

Mintz Levin's hourly rates for attorneys and other members of the professional staff are based on years of experience, specialization and level of professional attainment. Some aspects of the engagement will require a higher degree of expertise than other aspects. It is Mintz Levin's policy to assign and delegate responsibilities based upon the degree of experience and expertise required and the availability of attorneys with the relevant experience and expertise. The Client's engagement attorney will call on Firm attorneys, including shareholders or other members, or may use associates and paralegal assistants, to accomplish certain tasks more cost-effectively. Generally, current hourly rates for members of the Firm range from $460 - $750 per hour; hourly rates for associates range from $285 - $555 per hour; and hourly rates for paralegals are $190 - $275 per hour. The hourly rate of your supervising engagement attorney is $615 per hour.

In most circumstances, the Firm will render bills at least monthly and each invoice is due and payable upon Client receipt of that invoice. In the event that Mintz Levin does not receive full payment on an invoice within 30 days of the date shown on the invoice, payment on that invoice will be considered delinquent. If the Firm's invoices are not paid when due, further services may be withheld at Mintz Levin's discretion until overdue bills are paid or resolved, at which time the Firm may request security for payment of future bills and condition the rendering of additional services upon receipt of that security. Mintz Levin also will have the option to terminate an engagement upon reasonable notice if the Client does not pay bills promptly. Mintz Levin's Finance Department is generally charged with overseeing the status of our receivables, and Business Office personnel may contact Client directly about unpaid bills. Interest will be charged at the rate of 1% per month on delinquent payments (or such lesser rate as required by law), and the Client will be responsible for all costs of collection (including attorneys' fees whether or not such services were rendered by Mintz Levin attorneys) as may be allowed by law. Should you ever have any questions about a bill please contact your Mintz Levin engagement attorney promptly to discuss those questions.

If Mintz Levin is required to respond to a subpoena seeking production of Firm records relating to services that Mintz Levin performed for the Client, or if the Firm is required to testify by deposition or otherwise concerning such services, Mintz Levin will consult with the Client as to whether the Client wishes the Firm to supply the information requested or assert the attorney-client privilege to the extent available under applicable law. To the extent permitted under applicable ethical guidelines, by engaging Mintz Levin you agree to pay the Firm for hourly time charges and expense incurred in responding to such demands and in providing advice, if the Firm is able to do so, regarding a response to such subpoenas without regard to whether or not Mintz Levin continued to represent you when the subpoena was delivered. Such charges may include, without limitation, the time and expense incurred in searching for documents and for photocopying costs, reviewing documents, making objections, appearing at hearings and depositions and otherwise responding to issues raised by such document requests or testimony.

2. **_Disbursements and Expenses._** In addition to fees for legal services, our bills include charges for expenses incurred and other services rendered in connection with the services provided. The items for which we make separate charges include, without limitation, photocopying, printing of word processing documents (including documents received by email), facsimile services, conference calls, messenger and other delivery services, postage, travel-related expenses (*e.g.*, airfare and other transportation charges, mileage, lodging, etc.), food service, secretarial overtime (on weekdays before 9:00 a.m., during lunch hours, and after 5:00 p.m., and at all times on weekends) and document preparation and binding.

The charge for photocopying and printing of word processing documents is fifteen cents per page. The charges for outgoing facsimile transmissions are one dollar per page. There are no charges for incoming facsimile transmissions. The charge for overtime secretarial service is forty-five dollars per hour. Charges for non-legal staff services such as on-site document binding are priced to approximate the cost which would be incurred if outside services were used. For preparation of documents requiring desktop publishing techniques and for client-specific data base development, pricing arrangements will be established.

In addition, we make separate charges for the use of Lexis, Westlaw and other computerized commercial research database systems that provide enhanced access to a wide range of available resources and information. When applicable, we also charge for costs incurred for such items as filing fees, service of process, stenographers, transcripts, witness fees, experts, title examinations and other professional services and similar items.

Also, an engagement may make it appropriate to hire third-party service providers on behalf of Client. These services may include consulting or testifying experts, investigators, electronic litigation support (including the creation of appropriate databases), stenographers and others. With respect to costs incurred to third parties, our bills reflect the actual charge made by

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

the third party. Although Mintz Levin assumes responsibility for retaining appropriate service providers necessary for Client representation, we often request that the supplier of the goods or services bill the client directly. Exceptions to these direct billing arrangements may be made for reasons of client confidentiality, urgency or other reasons approved by the responsible attorney, and the Client shall be responsible for paying all fees, charges and expenses directly to those service providers even though the bills for those services may be directed initially by the provider to Mintz Levin. In these cases, it is the Firm's policy to request reimbursement from clients out of the normal billing cycle.

The Firm may ask you to provide funds in advance of any necessary disbursement. Should Mintz Levin choose to advance those charges as a matter of convenience, the Client will be responsible for reimbursing the Firm promptly for that payment after being billed for or informed of the charges.

*January 2009*

4709682v.1