1  Jeffry A. Davis (SBN 103299)
   Joseph R. Dunn (SBN 238069)
2  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   3580 Carmel Mountain Road, Suite 300
3  San Diego, CA 92130
   Tel:   858 314-1500
4  Fax:  858 314-1501

5  Proposed Attorneys for Debtor
   Blossom Valley Investors, Inc.
6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                           SAN JOSE DIVISION

11 | In re                              | Case No. 09-57669 RLE

12 | BLOSSOM VALLEY INVESTORS, INC.,    | Chapter 11

13 |              Debtor.               | **APPLICATION OF DEBTOR IN POSSESSION TO EMPLOY ODYSSEY CAPITAL GROUP, LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER PURSUANT TO BANKRUPTCY CODE SECTIONS 328(a) AND 1107 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014; DECLARATION OF MICHAEL BERGTHOLD**
14 |
15 |
16 |
17 |
18 |                                    | **[No Hearing Required]**
19 |                                    | Judge:      Roger L. Efremsky

20

21         TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE ROGER L.

22  EFREMSKY, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR'S

23  20 LARGEST UNSECURED CREDITORS, AND OTHER PARTIES ENTITLED TO NOTICE:

24         Blossom Valley Investors, Inc., a California corporation, debtor and debtor in possession in

25  the above-captioned chapter 11 case ("Debtor" or "Blossom Valley"), hereby applies to the Court for

26  an order authorizing the employment of Odyssey Capital Group, LLC ("Odyssey") as financial

27  advisor and investment banker pursuant to Bankruptcy Code sections 328(a) and 1107 and Federal

28

Rule of Bankruptcy Procedure 2014. In support of its application, the Debtor respectfully represents:

# I.

## INTRODUCTION

Blossom Valley commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 10, 2009 (the "Petition Date").

Blossom Valley was formed to manage real estate development and is currently managing three residential real estate projects in the greater San Jose, California area. Messina Gardens is a townhome project comprised of 33 partially complete homes, 40 finished lots and 110 podium lots. Oak Knoll is a single-family home development comprised of 25 nearly finished lots. Grandview is a townhome project comprised of 36 nearly complete homes. Sales activity is continuing at Messina Gardens, and was active at Grandview until Pacific National Bank posted notices of its foreclosure sale at that project site.

Blossom Valley's chapter 11 filing was precipitated by an impending foreclosure of the Oak Knoll and Grandview projects by Pacific National Bank and the Debtor's desire to preserve the value of such projects for Blossom Valley's other secured and unsecured creditors.

# II.

## RELIEF REQUESTED

The Debtor wishes to employ Odyssey as its financial advisor and investment banker in connection with this case to render, among others, the following types of professional services:

1.     Reviewing and analyzing the Debtor's business plans and financial projections prepared by the Debtor, including, but not limited to, testing assumptions and comparing those assumptions to historical Debtor and industry trends;

2.     Reviewing and analyzing the Debtor's liquidity position and assisting management in identifying areas and means to improve and preserve the Debtor's liquidity;

3.     Assisting in the determination of a capital structure for the Debtor;

4.     Assisting in the determination of a range of values for the Debtor on a going concern basis;

Case: 09-57669   Doc# 19   Filed: 09/25/09   Entered: 09/25/09 17:52:53   Page 2 of 22

5. Providing financial advice and assistance to the Debtor in developing and seeking approval of a Transaction involving a restructuring plan (as the same may be modified from time to time, a "Plan"), which may be a plan under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq.

6. Advising the Debtor on the terms of new securities to be offered pursuant to a Plan;

7. Providing financial advice and assistance to the Debtor in a Transaction constituting a sale;

8. Advising and assisting the Debtor in evaluating potential financings in connection with a Transaction, including debtor in possession and exit financing, if the Debtor pursues a restructuring;

9. Providing testimony, as necessary, with respect to matters which we have been engaged to advise Debtor, in any proceeding before the Bankruptcy Court; and

10. Being available to all members of the Debtor's executive team and board, either individually or in groups to assist them regarding the services to be provided.

