1  Jeffry A. Davis (SBN 103299)
   Joseph R. Dunn (SBN 238069)
2  **MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
   3580 Carmel Mountain Road, Suite 300
3  San Diego, CA 92130
   Tel:   858 314-1500
4  Fax:   858 314-1501

5  Attorneys for Debtor in Possession
   Blossom Valley Investors, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 09-57669 RLE |
| BLOSSOM VALLEY INVESTORS, INC., | Chapter 11 |
| Debtor. | **NOTICE OF MOTION AND DEBTOR'S MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 361, 363 AND 364 FOR FINAL ORDER:** |
| | (1) **AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING ON SENIOR SECURED BASIS, USE CASH COLLATERAL, AND GRANT ADEQUATE PROTECTION REGARDING "MESSINA GARDENS" PROJECT;** |
| | (2) **AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING ON SENIOR SECURED BASIS, USE CASH COLLATERAL, AND GRANT ADEQUATE PROTECTION REGARDING "OAK KNOLL" PROJECT; AND** |
| | (3) **GRANTING RELATED RELIEF** |
| | Hearing<br>Date:  March 24, 2010<br>Time:  10:30 a.m.<br>Judge: Roger L. Efremsky |

**TO THE HONORABLE ROGER L. EFREMSKY, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL CREDITORS AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE THAT**, Blossom Valley Investors, Inc., a California corporation, the debtor and debtor in possession in the above-captioned chapter 11 case ("Debtor" or "Blossom Valley"), hereby moves this Court (the "Motion") pursuant to Bankruptcy Code sections 105, 361, 363 and 364 and Bankruptcy Rule 4001,[1] for a final order (the "Order") authorizing the Debtor to obtain post-petition financing from pre-petition lender Bank of the West ("BOW"), for use of cash collateral, and the granting of adequate protection with respect to those real estate development projects known as "Messina Gardens" and "Oak Knoll."

A true and correct copy of a stipulation (without exhibits) by and between the Debtor and BOW evidencing the terms of the proposed post-petition financing for the Messina Gardens project (the "Stipulation") is attached hereto as **Exhibit 1**. A true and correct copy of the term sheet by and between the Debtor and BOW evidencing the terms of the proposed post-petition financing for the Oak Knoll project (the "Term Sheet") is attached hereto as **Exhibit 2**.

This Motion is supported by (i) the Memorandum of Points and Authorities in Support of the Motion, (ii) the Declaration of Alan Pinn in Support of the Motion (the "Pinn Declaration"), (iii) the Declaration of Mike Bergthold in Support of the Motion (the "Bergthold Declaration"), and (iv) the Declaration of Craig S. Engen in Support of the Motion (the "Engen Declaration"; together with the Stipulation, the Term Sheet, the Memorandum of Points and Authorities, the Pinn Declaration, and the Bergthold Declaration, the "Supporting Documents"), each of which are filed concurrently herewith. A copy of the Supporting Documents and all Exhibits to the Stipulation are available upon e-mail request to aobrient@mintz.com, or other written request to counsel for the Debtor at the address appearing on the first page of this Notice.

**PLEASE TAKE FURTHER NOTICE THAT**, as set forth more fully in the Supporting Documents, the Debtor requires access to additional working capital to fund its day-to-day

---

[1] References herein to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et seq.*, as applicable. References herein to the Bankruptcy Rules refer to the Federal Rules of Bankruptcy Procedure, as applicable.

operations associated with the Messina Gardens and Oak Knoll projects (the "Projects") during the pendency of this case, including the construction of the partially completed homes at Messina Gardens and the development of the partially finished lots and construction of homes at Oak Knoll, both of which are critical to the Debtor's ability to maximize value for creditors of the estate.

With respect to Messina Gardens, the Stipulation provides that BOW will extend post-petition financing to the Debtor in the amount of $3,481,126.80 (the "Messina Financing") pursuant to the terms of the Debtor's pre-petition loan from BOW for the Messina Gardens project, except as modified by the Stipulation. The Stipulation also allows the Debtor access to cash collateral generated from the sale of homes at the Messina Gardens project, in which the Debtor granted BOW a security interest pre-petition, in order to finish construction of the partially-completed homes at that property, to maintain the property, pay payroll and operating expenses associated with the property, and market the remaining homes at the property to the extent necessary to enhance the going concern value of the property and avoid irreparable harm to the Debtor's estate. The Debtor agrees that BOW holds a valid, perfected and enforceable first-priority security interest in all of the Debtor's interest in the Messina Gardens property and the proceeds thereof.

