Jeffry A. Davis (SBN 103299)
Joseph R. Dunn (SBN 238069)
Abigail V. O'Brient (SBN 265704)
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Tel: 858 314-1500
Fax: 858 314-1501

Attorneys for Debtor in Possession
Blossom Valley Investors, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 09-57669-SLJ |
| BLOSSOM VALLEY INVESTORS, INC., | Chapter 11 |
| Debtor. | **DEBTOR'S SECOND AMENDED MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 361, 363 AND 364 FOR FINAL ORDER:** |
| | **(1) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING ON SENIOR SECURED BASIS, USE CASH COLLATERAL, AND GRANT ADEQUATE PROTECTION REGARDING "MESSINA GARDENS" PROJECT;** |
| | **(2) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING ON SENIOR SECURED BASIS, USE CASH COLLATERAL, AND GRANT ADEQUATE PROTECTION REGARDING "OAK KNOLL" PROJECT;** |
| | **(3) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING ON JUNIOR SECURED BASIS; AND** |
| | **(4) GRANTING RELATED RELIEF** |
| | Hearing<br>Date: TBD<br>Time: TBD<br>Judge: Stephen L. Johnson |

Blossom Valley Investors, Inc. (the "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case, hereby moves (the "Motion") the Court for an order:

1. Authorizing the Debtor to obtain post-petition financing on a senior secured basis, use cash collateral and grant adequate protection regarding the Messina Gardens project;

2. Authorizing the Debtor to obtain post-petition financing on a senior secured basis, use cash collateral and grant adequate protection regarding the Oak Knoll project;

3. Authorizing the Debtor to obtain post-petition financing on a junior secured basis; and

4. Granting such other relief as the Court deems just and proper.

This Motion is supported by (i) the Notice of Motion to be filed upon entry of an order on the Motion for an Order Shortening Time filed concurrently herewith; (ii) the Memorandum of Points and Authorities in Support of the Motion, (iii) the Declaration of Alan Pinn in Support of the Motion (the "Pinn Declaration"), (iv) the Declaration of Mike Bergthold in Support of the Motion (the "Bergthold Declaration"); (v) the stipulation by and between the Debtor and BOW evidencing the terms of the proposed post-petition financing for the Messina Gardens project (the "Stipulation") attached hereto as **Exhibit 1**; and (vi) the term sheet by and between the Debtor and BOW evidencing the terms of the proposed post-petition financing for the Oak Knoll project (the "Term Sheet") attached hereto as **Exhibit 2**.

This Motion is contingent upon (1) this Court's approval of the settlement agreement between the Debtor and US Bank and (2) BOW's purchase of US Bank's loan (the "US Bank Loan") on Oak Knoll, including its note and deed of trust on the Oak Knoll property, pursuant to the terms of a certain assignment agreement between BOW and US Bank. This Motion does not seek to prime US Bank's lien on the Oak Knoll property pursuant to section 364(d) of the Bankruptcy Code if the US Bank Loan is not purchased by BOW. Further, the Debtor will not request any financing for Messina or Oak Knoll pursuant to this Motion unless the sale to BOW of US Bank's Oak Knoll loan has closed. If the sale does not close, then the Debtor has the right to file a revised financing motion and request that all matters be set for trial.

Pursuant to the Court's Guidelines for Cash Collateral and Financing Stipulations (the "Guidelines"), the Cash Collateral - Post-Petition Financing Introductory Statement for the Messina Financing, Oak Knoll Financing and Junior Financing, respectively, follow below:

**Messina Gardens Cash Collateral - Post-Petition Financing Introductory Statement**

1. The Debtor seeks authority to obtain the Messina Financing and to use BOW's cash collateral identified in the Stipulation (the "Messina Cash Collateral") through the Termination Date (as such term is defined in the Stipulation, the "Messina Termination Date"). The Stipulation also provides that the Debtor will grant replacement liens in favor of BOW and a super-priority administrative claim over any and all other administrative expenses, and certain payments and conditions as adequate protection, as set forth in the Stipulation. The Stipulation also provides that all pre-petition and post-petition liens of BOW will be deemed perfected *nunc pro tunc* as of the Petition Date and shall be senior in priority to all other interests and liens, as set forth in the Stipulation.

