# EXHIBIT 1

# SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of January __, 2011 ("Agreement"), is entered into by and between U.S. Bank National Association, as successor in interest to the Federal Deposit Insurance Corporation, Receiver for Pacific National Bank ("U.S. Bank") and Blossom Valley Investors, Inc., a California corporation, as debtor and debtor in possession ("Debtor"), with reference to the following facts:

## RECITALS

A. On September 10, 2009 (the "Filing Date"), Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code and continues to operate as a debtor in possession.

B. As of the Filing Date, Debtor had three projects, two of which were financed by U.S. Bank, and one of which was financed by Bank of the West ("BOW"): Messina Gardens is a townhouse project financed by BOW; Grandview Terrace, described below, is a townhouse project financed by U.S. Bank; and Oak Knoll, also described below, is a single family residential project financed by U.S. Bank. As of the Filing Date, each of the three projects was in various stages of development, and each of the three projects was in default.

C. Prepetition, U.S. Bank extended certain credit facilities to Debtor (whether one or more, collectively, the "Oak Knoll Loan") in connection with the real property and project known as Oak Knoll, located at 4969 San Felipe Road, San Jose, California (the "Oak Knoll Property"), which are evidenced, guaranteed, secured by and made under the terms of certain documents (collectively referred to as the "Oak Knoll Loan Documents").

D. U.S. Bank also extended certain credit facilities (whether one or more, collectively the "Grandview Loan") in connection with the real property and project known as Grandview Terrace, located at 698 North Capital Avenue, San Jose, California, San Jose, California (the "Grandview Property"), which are evidenced, guaranteed, secured by and made under the terms of certain documents (collectively referred to as the "Grandview Loan Documents").

E. Pursuant to the Grandview Loan Documents, U.S. Bank has a security interest in and rights under the following (collectively, the "Grandview Collateral"): the "Property" as defined in that certain Construction Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated August 8, 2006, and recorded on August 17, 2006 in the official records of the Santa Clara County Recorder as document no. 19065675 (the "Grandview Deed of Trust"), and any personal property securing the Grandview Terrace Loan, including without limitation any property described in that certain Assignment of Rights Under Covenants, Conditions and Restrictions, Sales Agreements, Permits, and Development Documents dated August 8, 2006 and recorded on August 17, 2006 in the official records of the Santa Clara County Recorder as document no. 19065676 (the "Grandview Assignment of Rights").

F. U.S. Bank has filed a proof of claim in the Chapter 11 Proceeding (the "Claim") with respect to the Oak Knoll Loan and the Grandview Loan.

G. On or about December 22 and 23, 2009, U.S. Bank filed separate Motions for Relief From Stay seeking authority to exercise its state law remedies and foreclose on both the Grandview Property and Oak Knoll Property. [Docket 47 and 48].

H. On or about January 8, 2010, U.S. Bank and Debtor entered into a Stipulation for Relief From Stay (Grandview Property)(the "Grandview Stipulation"), which was approved by the Bankruptcy Court on or about February 1, 2010. [Docket 67]. Pursuant to the Grandview Stipulation, Debtor granted U.S. Bank relief from stay to (i) exercise its state law remedies with respect to Grandview Terrace and the "Property" as defined in the deed of trust securing the Grandview Loan, including by judicial foreclosure, and (ii) immediately pursue and exercise all of its rights and remedies under the Grandview Assignment of Rights. Debtor further agreed that if U.S. Bank judicially foreclosed on Grandview Terrace, U.S. Bank's deficiency claim with respect to Grandview Terrace as determined in state court (the "Grandview Deficiency Claim") would be an unsecured claim in Debtor's bankruptcy case.

I. U.S. Bank has commenced, but not completed, its judicial foreclosure of the Grandview Property.

J. On the Filing Date, the approximate amount owing under the Grandview Loan Documents was $12,660,077, which has continued to increase since that date. U.S. Bank believes that the Grandview Deficiency Claim will be between $2,370,000 to upwards of $4,000,000.

