1  Jeffry A. Davis (SBN 103299)
2  Abigail V. O'Brient (SBN 265704)
   **Mintz Levin Cohn Ferris Glovsky and Popeo P.C.**
3  3580 Carmel Mountain Road, Suite 300
   San Diego, CA 92130
   Tel:    858-314-1500
4  Fax:   858-314-1501

5  Attorneys for Debtor and Debtor in Possession
6  Blossom Valley Investors, Inc.

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11  In re                                    Case No. 09-57669 SLJ

12  BLOSSOM VALLEY INVESTORS, INC.,          Chapter 11

13                        Debtor.            **REVISED SECOND AMENDED
                                             DISCLOSURE STATEMENT IN
14                                           SUPPORT OF DEBTOR'S REVISED
                                             SECOND AMENDED CHAPTER 11
15                                           PLAN (DATED MAY 16, 2011)**

16                                           **Disclosure Statement Hearing**

17                                           Date:      May 5, 2011
                                             Time:      3:30 p.m.
18                                           Place:     280 S. First Street
                                                        San Jose, CA  95113
19                                           Judge:     Stephen L. Johnson

20                                           **Plan Confirmation Hearing**

21                                           Date:      June 20, 2011
                                             Time:      1:30 p.m.
22

23

24

25

26

27

28

5369523v.4

# TABLE OF CONTENTS

I.      GENERAL INFORMATION AND DISCLOSURES ..................................................1

II.     WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN ....................................3

    A.      Allowed Claims and Interests ..................................................................4

    B.      Impaired Claims and Interests ................................................................5

III.    VOTES NECESSARY TO CONFIRM THE PLAN..............................................5

IV.     CRAMDOWN:  TREATMENT OF NON-CONSENTING CLASSES ..................6

V.      INFORMATION REGARDING VOTING.........................................................6

VI.     WHO MAY OBJECT TO PLAN CONFIRMATION..........................................7

VII.    DESCRIPTION OF THE DEBTOR, ITS BUSINESS, THE EVENTS
        PRECIPITATING THE FILING, AND SIGNIFICANT EVENTS IN THE
        CHAPTER 11 CASE ................................................................................8

    A.      Description of the Debtor and Its Business...............................................8

    B.      Events Leading to Chapter 11 Filing .......................................................9

    C.      Significant Events in the Case .................................................................9

        1.      Overview of Chapter 11 and the Plan Process....................................9

        2.      Filing of Petition ........................................................10

        3.      Professionals Retained at the Expense of the Estate......................10

        4.      Unexpired Leases and Executory Contracts ..................................11

        5.      Relief from Stay on Grandview ....................................12

        6.      Debtor in Possession Financing ..................................12

        7.      Settlements with Bank of the West and US Bank...........................12

VIII.   DESCRIPTION OF LIABILITIES (INCLUDING CLAIMS AND PROCEDURES
        FOR OBJECTING TO CLAIMS), EQUITY INTERESTS IN THE DEBTOR, AND
        ASSETS OF THE DEBTOR (INCLUDING LITIGATION CLAIMS) ................................13

    A.      Claims ..................................................................................13

        1.      Schedules ................................................................13

        2.      The Bar Date for Pre-Petition Claims..........................13

Case: 09-57669    Doc# 258    Filed: 05/16/11    Entered: 05/16/11 20:29:07    Page 2 of
40
5569523v.4

| | | 3. | Claim Objections | 13 |
|---|---|---|---|---|
| | B. | | Equity Interests in the Debtor | 14 |
| | C. | | Assets of the Debtor | 14 |
| | D. | | Potential Litigation Claims | 15 |
| | | 1. | Preservation of All Claims, Causes of Action, and Rights | 15 |

IX. SUMMARY OF MATERIAL PLAN PROVISIONS ...... 15

| | A. | | Designation of Classes and Treatment of Claims and Interests Generally | 15 |
|---|---|---|---|---|
| | B. | | Summary of Classification and Treatment of Claims and Interests Under the Plan | 16 |
| | C. | | Allowance and Treatment of Unclassified Claims | 19 |
| | | 1. | Administrative Claims | 19 |
| | | 2. | Priority Tax Claims | 20 |
| | D. | | Allowance and Treatment of Classified Claims and Interests | 21 |
| | | 1. | Class 1A (Secured Tax Claims on Messina Gardens) | 21 |
| | | 2. | Class 1B (Secured Tax Claims on Oak Knoll) | 21 |
| | | 3. | Class 1C (Secured Tax Claims on Grandview) | 21 |
| | | 4. | Class 2A (Secured Claim Held by Bank of the West on Messina Gardens) | 21 |
| | | 5. | Class 2B (Mechanics' Liens on Messina Gardens) | 23 |
| | | 6. | Class 3A (Secured Claim Held by Bank of the West on Oak Knoll) | 23 |
| | | 7. | Class 3B (Claim of Providers of Subordinated Loan on Oak Knoll) | 24 |
| | | 8. | Class 4 (Secured Claim Held by US Bank on Grandview) | 24 |
| | | 9. | Class 5 (Priority Unsecured Claims) | 25 |
| | | 10. | Class 6 (General Unsecured Claims Not Otherwise Classified, Including Any Secured Debts Exceeding the Value of the Collateral) | 25 |
| | | 11. | Class 7 (Unsecured Claims Held by Insiders) | 25 |
| | | 12. | Class 8 (Existing Equity Securities) | 26 |

X.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...... 26

XI.    MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN ...... 26

3369523v.4

|     | A. | Execution of Plan ................................................................... | 26 |
|     |     | 1. | Funding of Plan ........................................................ | 26 |
|     |     | 2. | Projected Budget and Payment of Claims ................. | 27 |
|     | B. | Authority to Effectuate Plan ................................................. | 28 |
|     | C. | Distribution of Property Under the Plan ............................... | 28 |
|     |     | 1. | Provision Regarding Disputed Claims ....................... | 28 |
|     |     | 2. | Objections to Claims ................................................ | 29 |
|     |     | 3. | Disallowance of Claims Held by Avoidance Action Defendant .................... | 30 |
|     |     | 4. | Time When Distributions Deemed Made ................... | 30 |
|     |     | 5. | Delivery of Distributions and Undeliverable/Unclaimed Distributions ......... | 30 |
|     | D. | Management of the Reorganized Debtor ............................... | 31 |
|     | E. | Effect of Confirmation .......................................................... | 31 |
|     | F. | Revesting of Property in the Reorganized Debtor ................ | 32 |
| XII. | BEST INTERESTS OF CREDITORS AND FEASIBILITY .......................... | | | 32 |
|     | A. | The "Best Interests" Test ...................................................... | 32 |
|     | B. | Feasibility ............................................................................. | 34 |
| XIII. | RISK FACTORS ........................................................................... | | | 34 |
| XIV. | CERTAIN FEDERAL INCOME TAX AND OTHER TAX CONSEQUENCES OF PLAN ............. | | | 35 |
| XV. | RECOMMENDATION AND CONCLUSION ....................................... | | | 36 |

Case: 09-57669    Doc# 258    Filed: 05/16/11    Entered: 05/16/11 20:29:07    Page 4 of 40

5369523v.4

## I.

## GENERAL INFORMATION AND DISCLOSURES

Blossom Valley Investors, Inc., the debtor and debtor in possession in the above-captioned case (the "Debtor" or "Blossom Valley"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") on September 10, 2009 (the "Petition Date"), thereby commencing this chapter 11 case (the "Case"). The Case is pending before the United States Bankruptcy Court for the Northern District of California, San Jose Division, before the Honorable Stephen L. Johnson (the "Bankruptcy Court" or "Court"). Since the Petition Date, the Debtor has managed its affairs as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

Blossom Valley is the proponent (the "Plan Proponent") of the *REVISED SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION (DATED MAY 16, 2011)* (the "Plan") served concurrently with this Disclosure Statement.[1] **THE DOCUMENT THAT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ATTACHED PLAN. FOR A COMPLETE UNDERSTANDING OF THE PLAN, YOU SHOULD READ THIS DISCLOSURE STATEMENT, THE PLAN, AND THE EXHIBITS TO THESE DOCUMENTS IN THEIR ENTIRETY.**

The Plan sets forth the manner in which the remaining Claims against and Interests in the Debtor will be treated upon the Debtor's reorganization under chapter 11 of the Bankruptcy Code. This Disclosure Statement describes the Debtor's prior and current business operations and the principal terms of the Plan, pursuant to which claims against the Debtor will be satisfied and monies will be distributed to the holders of Allowed Claims under the Plan.

This Disclosure Statement sets forth the assumptions underlying the Plan, describes the process that the Court will follow when determining whether to confirm the Plan, and describes how the Plan will be implemented if it is confirmed by the Bankruptcy Court. Bankruptcy Code

---

[1] Capitalized terms not otherwise defined in this Disclosure Statement shall have the meanings ascribed to them in the Plan. The Plan is the legally operative document regarding the treatment of Claims and Interests and the terms and conditions of the Debtor's reorganization. Accordingly, to the extent that there is any inconsistency between the terms contained in this Disclosure Statement and those contained in the Plan, the terms of the Plan shall govern.

3369523v.4

section 1125 requires that a disclosure statement contain "adequate information" concerning a plan of reorganization. *See* 11 U.S.C. § 1125(b).

The Court has approved the form of this document as an adequate disclosure statement that contains enough information to enable entities affected by the Plan to make an informed judgment when deciding whether to vote to accept or to reject the Plan. Court approval of the adequacy of this Disclosure Statement, however, does not constitute a determination by the Court with respect to the fairness or the merits of the Plan or the accuracy or completeness of the information contained in the Plan or Disclosure Statement. **THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN AND SERVED WITH THIS DISCLOSURE STATEMENT. THEREFORE, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. IF THE COURT LATER CONFIRMS THE PLAN, AND THE EFFECTIVE DATE OCCURS, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.**

The Plan Proponent believes that the Plan is appropriate and in the best interests of Creditors, equity security holders and the Estate. In view of the foregoing, the Plan Proponent strongly recommends that all eligible Creditors entitled to vote on the Plan cast their ballots to accept the Plan.