### III.

### COMPENSATION

Odyssey began providing services to the Debtor and various related homebuilder and hotel management entities approximately five months prior to the Petition Date when Odyssey was retained to represent approximately two dozen affiliated companies (the "Affiliated Companies") in workout negotiations with their secured creditors, including Pacific National Bank and Bank of the West. While those negotiations continue as to most of the Affiliated Companies, two companies, the Debtor and Pear Ave LLC were forced to file chapter 11 petitions to fend off imminent foreclosure. Given the inter-related nature of the businesses of the Debtor and the remainder of the Affiliated Companies, Odyssey seeks approval of this Court to represent the Debtor at the same time it continues its representation of the other Affiliated Companies, including Pear Ave LLC, some of which are creditors of the Debtor.

Before the filing of the chapter 11 petition, Odyssey received a retainer of $50,000 from the Debtor. The retainer secures the payment of Odyssey's allowed fees and expenses. Odyssey will

Case 09-57669   Doc# 19   Filed: 09/25/09   Entered: 09/25/09 17:52:53   Page 3 of 22

1   bill its services on an hourly basis at its normal hourly billing rates. At this time, it is anticipated that
2   the bulk of the services to be provided will be rendered by Michael Bergthold, a managing director,
3   at an hourly rate of $425, and by Susan H. Snow, a managing director, at an hourly rate of $425.
4   The hourly billing rate for senior associates is $325 per hour. These rates are consistent with the
5   rates charged by professionals with similar experience and background. The Debtor will reimburse
6   Odyssey, on a monthly basis, for its travel and other reasonable out-of-pocket expenses. In addition,
7   the Debtor has agreed to indemnify Odyssey with respect to various claims as spelled out in the
8   Indemnification Provisions of the retention agreement between the Debtor and Odyssey. A copy of
9   the retention agreement between the Debtor and Odyssey, including the Indemnification Provisions,
10  is attached as **Exhibit 1** to the accompanying Declaration of Michael Bergthold.

11                                              **IV.**

12                              **ODYSSEY IS DISINTERESTED**

13          To the best of Debtor's knowledge, based upon the accompanying Declaration of Michael
14  Bergthold, and except as otherwise set forth in such declaration, Odyssey and all of its professionals
15  employed by it are disinterested persons who do not hold or represent an interest adverse to the
16  estate and do not have any connection either with the Debtor, its creditors, or any other party in
17  interest or with their respective attorneys or accountants, or any judge of the United States
18  Bankruptcy Court for the Northern District of California, the United States Trustee, or any person
19  employed in the office of the United States Trustee. Odyssey is not and was not an investment
20  banker for any outstanding security of the Debtor nor has Odyssey been, within three years before
21  the Petition Date, an investment banker for the security of the Debtor, or an attorney for such
22  investment banker in connection with the offer, sale or issuance of any security of the Debtor.

23          As set forth above, for approximately five months prior to the Petition Date, Odyssey has
24  served as financial advisor and investment banker for the Affiliated Companies in connection with,
25  *inter alia*, negotiating with the lenders, including two lenders of the Debtor, Pacific National Bank
26  and Bank of the West. Another of the Affiliated Companies, Pear Ave LLC, also filed a chapter 11
27  petition on September 10, 2009, and Odyssey serves as financial advisor and investment banker for
28  that entity as well.

1    WHEREFORE, the Debtor prays that this Court enter its order authorizing it to employ

2  Odyssey as its financial advisor on the terms set forth herein and in the Bergthold Declaration,

3  pursuant to Bankruptcy Code section 328(a).