With respect to Oak Knoll, the Term Sheet provides that BOW will extend post-petition financing to the Debtor, on a non-revolving and revolving basis, in the aggregate amount of $4,725,000.00 (the "Oak Knoll Financing") pursuant to the terms set forth in the Term Sheet. The non-revolving portion of the proposed Oak Knoll Financing is an Acquisition & Development Loan in the amount of $1,125,000.00 (the "A&D Loan") to be used primarily for site work improvements at Oak Knoll to complete 25 partially finished lots. The revolving portion of the proposed Oak Knoll Financing is a Construction Loan in the amount of $3,600,000.00 (the "Construction Loan") to be used for vertical construction of the 25 homes at Oak Knoll. In order to continue development at Oak Knoll, the Debtor also requires use of cash collateral generated from the sale of homes at the Oak Knoll project, in which U.S. Bank, National Association ("US Bank") asserts a first-priority security interest. Access to the cash collateral is necessary to pay BOW as provided in the Term Sheet, as well as mechanics' liens, sales commission closing costs of the sales and further construction costs. By this Motion, the Debtor seeks to obtain financing from BOW on a senior

secured basis and use of US Bank's cash collateral. The Debtor anticipates that after payment of the secured claims on Oak Knoll and the expenses associated with the construction, completion, and sales of the homes described herein, the Debtor will have sufficient surplus funds to make a distribution to unsecured creditors. In fact, as set forth in the Supporting Documents, a recent appraisal of the Oak Knoll project indicates an "As If Complete" market value of almost $21 million.

**PLEASE TAKE FURTHER NOTICE THAT** a hearing on the Motion has been scheduled for March 24, 2010 at 10:30 a.m. (the "Hearing"), before the Honorable Roger L. Efremsky, in Courtroom 3099, 280 South First Street, San Jose, California, at which time the Court will consider the Motion and the Debtor will request the Court grant the Motion and the relief sought therein.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to Local Bankruptcy Rule 9014-1, any opposition to the Motion must be filed with the Court and served upon the following at least seven (7) days prior to the Hearing: (i) counsel for the Debtor, Mintz Levin Cohn Ferris Glovsky & Popeo, PC, Attn: Jeffry A. Davis, 3580 Carmel Mountain Rd., Suite 300, San Diego, CA 92130, Fax: 858-314-1501, E-mail: jadavis@mintz.com; (ii) the Office of the United States Trustee / SJ, Attn: Nanette Dumas, U.S. Federal Bldg., 280 South First Street, Suite 268, San Jose, California, 95113-3004, Fax: (408) 535-5532, E-mail: nanette.dumas@usdoj.gov; and (iii) counsel for Bank of the West, James A. Tiemstra, 409 Thirteenth Street, 15th Floor, Oakland, California, 94612-2607, Fax: (510) 987-8001, E-mail: jat@tiemlaw.com.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Court's Guidelines for Cash Collateral and Financing Stipulations (the "Guidelines"), the "Cash Collateral - Post-Petition Financing Introductory Statement" for the Messina Financing and Oak Knoll Financing, respectively, follow below:

**Messina Gardens Cash Collateral - Post-Petition Financing Introductory Statement**

1. The Debtor seeks authority to obtain the Messina Financing and to use BOW's cash collateral identified in the Stipulation (the "Messina Cash Collateral") through the Termination Date (as such term is defined in the Stipulation, the "Messina Termination Date"). The Stipulation also provides that the Debtor will grant replacement liens in favor of BOW and a super-priority

administrative claim over any and all other administrative expenses, and certain payments and conditions as adequate protection, as set forth in the Stipulation. The Stipulation also provides that all pre-petition and post-petition liens of BOW will be deemed perfected *nunc pro tunc* as of the Petition Date and shall be senior in priority to all other interests and liens, as set forth in the Stipulation.