2. BOW is the only entity with an interest in the Messina Cash Collateral.

3. The purposes for the use of the Messina Cash Collateral and the Messina Financing proceeds are as set forth in the budget attached to the Stipulation as Exhibit G and any amendments and extensions thereof approved by BOW (the "Messina Budget"). The Debtor requires prompt authorization to use the Messina Cash Collateral to meet its day-to-day operating expenses associated with the Messina Gardens property, including paying for the completion of the partially-completed homes at the property, and paying mechanic's liens (to the extent not otherwise paid), sales commissions and closing costs of the home sales. Additional details regarding the purposes for which the Messina Cash Collateral will be used are set forth in the Stipulation.

4. The material terms of the Messina Financing are summarized as follows:[1]

    a. The proposed time frame for use of the Messina Cash Collateral is through September 30, 2011 or such earlier Termination Date (as such term is defined in the Stipulation), which will permit the Debtor to use cash for the period necessary to complete the build-out and sales

---

[1] This summary of the financing is provided for the benefit of the Court and other parties in interest pursuant to Bankruptcy Rule 4001 and the Court's guidelines regarding the Motion. To the extent there are any conflicts between this summary and the Stipulation, the terms of the Stipulation shall govern.

of the specified portions of the Messina Gardens property and maximize the value of the Debtor's assets.

   b.  Upon approval of the Stipulation, BOW will provide the Messina Financing. The Debtor's obligations under the Messina Financing will bear interest at the rate of LIBOR + 500 basis points. The maturity date of the Debtor's obligations under the Messina Financing will be September 30, 2011 or such earlier Messina Termination Date that occurs under the Stipulation, at which time BOW's obligations under the Stipulation to provide financing and consent to use of the Messina Cash Collateral will terminate and BOW may seek relief to proceed with its rights and remedies against the Messina Gardens property.

   c.  Certain events may result in an acceleration of the Messina Termination Date, including the Debtor's breach of any provision of the Stipulation or other agreement between the parties, except as modified by the Stipulation, the filing of a plan of reorganization that does not incorporate all terms of the Stipulation, the conversion of the Debtor's case to one under chapter 7, the appointment of a chapter 11 trustee, or dismissal of the Debtor's chapter 11 case.

   d.  As adequate protection for the Debtor's use of the Messina Cash Collateral and consideration for the Messina Financing, the Debtor proposes to grant BOW: (i) a senior in priority post-petition lien on BOW's pre-petition collateral; (ii) a new first-position post-petition lien in Lot Nos. 71 and 72 of the Messina Gardens property (not previously subject to BOW's lien) and the proceeds thereof acquired post-petition; and (iii) a new second deed of trust on the Oak Knoll Property and the proceeds thereof, junior only to the existing deed of trust that is currently in favor of US Bank and which will be assigned to BOW upon approval of the Amended Motion for Order Approving Settlement with US Bank Pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Settlement Motion") filed concurrently herewith. In addition, the Debtor proposes to grant BOW a super-priority administrative expense claim. The Stipulation also provides for payment of certain out-of-pocket costs, including reasonable attorneys' fees, incurred by BOW in connection with the Stipulation, with amounts will be added to the balance of the obligations due to BOW under the Stipulation.

e. The Net Proceeds (as defined in the Stipulation) from the sale of units at Messina Gardens, but not less than the applicable release price set forth on Exhibit H to the Stipulation, will be paid to BOW after payment of reasonable and customary sales commissions, title and recording costs, property taxes, Home Owners Association fees, and payments to mechanics' lien holders on a *pro rata* basis based on the percentage of each unit to the total number of units encumbered by such mechanics' lien (to the extent not otherwise paid), as approved by BOW.