K. On or about March 3, 2010, Debtor filed a motion to obtain postpetition financing from BOW to complete the site improvements and commence vertical construction of the Oak Knoll project previously financed by U.S. Bank, and to repay BOW out of the cash collateral generated from the sale of the homes. *See* Notice of Motion and Debtor's Motion Pursuant to Bankruptcy Code Sections 105, 361, 363 and 364 For Final Order: (1) Authorizing Debtor to Obtain Post-Petition Financing On Senior Secured Basis, Use Cash Collateral, and Grant Adequate Protection Regarding "Messina Gardens" Project; (2) Authorizing Debtor to Obtain Post-Petition Financing On Senior Secured Basis, Use Cash Collateral, and Grant Adequate Protection Regarding "Oak Knoll" Project; and (3) Granting Related Relief [Docket 81] (the "Postpetition Financing Motion").

L. Pursuant to the Postpetition Financing Motion, Debtor and BOW also sought to "prime" U.S. Bank's first lien on Oak Knoll, so that U.S. Bank's liens would be junior to the new financing liens of BOW.

M. On or about March 2, 2010, Debtor and BOW also filed a motion seeking approval of a global settlement with the Debtor and certain non-debtor entities (the "BOW Settlement"). [Docket 79].

N. On or about March 17, 2010, U.S. Bank filed an objection to the Postpetition Financing Motion, and to the BOW Settlement Motion. [Docket 96 and 95]. U.S. Bank's Relief From Stay Motion with respect to the Oak Knoll project was continued so that it would be heard simultaneously with Debtor's Postpetition Financing Motion and BOW's Settlement Motion. A trial on U.S. Bank's Relief From Stay Motion and on the Postpetition Financing Motion and BOW Settlement Motion was first scheduled for May 10 and 11, and has been continued by the parties and by bankruptcy court orders multiple times.

O. U.S. Bank, BOW and Debtor have reached a comprehensive settlement related to the Postpetition Financing Motion, the BOW Settlement Motion and U.S. Bank's Relief From Stay Motion, as set forth in (i) this Agreement, (ii) that certain Assignment dated **[concurrently herewith]** between BOW and U.S. Bank (the "BOW Assignment"), (iii) that certain Acknowledgement and Agreement of Guarantor (the "Guarantor Agreement"), and (iv) that certain Acknowledgement and Agreement of U.S. Bank, true and correct copies of which are attached hereto as <u>Exhibit</u> A (the U.S. Bank Agreement. Pursuant to the BOW Assignment, BOW has agreed to purchase the Oak Knoll Loan at a discount, contemporaneously with the settlement between U.S. Bank and Debtor as set forth in this Agreement.

NOW, THEREFORE, the U.S. Bank and Debtor hereby agree as follows:

1. <u>Incorporation of Recitals</u>. The Recitals set forth above are incorporated into this Agreement as if set forth in full herein.

2. <u>Acknowledgment of Oak Knoll Debt; Enforceability of Oak Knoll Loan Documents</u>. Debtor acknowledges and agrees that as of December 31, 2010, the full amount owing by Debtor to U.S. Bank under the Oak Knoll Loan Documents was $6,267,630[1], and that Debtor does not have any defenses to payment of such amount under the Oak Knoll Loan Documents. Debtor further acknowledges that neither U.S. Bank nor its predecessors in interest have breached any of their obligations under the Oak Knoll Loan or the Oak Knoll Loan Documents and there exists no claim, counterclaim, defense or offset of any kind relating to the Oak Knoll Loan or the Oak Knoll Loan Documents. The Oak Knoll Loan and the Oak Knoll Loan Documents are and after the assignment to BOW, will remain, in full force and effect, enforceable against Debtor in accordance with their terms.

3. <u>Release By U.S. Bank of Grandview Deficiency Claim</u>. Effective as of the Effective Date (as defined below), U.S. Bank waives its right to assert the Grandview Deficiency Claim in Debtor's Chapter 11 case or if Debtor's case is converted to a Chapter 7, in any subsequent Chapter 7 case. U.S. Bank will continue to have the right to foreclose on the Grandview Collateral, and to enforce its liens and rights under the Grandview Deed of Trust, the Grandview Assignment and the other Grandview Loan Documents to enforce its rights in and to protect, the Grandview Collateral.

---

[1] The indebtedness consists of principal in the amount of $5,154,255.75, interest in the amount of $705,148.55, late fees of $1,432.61, prepetition attorneys' fees and costs of $122,653.33, and postpetition attorneys' fees and costs of $284,140 (which includes expert witness and consultant fees of $50,139).