Please carefully read this document and the Exhibits to this document. These documents explain who may object to confirmation of the Plan, who is entitled to vote to accept or reject the Plan, and the treatment that Creditors of the Debtor and Holders of Existing Equity Interests can expect to receive if the Court confirms the Plan. This Disclosure Statement also describes the Debtor's history, the events precipitating the Case, the effect of Plan confirmation, and some of the issues the Court may consider in deciding whether to confirm the Plan. The statements and information contained in the Plan and Disclosure Statement, however, do not constitute financial or legal advice. You therefore should consult your own advisors if you have questions about the impact of the Plan on your Claims or Interests.

The financial information used to prepare the Plan and Disclosure Statement was prepared by the Plan Proponent (and its professionals) from information in the Debtor's books and records and is

3369523v.4

the sole responsibility of the Debtor. The Plan Proponent's professionals prepared the Plan and Disclosure Statement at the direction of, and with the review, input and assistance of the Debtor's management.

The statements and information that concern the Debtor and that are set forth in this document constitute the only statements and information that the Bankruptcy Court has approved for the purpose of soliciting votes to accept or reject the Plan.

You may not rely on the Plan and Disclosure Statement for any purpose other than to determine whether to vote to accept or reject the Plan. Nothing contained in the Plan or Disclosure Statement constitutes an admission of any fact or liability by any party or may be deemed to constitute evidence of the tax or other legal effects that the Debtor's reorganization may have on entities holding Claims or Interests.

Unless another time is expressly specified in this Disclosure Statement, all statements contained in this document are made as of April 29, 2011. Under no circumstances will the delivery of this Disclosure Statement or the Plan create an implication or representation that there has been no subsequent change in the information included in this document.

Where a particular word (such as "Debtor") or term (such as "Allowed Claim" or "Allowed Interest") is capitalized in this Disclosure Statement, that word or phrase has the meaning ascribed to it in the Plan. Where, however, a particular word (such as "debtor") or phrase (such as "allowed claim" or "allowed interest") is not capitalized in this Disclosure Statement, that word or phrase is not intended to refer to the definitions provided in the Plan, but rather the word or phrase is intended to have the general meaning ascribed to it in common bankruptcy parlance.

## II.

## WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

To vote to accept or reject the Plan, your Claim must be an impaired Claim or Interest and not a Disputed Claim or Interest and the Plan must provide for you to receive or retain some value on account of your Claim or Interest. Holders of unimpaired Claims and Interests are deemed to have accepted the Plan and do not vote, though they may object to confirmation of the Plan to the extent they otherwise have standing to do so. Holders of Claims and/or Interests who do not receive

Case: 09-57669    Doc# 258    Filed: 05/16/11    Entered: 05/16/11 20:29:07    Page 7 of 40
5369523v.4

or retain any value under the Plan on account of such Claim or Interest are deemed to reject the Plan. As defined by the Bankruptcy Code, a claim generally includes all rights to payment from the debtor, while an interest generally represents an ownership stake in the debtor.

## A.    Allowed Claims and Interests

Subject to the exceptions explained below, under the Bankruptcy Code, a claim or interest is generally allowed only if a proof of the claim or interest is properly filed before the Bar Date for doing so, and either no party in interest has objected to or the court has entered an order allowing the claim or interest.[2]  Under certain circumstances provided in the Bankruptcy Code, a creditor may have an allowed claim even if a proof of claim was not filed and the bar date for filing a proof of claim has passed.  For example, a claim may be deemed allowed if the claim is listed on the debtor's schedules of assets and liabilities filed with the court, is not scheduled as disputed, contingent, or unliquidated, and no party in interest has objected, or the court has entered an order allowing the claim or interest after such an objection was filed.

A Holder's Claim must be an Allowed Claim, or must be Allowed for purposes of voting, for the Holder of such Claim to have the right to vote on the Plan.  Generally, for voting purposes only, a Claim is deemed Allowed to the extent that: (1) either (a) a proof of Claim was timely Filed, or (b) a proof of Claim was deemed timely Filed either under Bankruptcy Rule 3003(b)(1)-(2) or by a Final Order; and (2) (a) the Claim is not a Disputed Claim, or (b) the Claim is Allowed either by a Final Order or under the Plan.

Under the Plan, a Creditor whose Claim is not an Allowed Claim nevertheless may be entitled to vote to accept or reject the Plan if the Creditor has timely filed a proof of Claim that is not the subject of an objection filed before the Confirmation Hearing or a Court order disallowing the Claim entered before the Confirmation Hearing.  An entity whose Claim is subject to an objection is not eligible to vote on the Plan unless and until (1) that objection is resolved in such entity's favor, provided, however, in the case of an objection which only seeks to reduce the amount of such entity's Claim, the entity shall nonetheless still be eligible to vote the reduced amount of its Claim or (2) after notice and a hearing under Bankruptcy Rule 3018(a), the Bankruptcy Court temporarily

---

[2] *See* Section VIII.A.2 for specific information regarding the General Bar Date in the Case.

5569523v.4

allows the entity's Claim or portion thereof for the purpose of voting to accept or reject the Plan. Any entity that seeks temporary allowance of its Claim for voting purposes must promptly take steps necessary to arrange for an appropriate and timely hearing with the Court.

**B.    Impaired Claims and Interests**

Generally speaking, under the Bankruptcy Code, a class of claims or interests is impaired if the plan alters the legal, equitable, or contractual rights of the members of the class, even if the alteration is beneficial to the creditors or interest holders. Section III.C of the Plan and Section IX.B of this Disclosure Statement describe, among other things, the Classes of Claims and Interests that the Plan Proponent believes to be impaired (or unimpaired) under the Plan.

**III.**

**VOTES NECESSARY TO CONFIRM THE PLAN**

Impaired claims or interests are placed in classes under the plan, and it is the class that must accept the plan by the requisite majorities. Section III.C of the Plan and Section IX.B of this Disclosure Statement summarize the classification of all Claims and Interests under the Plan. There also are some types of claims that are unclassified because the Bankruptcy Code requires that they be treated in a certain way. These claims are considered unimpaired, and their holders cannot vote.

A bankruptcy court may confirm a plan if at least one class of impaired claims has voted to accept that plan (without counting the votes of any insiders whose claims are classified within that class) and if certain statutory requirements are met both as to non-consenting members within a consenting class and as to rejecting classes. A class of claims has accepted the plan when at least a majority in number and at least two-thirds in amount of the allowed claims actually voting in that class vote to accept the plan. A class of interests has accepted the plan when at least two-thirds in amount of the allowed interests actually voting in that class vote to accept the plan.

Even if a plan receives the requisite number of votes to confirm it, the plan will not become binding unless and until, among other things, the Bankruptcy Court makes an independent determination that confirmation is appropriate. This determination will be the subject of the Confirmation Hearing. Also, as described in Article IV below, even if all Classes do not vote in

5

5369523v.4

favor of the Plan, the Plan may nonetheless be confirmed if the dissenting Classes are treated in a manner prescribed by the Bankruptcy Code.

## IV.

## CRAMDOWN: TREATMENT OF NON-CONSENTING CLASSES

The Plan may be confirmed, even if all Classes do not consent to the proposed treatment of their claims under the Plan, if the dissenting Classes are treated in the manner prescribed by the Bankruptcy Code. The process by which a plan is confirmed, notwithstanding the existence of a dissenting class, is commonly referred to as "cramdown." The Bankruptcy Code allows dissenting classes to be crammed down if the plan does not "discriminate unfairly" and is "fair and equitable." The Bankruptcy Code does not define unfair discrimination, but it does set forth certain minimum requirements for "fair and equitable" treatment. A plan is fair and equitable to holders of secured claims if the holders are to receive property equal in value to the allowed amount of the secured claims. For a class of unsecured claims, a plan is fair and equitable if the claims in that class receive value equal to the allowed amount of the claims or, if the unsecured claims are not fully paid, no claim or interest that is junior to such class receives or retains anything under the plan. Accordingly, if a class of unsecured claims rejects a plan under which a junior class (*e.g.*, a class of interest holders) will receive or retain any property under the plan, the plan cannot be confirmed (with certain possible exceptions not relevant to the Plan) unless the plan provides that the class of unsecured creditors receives value equal to the allowed amount of the claims in that class.

## V.

## INFORMATION REGARDING VOTING

Classes 1A, 1B, 2A, 2B, 6 and 7 are impaired and the Holders of Claims in those Classes are entitled to vote on the Plan. Classes 1C, 3A, 3B, 4, 5 and 8 are <u>not</u> impaired and the Holders of Claims and Interests in those Classes are <u>not</u> entitled to vote on the Plan and each of those Classes is deemed to accept the Plan. Similarly, Administrative Expenses are not classified under the Plan and the Holders thereof are not entitled to vote.

Any party that disputes the Plan Proponent's characterization of its Claim as unimpaired may request a finding of impairment from the Bankruptcy Court to obtain the right to vote, but should file

5369523v.4

and serve a motion requesting such a determination and arrange for such a motion to be heard by the Court *prior* to the hearing on confirmation of the Plan.

In voting to accept or reject the Plan, please use only the Ballot (if any) sent to you with this Disclosure Statement, and please carefully read the voting instructions on the Ballot for an explanation of the applicable voting procedures and deadlines. If you have received this Disclosure Statement without a Ballot, the Plan Proponent believes that you are: (i) a Holder of a Claim or Interest that is unimpaired by the Plan and that you, therefore, are not entitled to vote on the Plan; or (ii) otherwise not the Holder of a Claim or Interest that is entitled to vote to accept or reject the Plan.