4

5     DATED: September 25, 2009     BLOSSOM VALLEY INVESTORS, INC.

6

7                                     By: _____

8                                         Alan Pinn, President

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4722933v.1

-5-

## DECLARATION OF MICHAEL BERGTHOLD

I, Michael Bergthold, declare:

1. I am a managing director of Odyssey Capital Group, LLC ("Odyssey"), proposed financial advisor and investment banker to the above-referenced debtor and debtor in possession ("Debtor"), which filed a voluntary petition for relief under chapter 11 of title 11 United States Code on September 10, 2009 (the "Petition Date").

2. Odyssey is a lending financial advisory firm that specializes in handling distressed situations. Its managing directors have decades of experience in the financial sector where they have served as chief executive officers, chief financial officers, chief restructuring consultants, trustees, receivers and Tier 1 consultants.

3. I will oversee all the services to be rendered by Odyssey to the Debtor. I am familiar with the operations of the Debtor and its affiliates. I have held CFO and other senior executive roles at privately and publicly held companies. Industries served include financial services, real estate, transportation, childcare, IT services, and manufacturing. I have led numerous turnaround and restructuring assignments and have a deep understanding of the demands of distressed organizations through varied operating, administrative and consulting roles over the course of my 25-year professional career.

4. Odyssey has agreed to represent the Debtor as debtor in possession and will render, as financial advisor and investment banker, the following types of professional services, among others:

    a. Reviewing and analyzing the Debtor's business plans and financial projections prepared by the Debtor, including, but not limited to, testing assumptions and comparing those assumptions to historical Debtor and industry trends;

    b. Reviewing and analyzing the Debtor's liquidity position and assisting management in identifying areas and means to improve and preserve the Debtor's liquidity;

    c. Assisting in the determination of a capital structure for the Debtor;

    d. Assisting in the determination of a range of values for the Debtor on a going concern basis;

e.    Providing financial advice and assistance to the Debtor in developing and seeking approval of a Transaction involving a restructuring plan (as the same may be modified from time to time, a "Plan"), which may be a plan under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq.

f.    Advising the Debtor on the terms of new securities to be offered pursuant to a Plan;

g.    Providing financial advice and assistance to the Debtor in a Transaction constituting a sale;

h.    Advising and assisting the Debtor in evaluating potential financings in connection with a Transaction, including debtor in possession and exit financing, if the Debtor pursues a restructuring;

i.    Providing testimony, as necessary, with respect to matters which we have been engaged to advice you on in any proceeding before the Bankruptcy Court; and

j.    Being available to all members of the Debtor's executive team and board, either individually or in groups to assist them regarding the services to be provided.

5.    Before the filing of the chapter 11 petition, Odyssey received a retainer of $50,000 from the Debtor. The retainer secures the payment of Odyssey's allowed fees and expenses. Odyssey will bill its services on an hourly basis at its normal hourly billing rates. At this time, it is anticipated that the bulk of the services to be provided will be rendered by Michael Bergthold, a managing director, at an hourly rate of $425, and by Susan H. Snow, a managing director, at an hourly rate of $425. The hourly billing rate for senior associates is $325 per hour. These rates are consistent with the rates charged by professionals with similar experience and background. The Debtor is to reimburse Odyssey, on a monthly basis, for its travel and other reasonable out-of-pocket expenses. In addition, the Debtor has agreed to indemnify Odyssey with respect to various claims as spelled out in the Indemnification Provisions of the retention agreement between the Debtor and Odyssey. A copy of the retention agreement between the Debtor and Odyssey, including the Indemnification Provisions, is attached as **Exhibit 1** to the accompanying Declaration of Michael Bergthold.

SF:322935v.1

6.      Odyssey and its managing directors and other professionals are disinterested persons who do not hold or represent an interest adverse to the estate and do not have any connection with the Debtor, its officers, directors, or creditors, or any other party in interest in this case or with any respective attorneys or accountants, or with any judge of the United States Bankruptcy Court for the Northern District of California, the United States Trustee, or any person employed in the office of the United States Trustee.