2. BOW is the only entity with an interest in the Messina Cash Collateral.

3. The purposes for the use of the Messina Cash Collateral and the Messina Financing proceeds are as set forth in the budget attached to the Stipulation as Exhibit H and any amendments and extensions thereof approved by BOW (the "Messina Budget"). The Debtor requires prompt authorization to use the Messina Cash Collateral to meet its day-to-day operating expenses associated with the Messina Gardens property, including paying for the completion of the partially-completed homes at the property, and paying mechanic's liens (to the extent not otherwise paid), sales commissions and closing costs of the home sales. Additional details regarding the purposes for which the Messina Cash Collateral will be used are set forth in the Supporting Documents.

4. The material terms of the Messina Financing are summarized as follows:[2]

    a. The proposed time frame for use of the Messina Cash Collateral is through September 30, 2010 or such earlier Termination Date (as such terms is defined in the Stipulation), which will permit the Debtor to use cash for the period necessary to complete the build-out and sales of the specified portions of the Messina Gardens property and maximize the value of the Debtor's assets.

    b. Upon approval of the Stipulation, BOW will provide the Messina Financing in the amount of $3,481,126.80 to fund the expenses to build-out and sell the partially-completed homes at the property, as set forth in the Messina Budget. Payment of those expenses will be made directly to vendors and subcontractors through a controlled disbursement program acceptable to BOW. The Debtor's balance obligations under the Messina Financing will bear interest at the rate of LIBOR + 500 basis points. The maturity date of the Debtor's obligations under the Messina

---

[2] This summary of the financing is provided for the benefit of the Court and other parties in interest pursuant to Bankruptcy Rule 4001 and the Court's guidelines regarding the Motion. To the extent there are any conflicts between this summary and the Stipulation, the terms of the Stipulation shall govern.

Financing will be September 30, 2010 or such earlier Messina Termination Date that occurs under the Stipulation, at which time BOW's obligations under the Stipulation to provide financing and consent to use of the Messina Cash Collateral will terminate and BOW may seek relief to proceed with its rights and remedies against the Messina Gardens property.

    c.    Certain events may result in an acceleration of the Messina Termination Date, including the Debtor's breach of any provision of the Stipulation or other agreement between the parties, except as modified by the Stipulation, the effective date of a plan of reorganization, the conversion of the Debtor's case to one under chapter 7, the appointment of a chapter 11 trustee, or dismissal of the Debtor's chapter 11 case.

    d.    As adequate protection for the Debtor's use of the Messina Cash Collateral and consideration for the Messina Financing, the Debtor proposes to grant BOW: (i) a senior in priority post-petition lien on BOW's pre-petition collateral; (ii) a new first-position post-petition lien in Lot Nos. 71 and 72 of the Messina Gardens property (not previously subject to BOW's lien) and the proceeds thereof acquired post-petition; and (iii) a new deed of trust on the Oak Knoll Property and the proceeds thereof, junior only to the existing deed of trust in favor of US Bank and a senior lien to be granted to BOW pursuant to the Oak Knoll Financing, as set forth below. In addition, the Debtor proposes to grant BOW a super-priority administrative expense claim. The Stipulation also provides for payment of certain out-of-pocket costs, including reasonable attorneys' fees, incurred by BOW in connection with the Stipulation, with amounts will be added to the balance of the obligations due to BOW under the Stipulation.

    e.    The Net Proceeds (as defined in the Stipulation) from the sale of units at Messina Gardens, but not less than the applicable release price set forth on Exhibit I to the Stipulation, will be paid to BOW after payment of reasonable and customary sales commissions, title and recording costs, property taxes, Home Owners Association fees, and payments to mechanics' lien holders on a *pro rata* basis based on the percentage of each unit to the total number of units encumbered by such mechanics' lien (to the extent not otherwise paid), as approved by BOW.

5.    A forbearance fee of 0.25% of the balance owed BOW shall be added to the amount owed and paid when the pre-petition loan from BOW is paid.

6. A chart outlining the Required Disclosures for the Messina Financing (as such Required Disclosures are set forth in the Guidelines), is attached hereto as **Exhibit 3**.