5. A forbearance fee of 0.25% of the balance owed BOW shall be added to the amount owed and paid when the pre-petition loan from BOW is paid.

6. A chart outlining the Required Disclosures for the Messina Financing (as such Required Disclosures are set forth in the Guidelines), is attached hereto as **Exhibit 3**.

## Oak Knoll Cash Collateral - Post-Petition Financing Introductory Statement

1. The Debtor seeks authority to obtain the Oak Knoll Financing and use the cash collateral currently secured by US Bank's pre-petition security interest relating to Oak Knoll, which security interest will be assigned to BOW upon approval of the Settlement Motion filed concurrently herewith (the "Oak Knoll Cash Collateral"), through the completion of the Oak Knoll project. The Oak Knoll Financing will consist of two loans in the aggregate amount of $7,250,000.00. The non-revolving A&D Loan is in the amount of $4,175,000.00, which amount reflects the assumption of US Bank's loan for Oak Knoll and the funding of site work improvements on twenty-five partially finished lots at Oak Knoll. The revolving Construction Loan in the amount of $3,075,000.00 will be used for vertical construction of ten homes at Oak Knoll. The Oak Knoll Financing will be secured by a first deed of trust on the Oak Knoll land, lots and improvements. In addition, the Debtor will grant BOW a super-priority administrative claim over any and all other administrative expenses.

2. The Debtor will use the Oak Knoll Cash Collateral, including proceeds from the sales of homes at the project, to pay ordinary sales commissions, taxes and other closing costs of the sales of the homes. Any remaining proceeds will be deposited in a deferred equity account to be used to pay for deferred equity requirements, the Messina Loan and the Debtor's unsecured obligations.

3. US Bank currently has an interest in the Oak Knoll Cash Collateral; however, upon Court approval of the Settlement Motion, it will assign its interest to BOW. As adequate protection

for the use of the Oak Knoll Cash Collateral, the Debtor will provide BOW with a first deed of trust on the Oak Knoll land, lots and improvements. BOW consents to the use of the Oak Knoll Cash Collateral. Certain holders of mechanics' liens also have an interest in the Oak Knoll Cash Collateral. Their interests are adequately protected by the increased value of Oak Knoll due to the improvements.

4. The material terms of the Term Sheet are summarized as follows:[2]

a. The proposed time frame for use of the Oak Knoll Cash Collateral is for 24 months from the effective date of loan documentation in substantial conformity with the Term Sheet, which will permit the Debtor to complete the build-out and sales of the specified portions of the Oak Knoll property and maximize the value of the Debtor's assets relating to that project.

b. Upon approval of the Term Sheet, and completion of necessary loan documentation in substantial conformity therewith, BOW will provide the Oak Knoll Financing. Disbursements under the A&D Loan based upon invoices submitted by the Debtor. Initial disbursements under the Construction Loan will be based upon percentage completed as determined by an independent third party inspector for each draw. Initial disbursements available at the start of each unit (without regard to percent complete) are approximately $14,000. For those houses for which building permits have not yet been purchased, the initial disbursement is $55,154.

c. The Debtor's balance on the obligations under the Oak Knoll Financing will bear interest at the rate of Prime + 1.0%, with a floor of 6.0%.

d. The terms of the Oak Knoll Financing will include customary events of default and termination events, and will likely include the Debtor's breach of any other provision of the Oak Knoll Financing or other agreement between the parties (including the Stipulation), the filing of a plan of reorganization that does not incorporate all terms and conditions of the Stipulation, the conversion of the Debtor's case to one under chapter 7, the appointment of a chapter 11 trustee, or dismissal of the Debtor's chapter 11 case.