{00545904.DOC v 4}3

4. <u>General Release by U.S. Bank of Debtor with respect to Grandview Loan</u>. Effective as of the Effective Date, and except to the extent otherwise provided below, U.S. Bank waives, releases, relinquishes and forever discharges Debtor, and its respective past, present and future directors, officers, managers, agents, employees, insurers, attorneys, representatives, successors and assigns, and each and all thereof (collectively, the "Debtor Released Parties"), of and from any and all manner of action or causes of action, suits, claims, demands, judgments, damages, levies and executions of whatsoever kind, nature and/or description (collectively, the "Claims") arising on or before the Closing Date, including, without limitation, any claims, losses, costs or damages, including compensatory and punitive damages, in each case whether known or unknown, liquidated or unliquidated, fixed or contingent, direct or indirect, which the undersigned, or any legal representative, successor or assign, ever had or now has or may claim to have against any of the Debtor Released Parties, with respect to any matter whatsoever related <u>solely</u> to the Grandview Loan and the Grandview Loan Documents other than with respect to the Grandview Collateral; and agrees not to sue any Debtor Released Party or in any way assist any other person or entity in suing a Debtor Released Party with respect to any Claim released in this Section. U.S. Bank acknowledges that it has been informed of its rights under and the provisions of Section 1542 of the Civil Code of the State of California and expressly waives and relinquishes all rights and benefits that it has or may have had under such statute, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

For purposes of this Agreement, "Preserved Claims Against Debtor Released Parties" means (i) any Claims related to a breach by Debtor or any Debtor Released Party of this Agreement or the Guarantor Agreement, and (ii) any Claims related to the Oak Knoll Loan or the Oak Knoll Loan Documents, all of which are being transferred to BOW on the Closing Date. Notwithstanding anything to the contrary in this Agreement, U.S. Bank is not releasing any of the Debtor Released Parties from any of the Preserved Claims Against Debtor Released Parties. Notwithstanding anything to the contrary in this Agreement, U.S. Bank also retains, and is not releasing, any rights to the Grandview Collateral, and Debtor agrees that the Grandview Loan Documents and the indebtedness under the Grandview Loan Documents remain in full force and effect to enable U.S. Bank to protect and enforce its rights to the Grandview Collateral. For clarification purposes, US Bank retains any Claims it has against the Debtor Released Parties (other than Debtor) with respect to any loan by U.S. Bank to any entity other than Debtor.

5. <u>Covenant Not to Sue Related to Oak Knoll</u>. Notwithstanding that any Claims related to the Oak Knoll Loan and the Oak Knoll Documents are Preserved Claims, U. S. Bank agrees that *it* will not commence, maintain, initiate, or prosecute any action, suit, proceeding, or claim before any court or administrative agency (whether state, federal, or otherwise) against any of the Debtor Released Parties related to the Oak Knoll Loan or the Oak Knoll Loan Documents. This covenant not to sue relates only to U.S. Bank.

6. <u>General Release</u>.  Effective as of the Effective Date, and except to the extent otherwise provided below, Debtor, and only Debtor, waives, releases, relinquishes and forever discharges U.S. Bank, its parents, subsidiaries, and affiliates, and their respective past, present and future directors, officers, managers, agents, employees, insurers, attorneys, representatives, predecessors in interest, successors and assigns, including BOW, and each and all thereof (collectively, the "Bank Released Parties"), of and from any and all Claims arising on or before the Closing Date, including, without limitation, any claims, losses, costs or damages, including compensatory and punitive damages, in each case whether known or unknown, liquidated or unliquidated, fixed or contingent, direct or indirect, which the undersigned, or any legal representative, successor or assign, ever had or now has or may claim to have against any of the Bank Released Parties, with respect to any matter whatsoever, including, without limitation, the Oak Knoll Loan, the Oak Knoll Loan Documents, the Grandview Loan, the Grandview Loan Documents or any course of conduct or obligations prior to the Closing Date; and agrees not to sue any Bank Released Party or in any way assist any other person or entity in suing a Bank Released Party with respect to any Claim released in this Section.  Debtor acknowledges that it has been informed of its rights under and the provisions of Section 1542 of the Civil Code of the State of California and expressly waives and relinquishes all rights and benefits that it has or may have had under such statute, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

For purposes of this Agreement, "Preserved Claims Against U.S. Bank Released Parties" means any Claims related to a breach by U.S. Bank or any U.S. Bank Released Party of this Agreement or the U.S. Bank Agreement.  Notwithstanding anything to the contrary in this Agreement, Debtor is not releasing any of the U.S. Bank Released Parties from any of the Preserved Claims Against U.S. Bank Released Parties.  For clarification purposes, each Debtor Released Party (other than Debtor) retains any Claims it has against U.S. Bank Released Parties with respect to any loan by U.S. Bank to any entity other than Debtor.