If you nevertheless believe that you are entitled to vote on the Plan, you must file and serve a motion requesting a determination that you are entitled to vote on the Plan and arrange for such motion to be heard by the Court *prior* to the Confirmation Hearing. Before doing so, however, you should first confirm that the absence of a Ballot was not inadvertent by contacting Abigail O'Brient, Mintz Levin Cohn Ferris Glovsky and Popeo, PC, 3580 Carmel Mountain Road, Suite 300, San Diego, California 92130, Facsimile: (858) 314-1501, email: avobrient@mintz.com.

If you wish to vote to accept or reject the Plan, your Ballot must be received by Debtor's Counsel, at the address, e-mail address or facsimile number listed in the paragraph immediately above and on the cover sheet of this Disclosure Statement, **no later than 5:00 p.m. (California time), on June 10, 2011**. If your Ballot is not timely received by Debtor's Counsel, it will not be counted. Ballots must be provided to Debtor's Counsel by mail, e-mail, overnight delivery, messenger or facsimile.

Any interested party desiring further information with respect to the Plan, or seeking additional copies of this document, should contact Debtor's Counsel. All pleadings and other papers filed in these Cases may be inspected during regular court hours at the United States Bankruptcy Court, 280 South First Street, Room 3035, San Jose, California, 95113-3099.

## VI.

## WHO MAY OBJECT TO PLAN CONFIRMATION

A Confirmation Hearing has been scheduled for **June 20, 2011, at 1:30 p.m.**, at the United States Bankruptcy Court, 280 South First Street, Room 3035, San Jose, California, 95113-3099, to

Case: 09-57669    Doc# 258    Filed: 05/16/11    Entered: 05/16/11 20:29:07    Page 11 of 40

5369523v.4

determine whether the Bankruptcy Court will confirm the Plan. Any party that objects to confirmation of the Plan must file and serve its objection and evidence in support of its objection by **June 10, 2011**. Any objection to confirmation of the Plan must be in writing, specify the name and address of the party objecting, set forth the specific grounds for the objection, and be accompanied by the evidence the objecting party intends to present in support of its objection. Such objection and evidence in support thereof must be served on Debtor's Counsel, the U.S. Trustee and parties that have requested special notice in the Case. Any affiant or declarant with respect to an affidavit or declaration filed in support of an objection to Plan confirmation must be present at the Confirmation Hearing for cross-examination without the necessity of a subpoena. Failure to properly and timely File an opposition to Plan confirmation or appear at the Confirmation Hearing may be deemed to consent to the Plan's confirmation.

## VII.

### DESCRIPTION OF THE DEBTOR, ITS BUSINESS, THE EVENTS PRECIPITATING THE FILING, AND SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

**A.**     **Description of the Debtor and Its Business**

Blossom Valley is a California corporation formed in 1995 to develop, build and market residential communities. Alan Pinn serves as the president of the Debtor. He and David Pinn each own 50% of the Debtor's stock.

At the time that it filed its chapter 11 petition, Blossom Valley was developing three residential real estate projects in the greater San Jose, California area: Messina Gardens, a townhome project comprised of 33 partially complete homes, 40 finished lots (of which 31 remain unsold) and 110 podium lots; Oak Knoll, a single-family home development comprised of 25 nearly finished lots; and Grandview, a townhome project comprised of 36 nearly complete homes. The Debtor intends to complete construction and sales of the Oak Knoll development and phase 1 of Messina Gardens, and anticipates selling phases 2 and 3 of Messina Gardens in bulk. The Grandview project has been the subject of an order for relief from stay allowing foreclosure and will not be completed by the Debtor.

5369523v.4

**B.** **Events Leading to Chapter 11 Filing**

On May 28, 2009, Pacific National Bank ("PNB") and California National Bank filed an action[3] against the Debtor and other parties in connection with two loan facilities PNB had extended to Blossom Valley, an $18,100,000 loan facility to fund the construction of Grandview and a $14,000,000 loan facility to finance the construction of Oak Knoll. PNB alleges that Blossom Valley defaulted on the Grandview loan beginning on February 5, 2009 when it ceased making monthly interest payments and required tax payments, failed to pay the amount due on the loan at maturity, and encumbered the property with various mechanics' liens. PNB further alleges that because, pursuant to the terms of the Oak Knoll loan, a default under the Grandview loan constitutes a default under the Oak Knoll loan, the Debtor also defaulted on the Oak Knoll loan on February 5, 2009. In the lawsuit, PNB seeks judicial foreclosure on the Grandview and Oak Knoll deeds, a deficiency judgment against the Debtor and its guarantors, specific performance of assignment of rents in the Grandview and Oak Knoll deeds, damages for breach of the guaranties of Debtor's loans and prejudgment attachment, and a judgment quieting title as against holders of mechanics' liens. A non-judicial trustee's sale of Grandview and Oak Knoll was scheduled for 9:00 a.m. on September 10, 2009. In order to prevent foreclosure and to protect the value of the Debtor's business for its other creditors and equity holders, the Debtor filed the chapter 11 case on September 10, 2009, prior to the trustee's sale.

**C.** **Significant Events in the Case**

1. <u>Overview of Chapter 11 and the Plan Process</u>

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11, the debtor attempts to reorganize its business for the benefit of itself, its creditors, its shareholders, and other parties in interest, or, in the alternative, uses chapter 11 to effectuate an orderly liquidation of its assets.

The commencement of a chapter 11 case creates an estate consisting of all of the legal and equitable interests of the debtor in property as of the date that its bankruptcy petition is filed.

---

[3] *Pacific Nat'l Bank v. Blossom Valley Investors, Inc.*, No. 109-DV-142539 (Cal. Super. Ct. Santa Clara County May 15, 2009).

Bankruptcy Code sections 1107 and 1108 provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession," unless the bankruptcy court orders the appointment of a trustee. The Debtor has remained in possession of its property and is operating its business as a debtor in possession.

The filing of a voluntary petition under chapter 11 also operates as an automatic stay of, among other things, all attempts to collect on pre-petition claims from the debtor or otherwise interfere with the debtor's property or business. Unless otherwise ordered by the bankruptcy court, the automatic stay remains in full force and effect through the effective date of a confirmed chapter 11 plan.

The formulation of a reorganization plan is the principal objective of a chapter 11 case. A plan sets forth the means for satisfying the claims against and interests in the debtor. The Debtor's Plan provides for the treatment of all Claims against and Interests in the Debtor, including payment in full of all Allowed Claims against the Debtor.

2. Filing of Petition

On September 10, 2009, the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. A first meeting of creditors was held, pursuant to Bankruptcy Code section 341, on October 7, 2009.

3. Professionals Retained at the Expense of the Estate

During the course of the Case, the Debtor has retained professionals to assist with the administration of the Estate. The Bankruptcy Court has approved the employment of the following professionals:

- Mintz Levin Cohn Ferris Glovsky and Popeo, PC as the Debtor's Bankruptcy Counsel and

- OSAS, Inc. as the Debtor's Financial Advisor and Investment Banker.[4]

---

[4] Initially, the Debtor employed Odyssey Capital as its financial advisor and investment banker. [Docket no. 176.] However, effective January 1, 2010, Michael Bergthold and Susan Snow, who had served as the Debtor's financial advisors at Odyssey Capital, became principals of OSAS, Inc. As a result, the Debtor terminated its relationship with Odyssey and retained OSAS, Inc. as its financial advisor and investment banker effective January 1, 2010. [Docket no. 169.]

Case: 09-57669   Doc# 258   Filed: 05/16/11   Entered: 05/16/11 20:29:07   Page 14 of 40
5369523v.4

Below is a chart which sets forth the amount of Professional Fee Expenses incurred through March 31, 2011 by the Estate professionals and the amount projected to be incurred through the Effective Date:

| Professionals[5] | Estimated Fees and Costs through March 31, 2011 | Projected Additional Fees and Costs through Effective Date | Total Projected Fees and Costs |
|---|---|---|---|
| Mintz Levin | $400,000.00 | $100,000.00 | $500,000.00 |
| OSAS, Inc. | $180,000.00[6] | $18,000.00 | $198,000.00 |
| **Totals** | $580,000.00 | $118,000.00 | $698,000.00 |

Note: All amounts in the above table are estimated amounts and are subject to change. These amounts are estimates either by the respective professional or by the Plan Proponent based upon the professional's historical trends. Certain assumptions were made regarding timing and the amount of resistance the Plan and Disclosure Statement would encounter and an estimated Effective Date of June 27, 2011 was used. The actual amounts requested or Allowed by the Court may vary materially from the amounts shown here. The Plan Proponent's inclusion of these amounts in the Plan and Disclosure Statement should not and does not necessarily represent either an endorsement of or support for the amounts shown on this chart, and the Plan Proponent expressly reserves all rights to object to any or all of these amounts. Inclusion on this chart does not constitute a belief by the Plan Proponent that these amounts are authorized or reasonable.

4.     <u>Unexpired Leases and Executory Contracts</u>

Although the Debtor believes it is not a party to any executory contracts, it is the Debtor's intent to assume all executory contracts to the extent they exist pursuant to section 365 of the Bankruptcy Code.

Unless previously rejected by the Debtor, the Reorganized Debtor shall assume all unexpired leases and executory contracts as of the Effective Date. All monetary defaults under the executory contracts and unexpired leases assumed by the Reorganized Debtor hereunder shall be cured within ninety (90) days after the Effective Date. The Confirmation Order shall constitute an order approving the assumption of each lease and contract. Any party to an executory contract or unexpired lease to be assumed hereunder who objects to the assumption of such contract or lease must file and serve an objection to assumption not later than the Plan Objection Deadline.

---

[5] The Debtor also employs Alta Properties as its real estate broker. [Docket no. 41.] Pursuant to the terms of its retention agreement, Alta is paid out of sales proceeds; these payments are reflected in Exhibit 2 to this Disclosure Statement.
[6] This figure includes Professional Fee Expenses paid to Odyssey Capital for services rendered prior to January 1, 2010.