7.      The following supplemental disclosures are made with respect to Odyssey's disinterestedness in this case.

   a.      Odyssey is not and was not a creditor, in equity security holder, or insider of the Debtor, except that Odyssey provided services to the Debtor and the Affiliated Companies for approximately five months prior to the filing of the chapter 11 petition in connection with negotiations with their secured lenders and other creditors

   b.      Odyssey is not and was not, within two years before the Petition Date, a director, officer or employee of the Debtor.

   c.      Odyssey is not and was not an investment banker for any outstanding security of the Debtor.  Odyssey has not been, within three years before the Petition Date, an investment banker for a security of the Debtor, or an attorney for such investment banker in connection with the offer, sale or issuance of any security of the Debtor.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September __, 2009, at San Diego, California.


Michael Bergthold

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 3580 Carmel Mountain Road, Suite 300, San Diego, California 92130. On September 25, 2009, I served the within document:

**APPLICATION OF DEBTOR IN POSSESSION TO EMPLOY ODYSSEY CAPITAL GROUP, LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER PURSUANT TO BANKRUPTCY CODE SECTIONS 328(a) AND 1107 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014; DECLARATION OF MICHAEL BERGTHOLD**

X     FIRST-CLASS MAIL: By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California, addressed as set forth below.

      ELECTRONIC MAIL: By sending such document by electronic mail on September 25, 2009.

SEE ATTACHED SERVICE LIST

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 25, 2009, at San Diego, California.

_____
Diane Johnson

Case: 09-57669   Doc# 19   Filed: 09/25/09   Entered: 09/25/09 17:52:53   Page 9 of 22

4722933v.1

**SERVICE LIST**

Debtor
Blossom Valley Investors, Inc.
1475 Saratoga Avenue, Suite 250
San Jose, CA 95129

United States Trustee
Office of the U.S. Trustee / San Jose
U.S. Federal Bldg.
280 S. 1st Street, #268
San Jose, CA 95113-3004

20 Largest Creditors
A&K Quality Drywall Inc.
1430 Koll Circle, Suite 109
San Jose, CA 95112

A-1 Door and Building Solutions
4300 Jetway Court
North Highlands, CA 95660

Advanced Automatic Sprinkler
1947 San Ramon Valley Blvd.
San Ramon, CA 94583

Atlantic Concrete
P.O. Box 1772
Gilroy, CA 95021

Cloverleaf Construction Co.
16120 Caputo Drive, Suite F
Morgan Hill, CA 95037

Coast Building Products
P.O. Box 815
West Sacramento, CA 95691

Elegant Surfaces
551 Carnegie Street
Manteca, CA 95337

Galante Brothers
P.O. Box 41490
San Jose, CA 95160

Groundworks
2145 Elkins Way, Suite B
Brentwood, CA 94513

HMH Incorporated
P.O. Box 611510
San Jose, CA 95161

4722933v.1

JC Heating & Air Conditioning
455 Barrett Avenue, Suite A
Morgan Hill, CA 95037

Jim Henry Construction
Retaining Walls Company North
1525 Grand Avenue
San Marcos. CA 92078

Mike McCall
4749 Clayton Road
Concord. CA 94521

Nunes Electric
10486 Dougherty Avenue
Morgan Hill, CA 95037

Purcell Murray Builder Sales
P.O. Box 49281
San Jose. CA 95131

Quality Built
15330 Avenue of Science
San Diego, CA 92128

Residential Partners, L.P.
1425 Saratoga Avenue, Suite 250
San Jose. CA 95129

Robert MacLean
Design Inspirations
P.O. Box 23377
Pleasant Hill, CA 94523

Summit Plastering
4501 E. La Palma, Suite 200
Anaheim, CA 92807

Technibuilders Iron Inc.
1049 Felipe Avenue, Suite 250
San Jose, CA 95122

Terrasearch
6293 San Ignacio Avenue, Suite A
San Jose, CA 95119

West Cabinets
2459 Radley Court
Hayward, CA 94545

Special Notice
Bank of the West
James A. Tiemstra, Esq.
Tribune Tower
4089 Thirteenth Street, 15th Floor
Oakland, CA 94612-2605