**Oak Knoll Cash Collateral - Post-Petition Financing Introductory Statement**

7. The Debtor seeks authority to obtain the Oak Knoll Financing and use the cash collateral secured by US Bank's pre-petition security interest relating to Oak Knoll (the "Oak Knoll Cash Collateral") through the completion of the Oak Knoll project. The Oak Knoll Financing will consist of two loans in the aggregate amount of $4,725,000.00. The non-revolving A&D Loan in the amount of $1,125,000.00 will be used primarily for site work improvements on 25 partially finished lots at Oak Knoll. The revolving Construction Loan in the amount of $3,600,000.00 will be used for vertical construction of the 25 homes at Oak Knoll. Under the terms of the Oak Knoll Financing, the Debtor will grant BOW a priming lien with respect to all of the property of the Debtor relating to Oak Knoll, and a super-priority administrative claim over any and all other administrative expenses.

8. The Debtor will use the Oak Knoll Cash Collateral, including proceeds from the sales of homes at the project, to pay ordinary sales commission, taxes and other closing costs of the sales of the homes, and payment of mechanics' liens senior to US Bank on a *pro rata* basis based on the percentage of each sold unit to the total number of units encumbered by such mechanics' lien, with the proceeds to then be used to pay the applicable release price for the sold unit as set forth in the Term Sheet. Any remaining proceeds will be used to fund further construction, until such time as the Debtor has sufficient funds to complete construction and fund closing costs, at which time any remaining sales proceeds will be used to pay BOW and US Bank as provided in the Term Sheet.

9. US Bank has an interest in the Oak Knoll Cash Collateral. As adequate protection for the use of the Oak Knoll Cash Collateral, the Debtor will provide US Bank with an additional lien in the Debtor's post-petition assets which fall within the description of US Bank's pre-petition collateral as held by US Bank on the Petition Date (but which post-petition lien shall be junior to BOW's liens granted under the Oak Knoll Financing). As set forth in the Supporting Documents, the increased value of the Oak Knoll property that will occur due to the use of the Oak Knoll Financing and Oak Knoll Cash Collateral will provide adequate protection for US Bank's interest in the Oak Knoll property. In fact, the Debtor anticipates that after payment of the secured claims on

Oak Knoll and the expenses associated with the construction, completion, and sale of the homes described herein, the Debtor will have sufficient surplus funds to make a distribution to unsecured creditors. In fact, as set forth in the Supporting Documents, a recent appraisal of the Oak Knoll project indicates an "As If Complete" market value of almost $21 million.

10. The purposes for the use of the Oak Knoll Cash Collateral and the Oak Knoll Financing proceeds are as set forth in the Term Sheet. The Debtor requires prompt authorization to use such cash and proceeds to meet its day-to-day operating expenses associated with the Oak Knoll property, including paying construction costs, ordinary sales commissions and closing costs of sales of homes at Oak Knoll, including payment of mechanics' liens senior to US Bank. Additional details regarding the purposes for which the Oak Knoll Cash Collateral will be used are set forth in the Supporting Documents.

11. The material terms of the Term Sheet are summarized as follows:[3]

    a. The proposed time frame for use of the Oak Knoll Cash Collateral is for 24 months from the effective date of loan documentation in substantial conformity with the Term Sheet, which will permit the Debtor to complete the build-out and sales of the specified portions of the Oak Knoll property and maximize the value of the Debtor's assets relating to that project.

    b. Upon approval of the Term Sheet, and completion of necessary loan documentation in substantial conformity therewith, BOW will provide the Oak Knoll Financing. Disbursements under the A&D Loan based upon invoices submitted by the Debtor. Initial disbursements under the Construction Loan will be based upon percentage completed as determined by an independent third party inspector for each draw. Initial disbursements available at the start of each unit (without regard to percent complete) are approximately $21,400 (*i.e.*, the building permit cost).

    c. The Debtor's balance on the obligations under the Oak Knoll Financing will bear interest at the rate of Prime + 1.0%, with a floor of 6.0%, and a maturity date of 24 months from the date the financing is extended.