---

[2] This summary of the financing is provided for the benefit of the Court and other parties in interest pursuant to Bankruptcy Rule 4001 and the Court's guidelines regarding the Motion. To the extent there are any conflicts between this summary and the Term Sheet, the terms of the Term Sheet shall govern.

e. To secure the Oak Knoll Financing, the Debtor will grant BOW a first deed of trust on the Oak Knoll land, lots and improvements, and a super-priority administrative claim over any and all other administrative expenses. Bank of the West will receive the same protections as to the Oak Knoll Financing as provided in paragraphs 2 through 9, 14 through 17, 18a through 18d and 19 through 23 of the Stipulation attached hereto as Exhibit 1.

f. The Term Sheet also provides for payment of certain out-of-pocket expenses incurred by BOW in connection with the Oak Knoll Financing, including legal, costing of on- and off-site improvements, and environmental review, which will be paid from the net sales proceeds after the Debtor has sufficient funds to complete construction and sale of the homes at Oak Knoll.

g. The proceeds from the sale of units at Oak Knoll will be used to pay ordinary sales commissions, taxes and other closing costs of the sales of the homes. Any remaining proceeds will be deposited in a deferred equity account to pay for deferred equity requirements, the Messina Loan and the Debtor's unsecured obligations.

h. The Term Sheet provides that the Debtor will pay BOW a loan fee on the A&D Loan of $83,500, which is equal to a charge of 1% per annum on the total principal amount of the A&D Loan over a period of 2 years. The Term Sheet also provides that the Debtor will pay BOW a loan fee on the Construction Loan of $61,500, which is equal to a charge of 1% per annum on the total principal amount of the Construction Loan over a period of two years.

5. The Term Sheet requires the Debtor to make an equity contribution of $4,791,855, which equity is comprised of (a) $1,421,170 cash collateral currently held by BOW, (b) $1,500,000 equity in the Oak Knoll property, and (c) a $1,870,685 junior loan from Alan and David Pinn (instead of Pacific Capital Corp., Inc.) (the "Junior Financing").

6. A chart outlining the Required Disclosures for the Oak Knoll Financing (as such Required Disclosures are set forth in the Guidelines) is attached hereto as **Exhibit 4**.

**Junior Financing - Post-Petition Financing Introductory Statement**

7. The Junior Financing will consist of a junior secured loan in the amount of $1,870,685 from Alan and David Pinn (instead of Pacific Capital Corp., Inc.).

8. The Debtor's balance on the obligations under the Junior Financing will bear interest at the rate of 6.0%, with a maturity date of 36 months from the date the financing is extended.

9. As security for the Junior Financing, the Debtor will grant the Pinns a third deed of trust on the Oak Knoll land and improvements.

10. The terms of the Junior Financing will include customary events of default and termination events, and will likely include the conversion of the Debtor's case to one under chapter 7, the appointment of a chapter 11 trustee, or dismissal of the Debtor's chapter 11 case.

11. The Debtor will not make any payments on the Junior Financing principal or interest until the Messina and Oak Knoll Financing have been repaid in full.

12. A chart outlining the Required Disclosures for the Junior Financing is attached hereto as **Exhibit 5.**

## Certification

The undersigned Certifying Professional has read the accompanying Motion (including the Supporting Documents), the Messina Gardens Cash Collateral - Post-Petition Financing Introductory Statement, the Oak Knoll Cash Collateral - Post-Petition Financing Introductory Statement and the Junior Financing – Post-Petition Financing Introductory Statement set forth above. To the best of my knowledge, information and belief, formed after reasonable inquiry, the terms of the relief sought in the Motion are in conformity with the Court's Guidelines for Cash Collateral and Financing Motions and Stipulations except as set forth above. I understand and have advised the debtor in possession that the Court may grant appropriate relief under Bankruptcy Rule 9024 if the court determines that a material element of the motion or stipulation was not adequately disclosed in the Introductory Statements.

Dated: February 2, 2011

/s/ Abigail V. O'Brient
Jeffry A. Davis
Joseph R. Dunn
Abigail V. O'Brient
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
Attorneys for Blossom Valley Investors, Inc.