7. <u>Relief From Stay to Grandview Homeowners' Association</u>.  Debtor hereby grants relief from stay to the Homeowners' Association of Grandview Terrace (the "Grandview HOA") to enable the Grandview HOA to make demand upon any bond in favor of the Grandview HOA and to take any action required by the Grandview HOA under the bonds to enable the Grandview HOA to collect any assessments owed by Debtor with respect to Grandview.  In furtherance of the foregoing, Debtor hereby waives any right to receive notice or demand under any Assessment Security Agreement related to the bonds or otherwise.

8. <u>Delivery of Documents</u>.  Debtor shall deliver to U.S. Bank on the Closing Date, the most current architectural drawings, permits, and, as reasonably requested by U.S. Bank, any other documents and agreements related to the Grandview project.

9. <u>Effectiveness</u>.  This Agreement shall become effective upon the last to occur of each of the following events (the "Effective Date"): (i) entry of a Final Order (as defined below); (ii) receipt by U.S. Bank of the Purchase Price (as defined in the Assignment) of the Oak Knoll Loan; (iii) receipt by U.S. Bank of $30,000 from Alan Pinn as set forth in the Guarantor Agreement; (iv) receipt by U.S. Bank of fully signed originals of this Agreement, the Assignment and the Guarantor Agreement, and (v) the Closing Date (as defined in the Assignment).

10. <u>Subject to Bankruptcy Court Approval</u>.  This Agreement is subject to and conditioned upon Bankruptcy Court approval and shall not become final until the entry by the Bankruptcy Court or of an appellate court, where applicable, of an order approving this Agreement (the "<u>Final Order</u>").  For purposes of this Agreement, a Final Order means an order, which has not been stayed, reversed or amended and as to which the time to appeal has expired and as to which no appeal was filed or, if filed, remains pending.  If this Agreement is not approved by the Bankruptcy Court, the Agreement shall be deemed null and void.

11. <u>Integration</u>.  This Agreement represents and contains the entire agreement and understanding among the parties and supersedes any and all prior agreements, representations, and understandings with respect to the matters contained herein.  This Agreement may not be amended or modified in any respect, except by a written instrument executed by the Debtor and U.S. Bank, or their respective successors, assigns or designated representatives.

12. <u>Agreement to Cooperate; Further Assurance</u>.  U.S. Bank and Debtor agree to cooperate fully with the performance of this Agreement, including, without limitation, executing any additional documents reasonably necessary to the performance of this Agreement and taking such other steps as are reasonably identified to facilitate the actions set forth in this Agreement.

13. <u>Authority</u>.  Each person who signs this Agreement represents and warrants that he or she has the authority and capacity to act on behalf of the party for whom they are signing and to bind the party and all who might claim through it to the terms of this Agreement.  The parties represent and warrant that they have not assigned, transferred, or purported to assign or transfer, in whole or in part, any interest in any of the rights and claims that are the subject of this Agreement.

14. <u>Applicable Law; Continuing Jurisdiction</u>.  This Agreement shall be interpreted, construed and enforced in accordance with the laws of the State of California and, where applicable, the United States Bankruptcy Code and Federal Rules of Bankruptcy Procedure.  The Bankruptcy Court shall have continuing jurisdiction of the resolution of any dispute arising out of or related to this Agreement.

15. <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, including by email and facsimile, each of which shall be deemed as original.  The executed counterparts shall be construed as and constitute one document.

16. <u>Successors and Assigns</u>.  This Agreement is binding upon the successors and assigns of each of U.S. Bank and Debtor, including a Chapter 11 or Chapter 7 trustee hereafter appointed in the Bankruptcy Case.


Dated:  January __, 2010          U.S. BANK NATIONAL ASSOCIATION

                                  By:_____

                                  Title:_____


Dated: January __, 2010           BLOSSOM VALLEY INVESTORS, LLC


                                  By:_____

                                  Title:_____