11

5369523v.4

5.      Relief from Stay on Grandview

On February 1, 2010, the Bankruptcy Court entered a stipulated order granting relief from stay allowing U.S. Bank to foreclose on the Grandview project. [Docket No. 67.]  US Bank has indicated its intention to foreclose judicially on the Grandview project, but has agreed to a settlement that provides for waiver any deficiency claim related to Grandview. [Docket No. 225.]  As part of this compromise, the Debtor agreed to provide relief from stay to the Grandview homeowners' association so that the association may make a demand upon any bond in its favor to collect any assessments owed by the Debtor.  The Court approved this compromise between US Bank and the Debtor on February 24, 2011.  [Docket No. 225.]

6.      Debtor in Possession Financing

On March 3, 2011, the Court entered an order authorizing the Debtor to use Bank of the West's cash collateral and obtain debtor in possession financing from Bank of the West to complete development of the first phase of Messina Gardens.  [Docket No. 230.]  In addition, the Debtor has obtained Bankruptcy Court approval of debtor in possession financing from Bank of the West and Alan and David Pinn to complete development and construction of Oak Knoll.  *Id.*  Bank of the West will provide two loans in the aggregate amount of $7,250,000 for site work improvements and vertical construction at Oak Knoll.  [Docket No. 196.]  Alan and David Pinn will provide a junior loan in the amount of $1,870,685 to finance development at Oak Knoll secured by the Oak Knoll project.  *Id.*

7.      Settlements with Bank of the West and US Bank

As part of separate settlements between the Debtor and Bank of the West and US Bank: Bank of the West agreed to purchase US Bank's interest in the loan extended by Pacific National Bank to finance the construction of Oak Knoll prior to the commencement of this case; Bank of the West extended the debtor in possession financing described above; the Debtor entered into a settlement pursuant to which the Debtor reaffirmed its obligations to Bank of the West under the Messina Loan (as defined in the Memorandum of Points and Authorities in Support of the Motion for Order Approving Settlement with Bank of the West Pursuant to Federal Rule of Bankruptcy Procedure 9019, docket no. 201); the Debtor released any claims or defenses against Bank of the West and

5369523v.4

US Bank; the Debtor provided additional collateral to secure the pre- and post-petition debt to Bank of the West; and the Debtor paid a forbearance fee of 0.25% of the outstanding balance of the Messina Loan owed to Bank of the West. The Court approved this compromise on February 25, 2011. [Docket No. 226.]

## VIII.

### DESCRIPTION OF LIABILITIES (INCLUDING CLAIMS AND PROCEDURES FOR OBJECTING TO CLAIMS), EQUITY INTERESTS IN THE DEBTOR, AND ASSETS OF THE DEBTOR (INCLUDING LITIGATION CLAIMS)

**A.**    **Claims**

    1.    Schedules

On September 25, 2009, the Debtor filed its Schedules. The Debtor listed total Claims against it as of the Petition Date in the amount of $43,237,904.41, including Secured Claims in the amount of $42,088,887.17, Priority Claims in the amount of $0.00, and Unsecured Claims in the amount of $1,149,017.24.

On April 8, 2011, the Debtor filed its Amended Schedules, listing Secured Claims in the amount of $42,438,781.95, Priority Claims in the amount of $0.00, and Unsecured Claims in the amount of $2,482,237.44.

    2.    The Bar Date for Pre-Petition Claims

On September 11, 2009, the Bankruptcy Court entered an order establishing a deadline of January 5, 2010 for filing proofs of pre-petition claims against the Debtor [Docket No. 7]. On that same day, the Court sent notice of the General Bar Date by first-class mail to all creditors and parties in interest.

Prior to the deadline for filing proofs of pre-petition claims, twenty proofs of claim totaling $39,764,778.51 were filed. After the claims bar date, two proofs of claim totaling $1,383,048.00 were filed.

    3.    Claim Objections

Pursuant to the Plan, the Reorganized Debtor is authorized to file Claim Objections to Claims, through and including the Claim Objection Deadline. In Exhibit 1 hereto, the Debtor has

5369523v.4

listed all creditors who have filed proofs of claim or have been listed in the Debtor's schedules as asserting a Claim against the Debtor or the Debtor's Estate, based upon the asserted nature of the Claim. The Debtor may object to such Claims for a number of reasons, including on the basis of the validity, amount (including credit for payments made during the chapter 11 case), allowability and classification of such Claims, and whether a Claim is support by a valid lien. In Exhibit 1, the Debtor has also indicated to which claims it may object. <u>Notwithstanding the foregoing, all rights are reserved on behalf of the Debtor and the Estate with respect to the allowance or disallowance of any and all Claims, including Claims not referenced in the Disclosure Statement</u>. In addition, it is possible that a Claim might be objected to by a party in interest in the Bankruptcy Case, other than the Debtor or the Reorganized Debtor. **THEREFORE, ALTHOUGH THE DEBTOR HAS SET FORTH ON <u>EXHIBIT 1</u> ITS BEST ESTIMATE OF CLAIMS TO WHICH IT WILL OBJECT, NO CREDITOR MAY RELY ON THE EXHIBIT AS AN INDICATION THAT THE DEBTOR, THE ESTATE OR ANOTHER PARTY IN INTEREST WILL NOT OBJECT TO THE AMOUNT, PRIORITY, CLASSIFICATION, OR ALLOWABILITY OF SUCH CLAIM, OR WHETHER SUCH CLAIM IS SUPPORTED BY A VALID LIEN.**

**B.      Equity Interests in the Debtor**

As of the Petition Date, Alan and David Pinn each held 50% of the Debtor's Existing Equity Securities. There has been no change in these holdings and the Debtor is not aware of any other Interests in the Debtor.

**C.      Assets of the Debtor**

On the Schedules, the Debtor listed total assets in the amount of $45,825,415.02. The Debtor's primary assets as of the petition date were its interests in the Grandview and Messina Condos and Oak Knoll single-family home properties, collectively valued at $34,375,000.00. The Debtor also listed personal property worth $11,450,415.02, comprised of bank accounts, household furnishings and liquidated debts.

**D.   Potential Litigation Claims**

   1.   Preservation of All Claims, Causes of Action, and Rights

Under the Plan, all Litigation Claims shall be retained, preserved and vested with the Reorganized Debtor as of the Effective Date. From and after the Effective Date, the Reorganized Debtor may enforce any and all Litigation Claims that the Debtor or the Estate may hold or have against any person or entity, including (1) Avoidance Actions, (2) any legal or equitable rights to subordinate, reclassify and/or disallow Claims, (3) any causes of action that could be brought by the Debtor, whether arising prior to or after the Petition Date, and (4) any and all other claims, rights, or causes of action of any kind or nature of the Debtor or the Estate that may exist under applicable bankruptcy law or nonbankruptcy law. To the extent any Litigation Claim is already pending on the Effective Date, the Reorganized Debtor may continue the prosecution of such Litigation Claim. Upon the Effective Date, the Reorganized Debtor (and only the Reorganized Debtor) shall have standing to assert any and all Litigation Claims and/or defenses vested in the Reorganized Debtor.

Except as otherwise provided in the Plan, any and all Litigation Claims shall be retained by the Reorganized Debtor free and clear of all Claims and Interests, and the Reorganized Debtor may pursue these rights of action in accordance with the Reorganized Debtor's best judgment.

## IX.

## SUMMARY OF MATERIAL PLAN PROVISIONS

The following is a narrative description of certain provisions of the Plan. The Plan is being served concurrently with this Disclosure Statement. The following summary of the Plan is qualified in its entirety by the actual terms of the Plan. In the event of any conflict, the terms of the Plan will control over any summary set forth in this Disclosure Statement.

**A.   Designation of Classes and Treatment of Claims and Interests Generally**

The Bankruptcy Code requires that a chapter 11 plan divide the different claims against, and equity interests in, a debtor into separate classes based upon their legal nature. Claims of a substantially similar legal nature are usually classified together, as are equity interests of a substantially similar legal nature. The Bankruptcy Code does not require the classification of

15

5369523v.4

administrative claims and certain priority claims, and they are typically denominated "unclassified claims."

Under Bankruptcy Code section 1124, a class of claims is "impaired" unless the plan (i) leaves unaltered the legal, equitable, and contractual rights of the holders of claims in the class; or (ii) cures all defaults (other than those arising from the debtor's insolvency, the commencement of the case, or nonperformance of a nonmonetary obligation) that occurred before or after the commencement of the case, reinstates the maturity of the claims in the class, compensates the holders for their actual damages incurred as a result of their reasonable reliance on any acceleration rights, and does not otherwise alter their legal, equitable, and contractual rights. Except for any right to accelerate the debtor's obligations, the holder of an unimpaired claim will be placed in the position it would have been if the case had not been commenced.

A chapter 11 plan must designate each separate class of claims and equity interests either as "impaired" (affected by the plan) or "unimpaired" (unaffected by the plan). If a class of claims is "impaired" under the Bankruptcy Code, the holders of claims in that class are entitled to vote on the plan (unless the plan provides for no distribution to the class, in which case the class is deemed to reject the plan), and to receive, under the plan, property with a value at least equal to the value that the holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code. If a class of claims is unimpaired, the holders of claims in that class are deemed to accept the plan.

**B.** **Summary of Classification and Treatment of Claims and Interests Under the Plan**

This Section describes the classification of Claims and Interests under the Plan -- except for Administrative Expenses and Priority Tax Claims, which are not classified -- for all purposes, including voting, confirmation and distributions under the Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description. In addition, this Section describes the treatment of Claims and Interests under the Plan. The following table (a) estimates Claim amounts, based on Debtor's Schedules and proofs of Claim filed in the Debtor's Case, and (b) summarizes the classification and treatment of Claims and Interests under the Plan, to the extent Allowed, subject to the more specific provisions of the Plan and the following more detailed sections of this Disclosure Statement.