4722933v.1

| | |
|---|---|
| 1 | Special Notice<br>Pacific National Bank<br>Ellen A. Friedman, Esq. |
| 2 | Friedman Dumas & Springwater LLP<br>150 Spear Street, Suite 1600 |
| 3 | San Francisco, CA 94105 |
| 4 | Special Notice |
| 5 | Pacific National Bank<br>Joel Zeldin, Esq.<br>Shartsis Friese LLP |
| 6 | One Maritime Plaza, 18th Floor<br>San Francisco, CA 94111 |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

-12-

4722933v.1

# EXHIBIT 1



ODYSSEY
CAPITAL
GROUP, LLC

One Renaissance Square
Two North Central Avenue,
Suite 720, Phoenix, AZ 85004

August 6, 2009

Mr. Alan R. Pinn
Managing Member
Blossom Valley Investors, Inc.
1475 Saratoga Ave., #250
San Jose, CA 95129

Mr. Pinn:

This letter agreement confirms the terms under which Blossom Valley Investors, Inc. and its affiliates (the "Company") has engaged Odyssey Capital Group, LLC ("Odyssey") as its exclusive financial advisor and investment banker with respect to a possible Transaction (as defined below) and with respect to such other financial matters as to which the Company and Odyssey may agree in writing during the term of this engagement. For purposes hereof, the term "Company" includes, affiliates of the Company and any entity that the Company or its affiliates may form or invest in to consummate a Transaction, and any successor to or assignee of all or a portion of the assets and/or businesses of the Company, whether pursuant to a Plan or otherwise.

1.    Odyssey will perform the following services, in each case as requested by and at the direction of the Company:

   a.    to the extent feasible, familiarizing itself with the business, operations, properties, financial condition, secured and unsecured debt, and prospects of the Company;

   b.    reviewing and analyzing the Company's business plans and financial projection prepared by the Company, including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

   c.    reviewing and analyzing the Company's liquidity position and assist management in identifying areas and means to improve and preserve the Company's liquidity,

   d.    assisting in the determination of a capital structure for the Company;

   e.    assisting in the determination of a range of values for the Company on a going concern basis;

   f.    providing financial advice and assistance to the Company in developing and seeking approval of a Transaction involving a restructuring plan (as the same may be modified from time to time, a "Plan"), which may be a plan under chapter 11 of title, 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code");

g. advising the Company on the terms of new securities to be offered pursuant to a Plan;

h. providing financial advice and assistance to the Company in a Transaction constituting a sale;

i. advising and assisting the Company in evaluating potential financings by the Company in connection with a Transaction, including debtor-in-possession and exit financing, if the Company pursues a restructuring;

j. attending meetings of the Company's Executive Management team, and its Board;

k. providing testimony, as necessary, with respect to matters which we have been engaged to advise you on in any proceeding before the Bankruptcy Court; and

l. being available to all members of the Company's Executive Team and Board; either individually or in groups to assist them regarding the services to be provided in Paragraph 1, above.

For purposes of this agreement, the term "Transaction" shall mean any (a) recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement, refinancing, purchase, repurchase and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's debt securities and/or other indebtedness, obligations or liabilities (including partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including without limitation pursuant to a repurchase or an exchange transaction, a Plan or a solicitation of consents, waivers, acceptances or authorizations, and/or (b) the disposition to one or more third parties in one or a series of related transactions of (x) all or substantially all of the equity securities of the Company by the security holders of the Company or (y) all or substantially all of the assets or businesses of the Company or its subsidiaries, including without limitation through a sale or exchange of capital stock, options of assets; a lease of assets with or without a purchase option, a merger, consolidation or other business, combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction.

In rendering its services hereunder, Odyssey is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any transaction; although Directors are entitled to rely on Odyssey's advice. The Company agrees that Odyssey shall not have any obligation or responsibility to provide accounting, audit, management, tax or legal services and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any transaction. The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice. It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Odyssey to underwrite, place or purchase any financing or securities.