---

[3] This summary of the financing is provided for the benefit of the Court and other parties in interest pursuant to Bankruptcy Rule 4001 and the Court's guidelines regarding the Motion. To the extent there are any conflicts between this summary and the Term Sheet, the terms of the Term Sheet shall govern.

d. The terms of the Oak Knoll Financing will include customary events of default and termination events, and will likely include the Debtor's breach of any other provision of the Oak Knoll Financing or other agreement between the parties (including the Stipulation), the effective date of a plan of reorganization, the conversion of the Debtor's case to one under chapter 7, the appointment of a chapter 11 trustee, or dismissal of the Debtor's chapter 11 case.

e. To secure the Oak Knoll Financing, the Debtor will grant BOW a priming lien with respect to all of the property of the Debtor relating to Oak Knoll, and a super-priority administrative claim over any and all other administrative expenses.

f. As adequate protection for the Debtor's use of the Oak Knoll Cash Collateral and subordinating its lien to the Oak Knoll Financing, the Debtor proposes to provide US Bank with an additional lien in the Debtor's post-petition assets which fall within the description of US Bank's pre-petition collateral as held by US Bank on the Petition Date (but which post-petition lien shall be junior to BOW's liens granted under the Oak Knoll Financing). As set forth in the Supporting Documents, the increased value of the Oak Knoll property that will occur due to the use of the Oak Knoll Financing and the Oak Knoll Cash Collateral will provide adequate protection for US Bank's interest in the Oak Knoll property.

g. The Term Sheet also provides for payment of certain out-of-pocket expenses incurred by BOW in connection with the Oak Knoll Financing, including appraisal, legal, costing of on- and off-site improvements, and environmental review, which will be paid from the net sales proceeds after the Debtor has sufficient funds to complete construction and sale of the homes at Oak Knoll.

h. The proceeds from the sale of units at Oak Knoll will be used to pay ordinary sales commission, taxes and other closing costs of the sales of the homes, and payment of mechanics' liens senior to US Bank on a *pro rata* basis based on the percentage of each sold unit to the total number of units encumbered by such mechanics' lien, with the proceeds to then be used to pay the applicable release price for the sold unit as set forth in the Term Sheet. Any remaining proceeds will be used to fund further construction, until such time as the Debtor has sufficient funds to complete construction and fund closing costs, at which time any remaining sales proceeds will be

applied: first to BOW's expenses incurred but not funded by the Oak Knoll Financing, second to the principal balance on the Construction Loan, third to the principal balance on the A&D Loan, and fourth to the secured claim due to US Bank under its loan(s) relating to the Oak Knoll project up to the amount of its secured claim as of the Petition Date. Any remaining Net Sales Proceeds will be used to pay down the Debtor's obligations to BOW under the loans relating to the Messina Gardens project.

    i. The Term Sheet provides that the Debtor will pay BOW a loan fee on the A&D Loan of $22,500, which is equal to a charge of 1% per annum on the total principal amount of the A&D Loan over a period of 2 years. The Term Sheet also provides that the Debtor will pay BOW a loan fee on the Construction Loan of $72,000, which is equal to a charge of 1% per annum on the total principal amount of the Construction Loan over a period of two years.

  12. A chart outlining the Required Disclosures for the Oak Knoll Financing (as such Required Disclosures are set forth in the Guidelines), is attached hereto as **Exhibit 4**.

### Certification

The undersigned Certifying Professional has read the accompanying Motion (including the Supporting Documents), the Messina Gardens Cash Collateral - Post-Petition Financing Introductory Statement, and the Oak Knoll Cash Collateral - Post-Petition Financing Introductory Statement set forth above. To the best of my knowledge, information and belief, formed after reasonable inquiry, the terms of the relief sought in the Motion is in conformity with the Court's Guidelines For Cash Collateral And Financing Motions and Stipulations except as set forth above. I understand and have advised the debtor in possession that the Court may grant appropriate relief under Bankruptcy Rule 9024 if the court determines that a material element of the motion or stipulation was not adequately disclosed in the Introductory Statements.

Dated: March 3, 2010      /s/ Jeffry A. Davis
              Jeffry A. Davis
              Joseph R. Dunn
              **MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
              Attorneys for Blossom Valley Investors, Inc.