5369523v.4

| CLASS/UNCLASSIFIED CLAIMS | DESCRIPTION[7] | TREATMENT | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|---|
| Unclassified Claims | U.S. Trustee Fees - Estimated Amount: $0 | Paid in full in Cash from the Distribution Fund on the Effective Date | Unimpaired | Not Entitled to Vote |
| | Professional Fee Expenses - Estimated Amount: *See Chart in Section VII.D.3* | Paid in full in Cash within three (3) days after Final Order Allowing such Expense | Unimpaired | Not Entitled to Vote |
| | Ordinary Course Administrative Expenses - Estimated Amount: $0 | Paid in full in Cash in accordance with terms and conditions of transaction giving rise to Expense | Unimpaired | Not Entitled to Vote |
| | Non-Ordinary Course Administrative Expenses - Estimated Amount: $0 | Paid in full in Cash on later of the Effective Date or ten (10) Business Days after Expense is Allowed by Final Order | Unimpaired | Not Entitled to Vote |
| | Priority Tax Claims - Estimated Amount: $0 | Paid in full in Cash in accordance with terms and conditions of transaction giving rise to Claim | Unimpaired | Not Entitled to Vote |
| Class 1A | Secured Tax Claims on Messina Gardens - Estimated Amount: $381,556.00 | *See discussion at Section IX.D.1* | Impaired | Entitled to Vote |
| Class 1B | Secured Tax Claims on Oak Knoll - Estimated Amount: $141,020.00 | *See discussion at Section IX.D.2* | Impaired | Entitled to Vote |
| Class 1C | Secured Tax Claims on Grandview - Estimated Amount: $0 | *See discussion at Section IX.D.3* | Unimpaired | Not Entitled to Vote |
| Class 2A | Secured Claim Held by Bank of the West on Messina Gardens - Estimated Claims Amount: $11,768,621.35 - $13,581,215.24 | *See discussion at Section IX.D.4* | Impaired | Entitled to Vote |
| Class 2B | Mechanics' Liens on Messina Gardens - Estimated Claims Amount: $140,795.89 - $1,533,123.90 | *See discussion at Section IX.D.5* | Impaired | Entitled to Vote |

---

[7]  The estimated amounts included in this chart are estimates based on the Debtor's Schedules and the proofs of Claims filed in the Debtor's Case.  The Debtor continues to analyze these Claims.  All Claims, unless previously Allowed, remain subject to dispute and disallowance.  The inclusion of the estimated amounts herein does not constitute an admission by the Debtor as to the validity of the Claims or the amounts thereof.

17

5369523v.4

| CLASS/UNCLASSIFIED CLAIMS | DESCRIPTION[7] | TREATMENT | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|---|
| Class 3A | Secured Claim Held by Bank of the West on Oak Knoll - Estimated Claim Amount: $3,363,143.92 | *See discussion at Section IX.D.6* | Unimpaired | Not Entitled to Vote |
| Class 3B | Secured Claim Held by Providers of Junior Secured Debtor in Possession Financing on Oak Knoll - Estimated Claims Amount: $1,870,685.00 | *See discussion at Section IX.D.7* | Unimpaired | Not entitled to Vote |
| Class 4 | Secured Claim Held by U.S. Bank on Grandview - Estimated Claims Amount: $12,660,077.70 | *See discussion at Section IX.D.8* | Unimpaired | Not Entitled to Vote |
| Class 5 | Priority Unsecured Claims - Estimated Amount: $0 | *See discussion at Section IX.D.9* | Unimpaired | Not Entitled to Vote |
| Class 6 | General Unsecured Claims Not Otherwise Classified, Including Any Secured Debts Exceeding Value of Collateral - Estimated Amount: $1,516,759.97 - $4,009,997.50 | *See discussion at Section IX.D.10* | Impaired | Entitled to Vote |
| Class 7 | Unsecured Claims Held by Insiders - Estimated Amount: $351,770.96 | *See discussion at Section IX.D.11* | Impaired | Entitled to Vote |
| Class 8 | Existing Equity Interests | *See discussion at Section IX.D.12* | Unimpaired | Not entitled to Vote |

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN OR DISCLOSURE STATEMENT, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR INTEREST THAT IS NOT ALLOWED.**

The treatment in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any Liens) that each Holder of an Allowed Claim or an Allowed Interest may have in or against the Debtor, the Estate, or their respective properties. This treatment supersedes and replaces any agreements or rights those entities may have in or against the Debtor, the Estate, or their respective properties.

18

### C.    Allowance and Treatment of Unclassified Claims

     1.    Administrative Claims

         a.    U.S. Trustee Fees

U.S. Trustee Fees shall be allowed in accordance with 28 U.S.C. § 1930. The Plan provides that the Reorganized Debtor will pay to the U.S. Trustee all U.S. Trustee Fees due and owing under 28 U.S.C. § 1930 in Cash on the Effective Date.

         b.    Professional Fee Expenses

Unless otherwise expressly provided in the Plan, Professional Fee Expenses will be Allowed only if (i) on or before ninety (90) days after the Effective Date, the entity seeking payment of such Professional Fee Expense both Files with the Court a fee application or a motion requesting Allowance of the Professional Fee Expense and serves the application or motion on the Reorganized Debtor and the U.S. Trustee; and (ii) the Bankruptcy Court determines such Professional Fee Expense should be Allowed. Any party in interest may File an objection to such application or motion within the time provided by the Bankruptcy Rules, the Local Rules, or within any other period that the Bankruptcy Court may establish. Unless otherwise agreed, the Reorganized Debtor will pay or cause to be paid an Allowed Professional Fee Expense, in Cash, within three (3) business days after the date on which the Bankruptcy Court order Allowing such Expense becomes a Final Order.

         c.    Ordinary Course Administrative Expenses

Any entity seeking payment of an Ordinary Course Administrative Expense may, but need not, File a motion or request for payment of such Administrative Expense. The Debtor or any other party in interest may File an objection to an Ordinary Course Administrative Expense in its discretion. The Plan provides that, unless a party in interest objects to an Ordinary Course Administrative Expense, such Administrative Expense will be Allowed and paid by the Reorganized Debtor in accordance with the terms and conditions of the particular transaction that gave rise to the Administrative Expense.

5369523v.4

d.      <u>Non-Ordinary Course Administrative Expenses</u>

Unless otherwise expressly provided in the Plan, a Non-Ordinary Course Administrative Expense will be Allowed only if: (i) on or before the Plan Objection Deadline or such earlier date as may be ordered by the Bankruptcy Court, the entity asserting such Non-Ordinary Course Administrative Expense both Files with the Court a motion requesting Allowance of the Non-Ordinary Course Administrative Expense and serves the motion on Debtor's Counsel and the U.S. Trustee, and (ii) the Bankruptcy Court determines such Administrative Expense should be Allowed. The Debtor or any other party in interest may File an objection to such motion within the time provided by the Bankruptcy Rules, the Local Rules, or within any other period that the Bankruptcy Court may establish.

Any entity seeking payment of a Non-Ordinary Course Administrative Expense that does not timely File and serve a request for payment will be barred forever from asserting such Administrative Expense against the Debtor, the Reorganized Debtor, the Estate or their property. Unless the entity holding an Allowed Non-Ordinary Course Administrative Expense agrees to different treatment, the Reorganized Debtor will pay such entity Cash in the full amount of such Allowed Administrative Expense, on or before the Effective Date, or, if not Allowed by the Effective Date, not later than ten (10) Business Days after such Administrative Expense is Allowed by a Final Order.

Unless the entity holding an Allowed Non-Ordinary Course Administrative Expense agrees to different treatment, the Reorganized Debtor will pay such entity Cash in the full amount of such Allowed Administrative Expense, on or before the Effective Date, or, if not Allowed by the Effective Date, not later than ten (10) Business Days after such Administrative Expense is Allowed by a Final Order.

2.      <u>Priority Tax Claims</u>

As of the date of the Plan, the Debtor is not aware of any Priority Tax Claims. To the extent any such Priority Tax Claims exist, these claims are unimpaired under the Plan. Allowed Priority Tax Claims that have not been satisfied or extinguished as of the Effective Date shall be paid by the

20

5369523v.4

Reorganized Debtor in accordance with the terms of the agreement between the Holder of the Allowed Priority Tax Claim and the Debtor.

**D.  Allowance and Treatment of Classified Claims and Interests**

    1.    Class 1A (Secured Tax Claims on Messina Gardens)

Class 1A consists of all Secured Tax Claims on Messina Gardens.  Class 1A is impaired under the Plan.  Unless the entity holding an Allowed Secured Tax Claim agrees to different treatment, the Reorganized Debtor will pay such entity the amount due on each lot as the closing for that lot occurs.  The Reorganized Debtor shall pay interest on the Class 1A claim at a rate of five percent per annum.  The Holders of the Class 1A Claims shall release their liens upon each lot in Messina Gardens as the closing for that lot occurs.  Class 1A Claims shall be paid in full with interest by not later than December 31, 2013.

    2.    Class 1B (Secured Tax Claims on Oak Knoll)

Class 1B consists of all Secured Tax Claims on Oak Knoll.  Class 1B is impaired under the Plan.  Unless the entity holding an Allowed Secured Tax Claim agrees to different treatment, the Reorganized Debtor will pay such entity the amount due on each home as each closing occurs.  The Reorganized Debtor shall pay interest on the Class 1B claim at a rate of five percent per annum.  The Holders of the Class 1B Claims shall release their liens upon each home in Oak Knoll as closings occur.  Class 1B Claims shall be paid in full with interest by not later than December 31, 2013.

    3.    Class 1C (Secured Tax Claims on Grandview)

Class 1C consists of all Secured Tax Claims on Grandview.  Class 1C is unimpaired under the Plan.  On the Effective Date, the Holder of the Class 1C Claim will retain its rights, if any, with respect to Grandview.