Odyssey will submit all requests for all reasonable and relevant information concerning the business, assets, operations, financial condition and prospects of the Company to the individual(s) identified by the and the Company shall make available to Odyssey all such information that Odyssey reasonably requests (including reports or studies prepared by strategic or financial advisors engaged by the Company) in connection with the services to be performed for the Company hereunder and shall provide Odyssey with reasonable access to the Company's officers, directors, employees, independent accountants and other advisors and agents as Odyssey shall deem appropriate. The Company represents that all information regarding the Company furnished by it or on its behalf at the Company's direction to Odyssey will be accurate and complete in all material respects. The Company recognizes and confirms that in performing its services hereunder, Odyssey will be using and relying on publicly available information and on data, material and other information furnished to Odyssey by the Company and other parties. It is understood that in performing under this engagement Odyssey may assume and rely upon the accuracy and completeness of, and is not assuming any responsibility for independent verification of, such publicly available information and the other information so furnished:

2.    Odyssey's compensation for services rendered under this agreement will consist of the following cash fees:

    a.    a retainer of $50,000 (the "Retainer"), due and payable upon execution of this agreement, to be applied by Odyssey upon consummation of a Transaction against the Completion Fee and any other unpaid fees or expenses at such time,

    b.    hourly financial advisory fees of $325 per hour for Senior Associates and $425 per hour for Managing Directors for each hour worked by such professionals in accordance with this engagement.

The Company acknowledges and agrees that the fees payable to Odyssey hereunder are reasonable. The Company and Odyssey acknowledge and agree that the hours worked, the results achieved and the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Odyssey have taken this into account in setting the fees hereunder.

3.    In addition to any fees payable by the Company to Odyssey hereunder, the Company shall reimburse Odyssey on a monthly basis for its travel and other reasonable out-of-pocket expenses (including all fees, disbursements and other charges of counsel to be retained by Odyssey, and of other consultants and advisors retained by Odyssey with the Company's consent) incurred in connection with, or arising out of Odyssey's activities under or contemplated by this engagement. Such reimbursements shall be made promptly upon submission by Odyssey of statements for such expenses.

4.    The Company agrees to indemnify Odyssey and certain related persons in accordance with the indemnification provisions ("Indemnification Provisions") attached to this agreement. Such Indemnification Provisions are an integral part of this agreement, and the terms thereof are incorporated by reference herein. Such Indemnification Provisions shall survive any termination or completion of Odyssey's engagement hereunder.

5.  The Company agrees that none of Odyssey, its affiliates or their respective directors, officers, members, managers, agents, employees and controlling persons, or any of their respective successors or assigns ("Covered Persons") shall have any liability to the Company or any person asserting claims on behalf of the Company or in the Company's Company or any person asserting claims on behalf of the Company or in the Company's right for or in connection with this engagement or any transactions or conduct in connection therewith except for losses, claims, damages, liabilities or expenses incurred by the Company which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of such Covered Person; provided, however, that in no event shall the Covered Persons' aggregate liability to the Company or any person asserting claims on behalf of the Company or in the Company's right exceed the fees Odyssey actually receives from the Company pursuant to its engagement hereunder, unless there is a final judicial determination of willful misconduct specified in this sentence.

This agreement and Odyssey's engagement hereunder may be terminated by the Company or Odyssey at any time, upon prior written notice thereof to the other party; provided, however, that (a) termination of Odyssey's engagement hereunder shall not affect the Company's continuing obligation to indemnify Odyssey and certain related persons as provided for in this agreement, and its continuing obligations and agreements under paragraphs 5 and 7 hereof, (b) notwithstanding any such termination, Odyssey shall be entitled to the full fees in the amounts and at the times provided for in paragraph 2 hereof and (c) any termination of Odyssey's engagement hereunder shall not affect the Company's obligation to reimburse expenses accruing prior to such termination to the extent provided in paragraph 3 hereof. Without limiting the foregoing, notwithstanding any termination of this Agreement, if within the six full months following the termination of this engagement, (x) any Transaction is consummated and/or a written commitment for a DIP Financing is obtained or (y)(1) an agreement in principle, definitive agreement or Plan to effect a Transaction is entered into and (2) concurrently therewith or at any, time thereafter, any such Transaction is consummated, then the full Completion Fee, payable in respect of such transactions shall be due and paid to Odyssey upon the closing of such Transaction, subject to the crediting provided for in paragraph 2 of this agreement.