    4.    Class 2A (Secured Claim Held by Bank of the West on Messina Gardens)

Class 2A consists of the Secured Claim presently held by Bank of the West on Messina Gardens.  Class 2A is impaired under the Plan because the Holder of the Allowed Class 2A Claim will be paid over time pursuant to the provisions, *inter alia*, of its loan documents as modified by that Loan Modification and Extension Agreement as authorized by the Bankruptcy Court in its order entered March 31, 2011 approving financing from Bank of the West (the "Messina Loan

5369523v.4

Documentation"). The Holder of the Class 2A Secured Claim will retain its lien on Messina Gardens. The due date on the Class 2A Secured Claim is extended to December 31, 2012 (the "Class 2A Due Date"). The terms of the Messina Loan Documentation will govern the treatment of the Class 2A Claim under the Plan. A non-binding summary of the terms of the Messina Loan Documentation is as follows: (a) the Net Proceeds as closings occur on individual tracts and lots in Messina Gardens will be distributed to the Holder of the Class 2A Claim in the amount of the Minimum Release Price set forth in the Messina Loan Documentation and then the remaining Net Proceeds (if any) in excess of the Minimum Release Price after payment of the allocable share of payments to Holders of Class 2B for each Lot sold; (b) the Holder of the Allowed Class 2A Claim will receive the Net Proceeds as closings occur on homes in Oak Knoll after payment in full of the Allowed Class 3A Claim and funding of the Deferred Equity Account (defined below); and (c) assuming no defaults have occurred under the Messina Loan Documents, the balance owed as of the Class 2A Due Date shall be amortized over twelve months and shall be payable in four quarterly payments of principal and interest (to accrue at 7% per annum after the Class 2A Due Date) due March 31, June 30, September 30 and December 31, 2013; provided, however, that the Holder of the Class 2A Claim shall continue to be paid net proceeds from the sale of any townhome, lot or parcel with such amount credited against the next quarterly payment due. The Holder of the Class 2A Secured Claim shall release its liens upon each townhome, lot or parcel at Messina Gardens and each home at Oak Knoll as the closing of the sale of such home, lot or parcel occurs, including those closings that occur prior to the time when the Reorganized Debtor has paid the Holder of the Class 2A Secured Claim in full.

Interest will accrue on the Allowed Class 2A Claim at the rate of LIBOR plus 5% per annum continuing until December 31, 2012. In the event that the Class 2A Secured Claim is not paid in full according to the terms of, or the Reorganized Debtor otherwise defaults under, the Messina Loan Documentation, the Holder of the Class 2A Secured Claim may proceed to foreclose on its remaining collateral and/or exercise its other remedies under the Messina Loan Documentation and applicable law.

5369523v.4

### 5. Class 2B (Mechanics' Liens on Messina Gardens)

Class 2B consists of all mechanics' liens on Messina Gardens. Class 2B is impaired because Holders of Allowed Class 2B Claims will be paid over time without interest pursuant to the provisions of the Plan to the extent funds are available. The Reorganized Debtor will distribute the Net Proceeds in excess of the Minimum Release Prices set forth in the Messina Loan Documentation as closings occur on individual tracts and lots in Messina Gardens on a Pro Rata basis to the Holders of the Allowed Class 2B Claims up to the allocable share of Class 2B Claims for each lot as agreed by the Debtor and the Holders of the Class 2A Claim. The Holders of the Class 2B Claims shall release their liens upon each lot in Messina Gardens as closings occur.

The Debtor estimates that it will pay Class 2B Claims in full. However, in the event that the Class 2B Claims are not paid in full by December 31, 2013, the Holders of the Class 2B Claims may proceed to foreclose on their remaining collateral in accordance with applicable law.

### 6. Class 3A (Secured Claim Held by Bank of the West on Oak Knoll)

Class 3A consists of the Secured Claim on Oak Knoll assigned to Bank of the West by US Bank pursuant to the Assignment Agreement between Bank of the West and US Bank dated March 24, 2011. Class 3A is unimpaired under this Plan. The Holder of the Class 3A Secured Claim will retain its lien on Oak Knoll. Since Class 3A is unimpaired, the terms of its loan documentation, including, and without limitation, the Amended and Restated Loan Documentation between Bank of the West and the Debtor dated March 31, 2011 (the "Oak Knoll Loan Documentation"), will remain in full force and effect and will govern the treatment of the Class 3A Claim under the Plan. A non-binding summary of the terms of the loan documentation is as follows. The Reorganized Debtor will pay the Holder of the Allowed Class 3A Secured Claim the Net Proceeds as closings occur on individual homes at Oak Knoll, prior to all junior secured and unsecured claims (unless the Holder of the Class 3A Claim agrees otherwise), up to the Allowed Amount of its Secured Claim, plus interest from the Effective Date, as provided herein. These payments shall be applied to satisfy the Debtor's obligations to the Holder of the Class 3A Secured Claim in the following order: (1) the release price for the homes sold (as set forth in the Oak Knoll Loan Documentation); (2) establishing a deferred equity account in the amount of $700,000 (the

Case: 09-57669   Doc# 258   Filed: 05/16/11   Entered: 05/16/11 20:29:07   Page 27 of 40

"Deferred Equity Account") to be used to pay for deferred equity requirements at the sole discretion of the Holder of the Allowed Class 3A Secured Claim; and (3) the outstanding principal and interest up to the Allowed Amount of the Class 3A Secured Claim. The Holder of the Class 3A Secured Claim shall release its liens upon each home at Oak Knoll as the closing of the sale of such home occurs, including those closings that occur prior to the time when the Reorganized Debtor has paid the Holder of the Class 3A Secured Claim in full. Interest will accrue on the Allowed Class 3A Claim at the rate of prime plus 1%, with a floor of 6%. In the event that the Class 3A Secured Claim is not paid in full within two years of the date the Holder of the Class 3A Claim extended debtor in possession financing for construction at Oak Knoll or the Reorganized Debtor otherwise defaults under the Oak Knoll Loan Documentation, the Holder of the Class 3A Secured Claim may proceed to foreclose on its remaining collateral and/or exercise its other remedies under the Oak Knoll Loan Documentation in accordance with applicable law.

7. Class 3B (Claim of Providers of Subordinated Loan on Oak Knoll)

Class 3B consists of the Secured Claim held by the persons providing subordinated debtor in possession financing to complete the Oak Knoll project. Class 3B is unimpaired. The Reorganized Debtor will pay Allowed Class 3B Claims on a pro rata basis, after the Class 2A and 3A Secured Claims are paid in full and after the Deferred Equity Account is fully funded, from Net Proceeds from the sale of properties at Oak Knoll, up to the Allowed Amount of their Secured Claims. The Holders of the Class 3B Secured Claims shall release their liens upon each home at Oak Knoll as closings occur, including those closings that occur prior to the time when the Reorganized Debtor begins making payments to the Holders of the Allowed Class 3B Claims.

Interest will accrue on the Class 3B Claim at the rate of 6%. In the event that the Class 3B Claim is not paid in full within three years of the date the Holders of the Class 3B Claims extended debtor in possession financing for construction at Oak Knoll, the Holders of the Class 3B Claims may proceed to foreclose on their remaining collateral in accordance with applicable law.

8. Class 4 (Secured Claim Held by US Bank on Grandview)

Class 4 consists of the Secured Claim presently held by US Bank, as successor in interest to Pacific National Bank, on Grandview. Class 4 is unimpaired under the Plan. The Reorganized

Case: 09-57669   Doc# 258   Filed: 05/16/11   Entered: 05/16/11 20:29:07   Page 28 of 40
5369523v.4

Debtor has stipulated to relief from stay and anticipates that the Holder of the Allowed Class 4 Claim will foreclose on Grandview. Pursuant to the settlement agreement between the Debtor and US Bank, which was approved by the Court on February 25, 2011 [docket no. 225], US Bank waived its right to assert an unsecured deficiency claim against the Debtor with respect to Grandview.

        9.     <u>Class 5 (Priority Unsecured Claims)</u>

Class 5 consists of Priority Unsecured Claims. As of the date of the Plan, the Debtor is not aware of any Priority Unsecured Claims. To the extent that any such Priority Unsecured Claims exist, Allowed Class 5 Claims shall be paid by the Reorganized Debtor in full on the Initial Distribution Date. Class 5 Claims are unimpaired.

        10.    <u>Class 6 (General Unsecured Claims Not Otherwise Classified, Including Any Secured Debts Exceeding the Value of the Collateral)</u>

Class 6 consists of General Unsecured Claims Not Otherwise Classified, including any secured debt exceeding the value of the collateral for such debt and including mechanics' liens on Grandview and Oak Knoll. Class 6 is impaired under the Plan because Holders of Allowed Class 6 Claims will be paid from Net Proceeds of Messina Gardens and Oak Knoll as such Net Proceeds become available, but only after Class 1A, 1B, 2A, 2B, 3A, 3B and 5 Claims have been paid in full and the Deferred Equity Account has been fully funded. Each Holder of an Allowed Class 6 Claim shall be paid its Allowed Class 6 Claim on a Pro Rata basis from the closing of individual lots, homes or tracts up to such amount as is Allowed to the extent any funds remain after payment in full to Holders of Allowed Class 1A, 1B, 2A, 2B, 3A, 3B and 5 Claims, up to the amount of its Allowed Class 6 Claim, without interest. Class 6 Claims will be paid in full by not later than December 31, 2013.

        11.    <u>Class 7 (Unsecured Claims Held by Insiders)</u>

Class 7 consists of Unsecured Claims Held by Insiders. Class 7 is impaired under the Plan because Holders of Allowed Class 7 Claims are subordinated to all other Classes and will be paid from Net Proceeds of Messina Gardens and Oak Knoll as such Net Proceeds become available, but only after Class 1A, 1B, 2A, 2B, 3A, 3B, 5 and 6 Claims have been paid in full and the Deferred

5369523v.4

Equity Account has been fully funded.  Each holder of an Allowed Class 7 Claim shall be paid up to its Allowed Class 7 Claim on a Pro Rata basis in such amount as is Allowed, commencing after all other Allowed Claims have been paid in full.  Class 7 Claims will be paid in full not later than December 31, 2013.