6.  Odyssey has been retained under this agreement as an independent contractor with no fiduciary or agency relationship to the Company or to any other party. Unless otherwise specifically agreed in writing with respect to identified issues, the advice (oral or written) rendered by Odyssey pursuant to this agreement is intended solely for the benefit and use of the Board of Directors and management of the Company in considering the matters to which this agreement relates, and each of the Board of Directors and the Company agrees that such advice may not be relied upon by any other person or entity, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to Odyssey be made by the Directors or the Company without the prior written consent of Odyssey (provided that the Directors may use same in support of any legal defense or as required by law).

7.  This agreement shall be deemed to be made in California. This agreement and all controversies arising from or relating to performance of this agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California

without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law. The Company hereby irrevocably consents to personal jurisdiction in the Supreme Court of the State of California in Santa Clara County, Commercial Part, or any Federal court sitting in the District of California for the purposes of any suit, action or other proceeding arising out of this agreement or any of the agreements or transactions contemplated hereby, which is brought by or against the Company, hereby waives any objection to venue with respect thereto, and hereby agrees that all claims in respect of any such suit, action or proceeding shall be heard and determined in any such court, and that such courts shall have exclusive jurisdiction over any claims arising out of or relating to such agreements or transactions. The Company hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the Company at its address set forth above, such service to become effective ten (10) days after such mailing. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH ODYSSEY'S ENGAGEMENT IS HEREBY WAIVED.

8.  In the event of any controversy or claim arising out of or relating to this contract, or a breach thereof, the parties hereto shall consult and negotiate with each other and, recognizing their mutual interests, attempt to reach a satisfactory solution. If they do not reach settlement within a period of 60 days, then, upon notice by any party to the other(s), any unresolved controversy or claim shall be settled by arbitration administered under the then applicable rules of the American Arbitration Association. The place of the Arbitration shall be in San Jose, California.

9.  This agreement may be executed in counterparts, each of which together shall be considered a single document. This agreement shall be binding upon Odyssey and the Company and their respective successors and assigns. This agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, or any other person or entity not a party hereto other than (i) the indemnified persons referenced in the indemnification provisions attached hereto as Annex 1, (ii) the Directors and (iii) the Covered Persons referenced above.

10. In the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, the Company shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction over the chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of this agreement and Odyssey's retention by the Company under the terms of this agreement, and subject to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company shall supply Odyssey with a draft of such application and any proposed order authorizing Odyssey's retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order, as the case may be, to enable Odyssey and its counsel to review and comment thereon. Odyssey shall have no obligation to provide any services under this agreement in the

event that the Company becomes a debtor under the Bankruptcy Code unless Odyssey's retention under the terms of this agreement is approved under Section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to Odyssey in all respects. Odyssey acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Odyssey's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders. In the event that the Company becomes a debtor under the Bankruptcy Code and Odyssey's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Odyssey hereunder as promptly as practicable in accordance with the terms hereof. Prior to commencing a chapter 11 case, the Company shall pay all undisputed amounts theretofore due and payable to Odyssey in cash.

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement between Odyssey and the Company.

Very truly yours,

ODYSSEY CAPITAL GROUP, LLC

By: _____
Name: Michael G. Bergthold
Title: Managing Director

Accepted and Agreed to:

Blossom Valley Investors, Inc.