        12.    <u>Class 8 (Existing Equity Securities)</u>

Class 8 consists of all Existing Equity Security Interests.  Class 8 is not impaired under the Plan and is not entitled to vote.  All Holders of Existing Equity Security Interests shall retain their Interests in the Reorganized Debtor as of the Effective Date.

**X.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Although the Debtor believes it is not a party to any executory contracts, it is the Debtor's intent to assume all executory contracts to the extent they exist pursuant to section 365 of the Bankruptcy Code.  The Plan provides that the Reorganized Debtor shall assume all unexpired leases and executory contracts as of the Effective Date, except those previously rejected.  All monetary defaults under the executory contracts and unexpired leases assumed by the Reorganized Debtor hereunder shall be cured within ninety (90) days after the Effective Date.  The Confirmation Order shall constitute an order approving the assumption of each lease and contract.  Any party to an executory contract or unexpired lease to be assumed hereunder who objects to the assumption of such contract or lease must file and serve an objection to assumption not later than the Plan Objection Deadline.

**XI.**

**MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

**A.**    <u>**Execution of Plan**</u>

        1.    <u>Funding of Plan</u>

On March 3, 2011, the Court entered an order authorizing the Debtor (1) to use Bank of the West's cash collateral and (2) to obtain debtor in possession financing from Bank of the West to complete development of the first phase of Messina Gardens.  [Docket No. 230.]  In addition, the Debtor has obtained Bankruptcy Court approval for debtor in possession financing from Bank of the

Case: 09-57669    Doc# 258    Filed: 05/16/11    Entered: 05/16/11 20:29:07    Page 30 of 40

5369523v.4

West and Alan and David Pinn to complete development and construction of Oak Knoll. *Id.* Bank of the West will provide two loans in the aggregate amount of $7,250,000 for site work improvements and vertical construction at Oak Knoll. [Docket No. 196.] Alan and David Pinn will provide a junior loan in the amount of $1,870,685 to finance development at Oak Knoll. *Id.* The Debtor intends to build out Oak Knoll and sell completed homes at retail, and estimates that the sale of this project will result in proceeds in excess of $5,474,000, after payment of ongoing project costs, the Bank of the West debt, and the junior secured debtor in possession financing. The Debtor has substantially completed construction of the first phase of Messina Gardens and will sell the completed townhomes at retail. The Debtor does not anticipate completing the second and third phases of Messina Gardens and will instead sell thirty-one finished townhome lots and one hundred and ten podium lots in bulk. The Debtor anticipates that the sale of the completed townhomes and lots at Messina Gardens will result in proceeds in excess of $1,137,000, after payment of ongoing project costs, the Bank of the West debt and mechanics' liens against the project. The Net Proceeds from the sale of the Oak Knoll and Messina projects will then be used to satisfy unpaid administrative expenses and Class 1, 6 and 7 Claims.

The Debtor does not intend to complete the Grandview project and has stipulated to relief from stay to allow US Bank to foreclose on its deeds of trust on that project. US Bank has indicated its intention to foreclose judicially on the Grandview project. The Court has approved a settlement agreement between the Debtor and US Bank pursuant to which US Bank will waive any deficiency claim related to Grandview. [Docket No. 225.]

2.    Projected Budget and Payment of Claims

As stated above in Section IX.B-D, Allowed Class 1, 2, 3, 6 and 7 Claims will be paid over time from the sale of homes at Messina Gardens and Oak Knoll to the extent funds are available. Attached hereto as Exhibit 2 is a pro forma estimated budget of revenues and expenses through March 2013. The budget set forth in Exhibit 2 is only a projection and is based on a number of assumptions, including, but not limited to: (i) extensive repairs to unsold homes will not be needed due to a catastrophic event and (ii) the revenue from home sales will not be reduced due to a

5369523v.4

decrease in the demand, a decrease in sale price, or a catastrophic event resulting in substantial damage to unsold homes.

BECAUSE OF THE UNCERTAIN NATURE OF THE PROJECTIONS IN EXHIBIT 2, AND UNKNOWN FACTORS WHICH MAY AFFECT THE ASSUMPTIONS ON WHICH THE PROJECTIONS ARE BASED, CREDITORS SHOULD NOT RELY ON THESE PROJECTIONS AS A BASIS FOR DETERMINING WHEN AND TO WHAT EXTENT SUCH CREDITOR'S RESPECTIVE CLAIM WILL BE SATISFIED. THE PROJECTIONS IN EXHIBIT 2 ARE FOR PURPOSES OF ILLUSTRATION ONLY AND ARE NON-BINDING ON THE DEBTOR, THE REORGANIZED DEBTOR, OR ANY SUCCESSOR-IN-INTEREST.

**B.** **Authority to Effectuate Plan**

Upon entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order will act as an order modifying the Debtor's Bylaws, if necessary, such that the provisions of the Plan can be effectuated. The Debtor will be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to consummate and carry out the Plan and to effectuate the distributions provided for under the Plan.

**C.** **Distribution of Property Under the Plan**

The following procedures set forth in the Plan apply to distributions made pursuant to the Plan by the Reorganized Debtor:

1.   Provision Regarding Disputed Claims

As set forth in the Plan, the Debtor shall implement the following additional procedures with respect to the allocation and distribution of Cash in accordance with the Plan to the Holders of Disputed Claims that become Allowed Claims:

a.   Cash on account of the disputed portion of Disputed Claims shall not be distributed, but shall be withheld by the Reorganized Debtor in an amount equal to the distributions that would have otherwise been made to the Holders of such Claims if such Claims had been Allowed Claims, based on such disputed portion (the "Disputed Reserve Amount").

5369523v.4

Case: 09-57669   Doc# 258   Filed: 05/16/11   Entered: 05/16/11 20:29:07   Page 32 of 40

b.      The Bankruptcy Court may estimate the amount of any Disputed Claim pursuant to Bankruptcy Code section 502(c), in which event the amounts so fixed or liquidated shall be deemed to be Allowed Claims pursuant to Bankruptcy Code section 502(c) for purposes of distribution under the Plan.  In lieu of estimating the amount of any Disputed Claim, the Bankruptcy Court or the Debtor may determine the amount to be reserved for such Disputed Claim, or such amount may be fixed by agreement in writing by and between the Debtor and the Holder thereof.

c.      When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the Holder of such Allowed Claim, in accordance with the provisions of the Plan, Cash equal to what the Holder would have received on account of the disputed portion of the Claim which has been Allowed through such a date.

d.      No Holder of a Disputed Claim shall have any Claim against the Cash reserved with respect to such Claim until such Disputed Claim shall become an Allowed Claim.  In no event shall any Holder of any Disputed Claim be entitled to receive (under the Plan or otherwise) any payment which is greater than the amount reserved for such Claim pursuant to the Plan or, except as otherwise permitted under the Plan, of interest or other compensation for delays in distribution.

e.      To the extent a Disputed Claim ultimately becomes an Allowed Claim in an amount less than the Disputed Amount or Disputed Reserve Amount reserved for such Disputed Claim (as applicable), then the resulting surplus of Cash shall be distributed among the Holders of Allowed Claims until such time as each Holder of an Allowed Claim has been paid the Allowed Amount of its Claim.

2.      Objections to Claims

Unless another date is established by order of the Bankruptcy Court, any objection to a Claim shall be filed with the Bankruptcy Court and served on the Creditor holding such Claim on or before the Claim Objection Deadline.  The Reorganized Debtor shall have the right to request that the Bankruptcy Court extend the Claim Objection Deadline.

29

5369523v.4

3. Disallowance of Claims Held by Avoidance Action Defendant

As set forth in the Plan, all Claims held by persons against whom an Avoidance Action has been asserted shall be deemed disallowed pursuant to Bankruptcy Code section 502(d), and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such Avoidance Action against the Holder has been settled or resolved by a Final Order and all sums due to the Reorganized Debtor by the Holder are turned over to the Reorganized Debtor.

4. Time When Distributions Deemed Made

The Plan provides that all distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid, and all distributions by wire transfer shall be deemed made as of the date the Federal Reserve Bank deems the wire transfer is made.

5. Delivery of Distributions and Undeliverable/Unclaimed Distributions

a. Delivery of Distributions in General

The Plan provides that the Reorganized Debtor shall make distributions to each Holder of an Allowed Claim by mail as follows: (a) at the address set forth on the proof of Claim Filed by such Holder of an Allowed Claim; or (b) at the address reflected in the Schedules if no proof of Claim is Filed, provided, however, to the extent a Holder of an Allowed Claim notifies the Reorganized Debtor of a new address, the Distribution shall be sent to that new address.

The Reorganized Debtor may withhold the entire distribution due to any Holder of an Allowed Claim until such time as the Holder provides the Reorganized Debtor with the information necessary to make a distribution to such Holder in accordance with the Plan and applicable law, and Holders of Allowed Claims who do not provide such information shall be barred from participating in distributions under the Plan.

b. Undeliverable and Unclaimed Distributions

Under the Plan, if the distribution to the Holder of any Allowed Claim is returned as undeliverable, the Reorganized Debtor shall make reasonable efforts to locate the Holder's current address and shall send distributions to that address. If, after these efforts, the Reorganized Debtor is unable to locate the Holder, no further distribution will be made to the Holder unless and until the

5369523v.4

Reorganized Debtor is notified in writing of the Holder's then current address. Subject to the other provisions of the Plan, undeliverable distributions shall remain in the possession of the Reorganized Debtor pursuant to this Section until the earlier of: (i) such time as a distribution becomes deliverable; or (ii) ninety (90) days following the payment in full of all Allowed Claims in such Class for which distributions were deliverable. Any undeliverable distributions that are not claimed within ninety (90) days following the payment in full of Allowed Claims for which distributions were deliverable will be transferred to the Reorganized Debtor.

**D.    Management of the Reorganized Debtor**

The Plan provides that after the Effective Date, BWS, an affiliate of the Debtor, shall manage the Reorganized Debtor's operations including all administrative functions, construction management and sales for a fee equal to 5% of the revenues. Alan Pinn will continue to serve as president of the Reorganized Debtor, and he and David Pinn will each continue to own 50% of the Reorganized Debtor's stock.