By: _____

Name: Alan R. Pinn

Title: _____

## Annex 1

## INDEMNIFICATION PROVISIONS

In connection with the engagement of Odyssey Capital Group, LLC ("Odyssey") as financial advisor to the Company, the Company hereby agrees to indemnify and hold harmless Odyssey and its affiliates, their respective directors, officers, members, managers, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "indemnified persons"), to the full extent lawful, from and against all losses, claims, damages, liabilities and expenses incurred by them which (A) are related to or arise out of (i) actions or alleged actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Company or (ii) actions or alleged actions taken or omitted to be taken by an indemnified person with the Company's consent or in conformity with the Company's actions or omissions or (B) are otherwise related to or arise out of Odyssey's activities under Odyssey's engagement. The Company will not be responsible, however, for any losses, claims, damages, liabilities or expenses pursuant to clause (B) of the preceding sentence which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of the person seeking indemnification hereunder. For purposes of these indemnification provisions, the term the "Company" has the meaning set forth in the engagement letter, dated as December 1, 2005, between Odyssey and the Company, and, of which these indemnification provisions are an integral part.

After receipt by an indemnified person of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure so to notify the Company will relieve the Company from any liability which the Company may have hereunder only if, and to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses, and will not in any event relieve the Company from any other obligation or liability that the Company may have to any indemnified person otherwise than under these indemnification provisions. If the Company so elects or is requested by such indemnified person, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Odyssey and the payment of the fees and disbursements of such counsel. In the event, however, such indemnified person reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an indemnified person and the Company, and such indemnified person reasonably concludes that there may be legal defenses available to it or other indemnified persons that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such indemnified person, in either case in a timely manner, then such indemnified person may employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for all indemnified persons in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the indemnified person will have the right to participate in such litigation and

to retain its own counsel at such indemnified person's own expense. The Company further agrees that it will not, without the prior written consent of Odyssey, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Odyssey or any other indemnified person is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Odyssey and each other indemnified person hereunder from all liability arising out of such clam, action, suit or proceeding.

The Company agrees that if any indemnification sought by an indemnified person pursuant to these indemnification provisions is held by a court to be unavailable for any reason other than as specified in the second sentence of the first paragraph of these indemnification provisions, then (whether or not Odyssey is the indemnified person), the Company, and Odyssey will contribute to the losses, claims, damages, liabilities and expenses for which such indemnification is held unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Odyssey, on the other hand, in connection with Odyssey's engagement referred to above, or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i), but also the relative fault of the Company, on the one hand, and Odyssey, on the other hand, as well as any other relevant equitable considerations; provided however, that in any event the aggregate contribution of all indemnified persons, including Odyssey, to all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder will not exceed the amount of fees actually received by Odyssey from the Company pursuant to Odyssey's engagement referred to above. It is agreed that it would not be just and equitable if contribution pursuant to this paragraph were determined by pro rata allocation or by any other method which does not take into account the considerations referred to in this paragraph.

The Company further agrees that it will promptly reimburse Odyssey and any other indemnified person hereunder for all expenses (including fees and disbursements of counsel) as they are incurred by Odyssey or such other indemnified person in connection with investigating, preparing for or defending, or providing evidence in, any pending or threatened action, claim, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Odyssey or any other indemnified person is a party) and in enforcing these indemnification provisions.

The Company's indemnity, contribution, reimbursement and other obligations under these indemnification provisions shall be in addition to any liability that the Company may otherwise have, at common law or otherwise, and shall be binding on the Company's successors and assigns.

Solely for purposes of enforcing these indemnification provisions, the Company hereby consents to personal jurisdiction, service and venue in any court in which any claim or proceeding which is subject to, or which may give rise to a claim for indemnification or contribution under, these indemnification provisions is brought against Odyssey or any other indemnified person.

These indemnification provisions shall apply to the above-mentioned engagement, activities relating to the engagement occurring prior to the date hereof, and any subsequent modification of or amendment to such engagement, and shall remain in full force and effect following the completion or termination of Odyssey's engagement.