**E.    Effect of Confirmation**

On the Effective Date, except as otherwise specifically provided in the Plan, the Debtor, the Reorganized Debtor, and their property shall be discharged and released from any and all Claims, Administrative Expenses, and other debts, demands and liabilities of any Creditor for which the Debtor is or is alleged to be liable, including those which are contingent, unliquidated or disputed, that arose before entry of the Confirmation Order and any and all debts of every kind, character and description specified in Bankruptcy Code sections 502(g), 502(h) or 502(i), whether or not (i) a proof of Claim based on such debt has been filed under Bankruptcy Code section 501, (ii) such Claim is an Allowed Claim under Bankruptcy Code section 502, (iii) such Claim has been listed in the Schedules, or (iv) the Holder of such Claim has accepted the Plan, pursuant to Bankruptcy Code section 1141. Pursuant to Bankruptcy Code section 524, this discharge shall, as of the Effective Date: (1) void any judgment at any time obtained, to the extent that such judgment is a determination of such person's liability with respect to any debt or Claim discharged, whether or not discharge of such debt is waived; and (2) operate as an injunction against the commencement or continuance of

31

5369523v.4

any action, the employment of any process, or any act, to collect, recover or offset any liability of such person with respect to any debt discharged, whether or not discharge of such debt is waived.

**F.    Revesting of Property in the Reorganized Debtor**

The Plan provides that as of the Effective Date, the assets of the Debtor distributed under the Plan shall be free and clear from any and all liens, encumbrances, debts, demands, liabilities or other claims of the Holders of Claims and Interests except as otherwise provided under the Plan or the Confirmation Order.  All other property of the Estate shall revest in the Reorganized Debtor, including, but not limited to (i) claims, causes of action, and other Litigation Rights, (ii) rights to pursue Claim Objections, (iii) rights to pursue affirmative relief against Creditors, Interest Holders and others, including, but not limited to, Avoidance Actions, (iv) claims, causes of action and litigation brought prior to the Effective Date, and (v) any other rights the Debtor may have.

## XII.

## BEST INTERESTS OF CREDITORS AND FEASIBILITY

**A.    The "Best Interests" Test**

In addition to the other requirements described in this Disclosure Statement, the Bankruptcy Code requires that a chapter 11 plan satisfy the "best interests of creditors" test (the "Best Interests Test").  Under this test, if the holder of an allowed claim or allowed interest is in an impaired class and does not vote to accept the plan, that holder must receive or retain property of a value not less than the amount that such entity would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code.  In a chapter 7 case, a debtor's assets are typically sold by a chapter 7 trustee.  Secured creditors are paid first from the sales proceeds of property on which the secured creditors have liens.  Any remaining proceeds from the sale of estate property are next distributed to satisfy administrative claims, including a fee to the trustee.  Unsecured creditors are then paid from any remaining sales proceeds according to the priorities set forth in the Bankruptcy Code.  Unsecured creditors with the same priority share on a pro rata basis with other unsecured creditors of the same priority.  Finally, interest holders receive any remaining proceeds on a pro rata basis with other interest holders.

Case: 09-57669    Doc# 258    Filed: 05/16/11    Entered: 05/16/11 20:29:07    Page 36 of 40

5369523v.4

In order to confirm the Plan, the Bankruptcy Court must find that Creditors and Interest Holders in an impaired Class who do not accept the Plan will receive at least as much under the Plan as they would receive under a chapter 7 liquidation. Here, the recovery that may be realized by General Unsecured Creditors on account of their Claims is greater under the terms of the Plan than it would be in a chapter 7 liquidation. The Plan provides that the Reorganized Debtor will complete development of Messina Gardens and Oak Knoll which, according to the Debtor's projections, will result in greater sale proceeds, even after completion costs, than liquidation of those properties absent further development. As such, there is no reason to believe that Creditors of the Debtor would receive more in a chapter 7 liquidation than they would receive under the Plan.

Attached hereto as Exhibit 3 is a schedule setting forth the Debtor's estimate as to the result of a hypothetical chapter 7 liquidation. The values ascribed to the assets, claims, expenses and other items on Exhibit 3 are the Debtor's estimates as to the liquidation value of such items only. The Debtor's estimates are based on numerous assumptions, including those set forth in the Notes attached to Exhibit 3, the accuracy of which may significantly affect the actual liquidation value of such items. BECAUSE OF THE UNCERTAIN NATURE OF THE PROJECTIONS AND VALUATIONS IN EXHIBIT 3, AND THE FACTORS, BOTH KNOWN AND UNKNOWN, AFFECTING THE ASSUMPTIONS ON WHICH THE PROJECTIONS AND VALUATIONS ARE BASED, CREDITORS SHOULD NOT RELY ON THESE PROJECTIONS AS AN ACCURATE PREDICTION OF THE POTENTIAL RESULTS OF A CHAPTER 7 LIQUIDATION OF THE DEBTOR'S ASSETS OR THE DISTRIBUTION CREDITORS WOULD RECEIVE UNDER SUCH A SCENARIO. THE PLAN PROPONENT MAKES NO REPRESENTATIONS REGARDING THE ACTUAL LIQUIDATION VALUE OF THE DEBTOR'S ASSETS OR THE DISTRIBUTION, IF ANY, CREDITORS WOULD RECEIVE IN A CHAPTER 7 LIQUIDATION. THE PROJECTIONS IN EXHIBIT 3 ARE MADE FOR PURPOSES OF ILLUSTRATING ONE POSSIBLE RESULT OF A CHAPTER 7 LIQUIDATION ONLY, AND ARE NON-BINDING ON THE DEBTOR, THE REORGANIZED DEBTOR, OR ANY SUCCESSOR-IN-INTEREST.

It is the Debtor's belief that liquidation under chapter 7 would yield a less favorable result for Holders of Class 1A, 1B, 2A, 2B, 3A, 3B, 6 and 7 Claims. In such a liquidation, Oak Knoll and

5369523v.4

Messina would be liquidated for an amount less than the value of the secured debt against each. Accordingly, Holders of Class 1A, 1B, 2A, 2B and 3A Claims would not be paid in full and Holders of Class 3B, 5, 6 and 7 Claims would receive no distributions.

In light of the foregoing, the Plan Proponent believes that the Plan is in the best interests of Creditors and should be confirmed.

**B.** **Feasibility**

The Bankruptcy Code requires that, in order for the Plan to be confirmed by the Bankruptcy Court, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor, unless such liquidation or reorganization is proposed in the Plan. "The feasibility test is firmly rooted in predictions based on objective fact and looks at the probability of actual performance of the provisions of the proposed plan." *In re Sound Radio, Inc.*, 93 B.R. 849, 855 (Bankr. D. N.J. 1988).

As set forth on Exhibit 2, it is very likely that the Reorganized Debtor will be able to make all payments required under the Plan.

**XIII.**

**RISK FACTORS**

Certain risk factors exist which may affect consummation of the Plan and the payment of amounts necessary to satisfy Allowed Claims.

Home buyers may not purchase the condos and single-family homes constructed by the Debtor. This would significantly affect the level of Cash available for distribution and the resources available to make payments on account of Allowed Claims under the Plan.

In addition, certain unforeseen circumstances may prevent the Reorganized Debtor from meeting its obligations under the Plan. These circumstances generally involve risks associated with doing business, including, but not limited to, unforeseen litigation or liability, decreased home sale prices due to lower demand, decreased market share due to increased competition in the Reorganized Debtor's industry, and the unlikely possibility of a catastrophic event, making the unsold homes, or a signification portion of them, unfit for use and sale.

# XIV.

## CERTAIN FEDERAL INCOME TAX AND OTHER TAX CONSEQUENCES OF PLAN

The following discussion is a summary of certain U.S. federal income tax consequences of the Plan to the Debtor. This discussion is based on the Internal Revenue Code, Treasury Regulations, judicial decisions and published administrative rules and pronouncements of the IRS as in effect on the date hereof. Due to the possibility of changes in the law and the potential for disputes as to legal and factual matters with the IRS, the tax consequences described in the Plan are subject to significant uncertainties. No legal opinions have been requested from counsel with respect to any tax aspects of the Plan and no rulings have been or will be requested from the IRS with respect to any of the issues discussed below. Furthermore, legislative, judicial or administrative changes may occur, perhaps with retroactive effect, which could affect the accuracy of the statements and conclusions set forth below as well as the tax consequences to the Debtor. Notwithstanding the foregoing, the Plan is not expected to have any significant tax impact on the Debtor. However, if the Reorganized Debtor is unable to pay all Claims in full, the Reorganized Debtor may incur cancellation indebtedness income but the Reorganized Debtor will have no funds to pay the taxes on such cancellation of indebtedness income.

**THE FOREGOING IS INTENDED ONLY TO BE A SUMMARY OF TAX CONSEQUENCES TO THE DEBTOR AND IS NOT INTENDED TO CONSTITUTE A DISCUSSION OF TAX CONSEQUENCES APPLICABLE TO HOLDERS OF CLAIMS AND INTERESTS. THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ON HOLDERS OF CLAIMS AND INTERESTS MAY BE COMPLEX. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE TO SUCH HOLDERS UNDER THE PLAN.**

## XV.

### RECOMMENDATION AND CONCLUSION

The Plan Proponent believes that acceptance of the Plan is in the best interests of the parties, and that any alternative would likely result in a reduced or delayed recovery to Holders of Allowed Claims, as well as additional expense. Accordingly, the Plan Proponent urges Holders of impaired Claims (and which are entitled to vote), to vote to accept the Plan, by so indicating on their Ballots, and returning them as specified in this Disclosure Statement and on their Ballots.

Date: May 16, 2011

**BLOSSOM VALLEY INVESTORS, INC.**
Debtor in Possession

By: _____

Alan Pinn
President

36