Jeffry A. Davis (SBN 103299)
Joseph R. Dunn (SBN 238069)
Abigail V. O'Brient (SBN 265704)
**Mintz Levin Cohn Ferris Glovsky and Popeo P.C.**
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Tel:    858-314-1500
Fax:    858-314-1501

Attorneys for Debtor in Possession
Blossom Valley Investors, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 09-57669 SLJ |
| BLOSSOM VALLEY INVESTORS, INC., | Chapter 11 |
| Debtor in Possession. | **MEMORANDUM IN SUPPORT OF CONFIRMATION OF DEBTOR'S REVISED SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION (DATED MAY 16, 2011)** |

<u>Plan Confirmation Hearing</u>
Date:          June 20, 2011
Time:          1:30 p.m.
Place:         280 S. First St.
               San Jose, CA
Judge:         Stephen L. Johnson

TABLE OF CONTENTS

I.    OVERVIEW ...................................................................................................................1

II.   THE PLAN COMPLIES WITH EACH OF THE REQUIREMENTS OF
      SECTION 1129 AND SHOULD BE CONFIRMED ..................................................2

      A.    Section 1129(a)(l): The Plan Complies with All Applicable Provisions of the
            Bankruptcy Code ...............................................................................................2

            1.    Section 1122: The Plan Properly Classifies Claims and Interests ...................3

            2.    Section 1123: The Plan Satisfies the Mandatory and Permissive
                  Content Requirements of the Bankruptcy Code ...........................................4

      B.    Section 1129(a)(2): The Debtor Has Complied with the Applicable Provisions
            of the Bankruptcy Code .....................................................................................10

      C.    Section 1129(a)(3): The Plan Has Been Proposed in Good Faith and Not By
            Any Means Forbidden by Law ..........................................................................11

      D.    Section 1129(a)(4): Payments Made for Professional Fees are Subject to Court
            Approval ............................................................................................................12

      E.    Section 1129(a)(5): Information Regarding Post-Confirmation Management
            and Insiders is Adequately Disclosed in the Plan ............................................12

      F.    Section 1129(a)(6): The Plan Contains No Rate Changes Subject to the
            Jurisdiction of Any Governmental Regulatory Commission ............................13

      G.    Section 1129(a)(7): The Plan is in the Best Interests of the Debtor's Creditors
            and Equity Interest Holders ..............................................................................13

      H.    Section 1129(a)(8): Each Impaired Class Has Voted to Accept the Plan or Can
            Be Crammed Down ............................................................................................14

            1.    Class 1A .........................................................................................................14

            2.    Class 1B .........................................................................................................15

            3.    Class 2A .........................................................................................................15

            4.    Class 2B .........................................................................................................15

            5.    Class 6 ............................................................................................................15

            6.    Class 7 ............................................................................................................15

      I.    Section 1129(a)(9): The Plan Provides for Payment in Full of Allowed
            Priority Claims ..................................................................................................15

            1.    U.S. Trustee Fees ..........................................................................................16

            2.    Professional Fee Expenses .............................................................................16

            3.    Ordinary Course Administrative Expenses.....................................................16

4. Non-Ordinary Course Administrative Expenses ...............................................16

5. Priority Tax Claims...............................................................................17

J. Section 1129(a)(10): At Least One Class of Impaired Claims Has Accepted the Plan...............................................................................................17

K. Section 1129(a)(11): The Plan is Not Likely To Be Followed By Further Reorganization or Liquidation ...............................................................17

L. Section 1129(a)(12): All Statutory Fees Have Been or Will Be Paid..........................18

M. Section 1129(a)(13): The Debtor is Not Required to Pay Retiree Benefits.................18

N. Sections 1129(a)(14)-(16) are not Applicable in this Case...........................................19

III. CONCLUSION...........................................................................................19

TABLE OF AUTHORITIES

Cases

*Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*,
    184 B.R. 648 (S.D.N.Y. 1995)..................................................................................... 8

*Bank of America Nat'l Trust & Sav. Assoc. v. 203 North LaSalle St., P'ship*,
    526 U.S. 434 (1999)............................................................................................... 13

*In re 11,111, Inc.*,
    117 B.R. 471 (Bankr. D. Minn. 1990) .......................................................................... 3

*In re Amerivision Comms., Inc.*,
    349 B.R. 718 (B.A.P. 10th Cir. 2006) ........................................................................... 8

*In re Arnold*,
    806 F.2d 937 (9th Cir. 1986) .................................................................................... 11

*In re Associated Vintage Group, Inc.*,
    283 B.R. 549 (B.A.P. 9th Cir. 2002) ............................................................................ 9

*In re Avila*,
    296 B.R. 95 (Bankr. S.D.N.Y. 2003) ......................................................................... 13

*In re County of Orange*,
    219 B.R. 543 (Bankr. C.D. Cal. 1997) ......................................................................... 9

*In re Drexel Burnham Lambert Group Inc.*,
    138 B.R. 723 (Bankr. S.D.N.Y. 1992)............................................................... 3, 12, 18

*In re Ionosphere Clubs, Inc.*,
    98 B.R. 174 (Bankr. S.D.N.Y. 1989) ......................................................................... 11

*In re Jersey City Med. Ctr.*,
    817 F.2d 1055 (3d Cir. 1987).................................................................................... 3

*In re Johns-Manville Corp.*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986) ......................................................................... 10

*In re Leslie Fay Cos., Inc.*,
    207 B.R. 764 (Bankr. S.D.N.Y. 1997) ........................................................................ 11

*In re Resorts Int'l, Inc.*,
    145 B.R. 412 (Bankr. D.N.J. 1990) ........................................................................... 12

*In re Sound Radio, Inc.*,
    93 B.R. 849 (Bankr. D.N.J. 1988) ............................................................................. 11

*Internal Revenue Service v. Kaplan (In re Kaplan)*,
    104 F.3d 589 (3d Cir. 1997)..................................................................................... 17

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
    987 F.2d 154 (3d Cir. 1993)...................................................................................... 3

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
843 F.2d 636 (2d Cir. 1988)..................................................................................... 11, 18

*Liberty Nat'l Enters. v. Ambac La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship),*
115 F.3d 650 (9th Cir. 1997) ......................................................................................... 2

*NLRB v. Bildisco & Bildisco,*
465 U.S. 513 (1984)..................................................................................................... 12

*Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture),*
995 F.2d 1274 (5th Cir. 1992) ...................................................................................... 3

*Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.),*
761 F.2d 1374 (9th Cir. 1985) .................................................................................... 17

*In re Texaco Inc.,*
84 B.R. 893 (Bankr. S.D.N.Y. 1988) .............................................................. 3, 10, 12

*Ryan v. Loui (In re Corey),*
892 F.2d 829 (9th Cir. 1989) ..................................................................................... 11

*In re Cellular Info. Sys., Inc.,*
171 B.R. 926 (S.D.N.Y. 1994)................................................................................... 18

<u>Statutes</u>

11 U.S.C. § 330 ........................................................................................................... 12

11 U.S.C. § 331 ........................................................................................................... 12

11 U.S.C. § 365 ............................................................................................................. 8

11 U.S.C. § 502 ....................................................................................................... 2, 10

11 U.S.C. § 507 ....................................................................................................... 5, 15

11 U.S.C. § 524 ............................................................................................................. 2

11 U.S.C. § 1141 ........................................................................................................... 2

11 U.S.C. § 1122 ................................................................................... 2, 3, 4, 5, 8, 10

11 U.S.C. § 1123 ....................................................................... 2, 3, 4, 5, 6, 7, 8, 9, 10

11 U.S.C. § 1125 ......................................................................................................... 10

11 U.S.C. § 1126 ........................................................................................... 1, , 10, 14

11 U.S.C. § 1129 ........................................................................................... 1, 2, 13, 19

11 U.S.C. § 1129 ................................. 1, 2, 3, 10, 11, 12, , 13, 14, 15, 16, 17, 18, 19

28 U.S.C. § 1930......................................................................................................16, 18

<u>Rules</u>

Federal Rule of Bankruptcy Procedure 2002 ...................................................... 1, 10

Federal Rule of Bankruptcy Procedure 3017 ............................................................................ 1

Federal Rule of Bankruptcy Procedure 3017(d) ..................................................................... 10

<u>Secondary Sources and Legislative History</u>

5 COLLIER ON BANKRUPTCY 71, 129.02[11], 1129-34 ......................................................... 17

7 COLLIER ON BANKRUPTCY 71, 122.03 [i].............................................................................. 3

H.R. Rep. No. 95-595 ................................................................................................................. 3

S. Rep. No. 95-989 ...................................................................................................................... 3

Debtor and debtor in possession Blossom Valley Investors, Inc. (the "Debtor"), by and through its undersigned counsel, hereby submits this memorandum in support of confirmation of the Debtor's Revised Second Amended Chapter 11 Plan of Reorganization (Dated May 16, 2011) (the "Plan"), pursuant to section 1129 of the title 11 of the United States Code (the "Bankruptcy Code").[1] Filed concurrently herewith is the Declaration of Michael Bergthold in support of the memorandum and the Declaration of Abigail V. O'Brient regarding voting on the Plan.

## I.

## OVERVIEW

On May 16, 2011, the Debtor filed the Plan. On May 18, 2011, the Debtor served the Plan, the approved Revised Second Amended Disclosure Statement in Support of the Plan (the "Disclosure Statement"), and the Order Approving the Disclosure Statement and Fixing Time for Filing Acceptances and Rejections of the Plan, Combined with Notice Thereof on all parties required by Federal Rules of Bankruptcy Procedure 2002 and 3017. The Debtor also mailed ballots to vote to accept or reject the Plan on all Creditors entitled to vote on the Plan—Classes 1A, 1B, 2B, 6 and 7. Classes 2B, 6 and 7 have accepted the Plan pursuant to Bankruptcy Code section 1126(c); Classes 1A and 1B (both secured tax claims) did not cast ballots accepting or rejecting the Plan but can be crammed down pursuant to section 1129(b)(2). In addition, the Plan satisfies each of the requirements of Bankruptcy Code section 1129(a). The Debtor hereby requests that this Court confirm the Plan pursuant to Bankruptcy Code section 1129.

As set forth in more detail below, the Plan provides for payment in full of Creditor claims, with interest to certain Classes of Creditors. The pertinent provisions of the Plan are as follows:[2]

1.     The Plan will be funded from the proceeds of sales of homes, lots and parcels at Messina Gardens and Oak Knoll after the Effective Date;

2.     As closings the sales of homes, lots or parcels at Messina Gardens or Oak Knoll occur, the Reorganized Debtor shall cause payments to be made to Holders of Claims in accordance with the terms of the Plan;

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.
[2] To the extent any summary of the Plan contained in this memorandum conflicts with the actual terms of the Plan, the latter shall control.

1      3.     The Plan sets forth detailed procedures governing the Reorganized Debtor's

2    allocation and distribution of funds on account of Disputed Claims, as well as the treatment of

3    undeliverable or unclaimed distributions from the Distribution Fund;

4      4.     Although the Debtor does not believe it is a party to any executory contracts or

5    unexpired leases, as of the Effective Date, all previously unrejected unexpired leases and executory

6    contracts will be deemed assumed to the extent such leases or contracts exist;

7      5.     All of the Debtor's rights with respect to Litigation, including any pending Litigation,

8    will be preserved so that such Litigation may be prosecuted by and for the benefit of the

9    Reorganized Debtor; and

10      6.     The Debtor will be discharged and released, consistent with Bankruptcy Code

11    sections 524 and 1141, as of the Effective Date, from any and all Claims, Administrative Expenses,

12    and other debts, demands and liabilities of any Creditor for which the Debtor is or is alleged to be

13    liable that arose before entry of the Confirmation Order and any and all debts of every kind,

14    character and description specified in Bankruptcy Code sections 502(g), 502(h) and 502(i).

## II.

### THE PLAN COMPLIES WITH EACH OF THE REQUIREMENTS OF SECTION 1129 AND SHOULD BE CONFIRMED

Bankruptcy Code section 1129(a) requires that the Court confirm the Plan if all sixteen subsections of that section are satisfied. The Debtor must demonstrate that the Plan satisfies the provisions of section 1129 by a preponderance of the evidence. *See Liberty Nat'l Enters. v. Ambac La Mesa Ltd. P'ship* (*In re Ambanc La Mesa Ltd. P'ship*), 115 F.3d 650, 653 (9th Cir. 1997). As demonstrated below, the Plan satisfies each of the requirements of section 1129(a) and has been accepted by all Classes of Claims or Interests entitled to vote on the Plan.

### A.    Section 1129(a)(l): The Plan Complies with All Applicable Provisions of the Bankruptcy Code

Section 1129(a)(l) of the Bankruptcy Code requires that the Plan comply with the "applicable provisions" of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(1). Although broadly worded, this provision is directed at compliance with Bankruptcy Code sections 1122 and 1123, which govern the

classification of claims and the contents of a plan, respectively. *See* H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6368; S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5912; *In re Texaco Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In determining whether a plan complies with section 1129(a)(l), reference must be made to Code sections 1122 and 1123 with respect to the classification of claims and the contents of a plan.").

### 1. Section 1122: The Plan Properly Classifies Claims and Interests

The Plan properly classifies Claims and Interests pursuant to section 1122(a) of the Bankruptcy Code. Section 1122(a) provides that a plan may place a claim or interest in a particular class if such claim or interest is substantially similar to the other claims or interests of such class. 11 U.S.C. § 1122(a). "Substantially similar" has been generally interpreted to mean similar in legal character to other claims against the debtor's assets or to other interests in the debtor. *See* 7 COLLIER ON BANKRUPTCY 71, 122.03 [i] (Alan N. Resnick & Henry J. Summer, eds., 15th ed. rev. 1995).

Section 1122 of the Bankruptcy Code provides a debtor with a large amount of flexibility to create classification schemes that will facilitate reorganization so long as there is a reasonable basis for the classification structure. *See In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) ("[a] plan proponent is afforded significant flexibility in classifying claims under 1122(a) if there is a reasonable basis for the classification scheme . . . "). Indeed, section 1122(a) does not require that all substantially similar claims or interests be placed in the same class, but rather that all claims or interests within a class be substantially similar to one another. *See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158 (3d Cir. 1993); *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060 (3d Cir. 1987); *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. at 757-58; *In re 11,111, Inc.*, 117 B.R. 471, 476 (Bankr. D. Minn. 1990). Moreover, the similarity of claims is not judged by comparing creditors' claims *inter se*, but by comparing whether the claims in the class have the same or similar legal status in relation to the debtor. *See Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1277 (5th Cir. 1992) ("Each class of creditors will be treated in the debtor's plan of reorganization based upon the similarity of its members' priority status and other legal rights against the debtor's assets.").

The Plan provides for separate classification of Claims and Interests in nine Classes based upon differences in the legal nature or priority of such Claims and Interests. As required by section 1123(a)(l) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims are not classified and are separately treated. Each of the Claims or Interests in each particular Class is substantially similar to the other Claims or Interests in such Class. Specifically, Class 1A consists of Secured Tax Claims on Messina Gardens, Class 2A of Secured Tax Claims on Oak Knoll, Class 1C of Secured Tax Claims on Grandview, Class 2A of the Secured Claim Held by Bank of the West on Messina Gardens, Class 2B of Mechanics' Liens on Messina Gardens, Class 3A of the Secured Claim Held by Bank of the West on Oak Knoll, Class 3B of the Secured Claim of Providers of Subordinated Loan on Oak Knoll, Class 4 of the Secured Claim Held by U.S. Bank on Grandview, Class 5 of Priority Unsecured Claims, Class 6 of General Unsecured Claims Not Otherwise Classified, Class 7 of Unsecured Claims Held by Insiders, and Class 8 of Existing Equity Interests.

All Claims and Interests within each Class are substantially similar to all other Claims and Interests within that Class and there is a reasonable basis for the classification scheme. In addition, the classification scheme is practical and does not violate basic priority rights or manipulate voting. Unsecured Claims are the only type of Claims that are classified separately based on the varying legal rights of those Claims. Class 6 contains General Unsecured Claims Not Otherwise Classified while Class 7 contains General Unsecured Claims Held by Insiders. Accordingly, the classification of Claims and Interests in the Plan complies with section 1122 of the Bankruptcy Code.

**2.    Section 1123: The Plan Satisfies the Mandatory and Permissive Content Requirements of the Bankruptcy Code**

**a.    Section 1123(a)**

Where the debtor is not an individual, section 1123(a) of the Bankruptcy Code requires that a plan: (i) designate classes of claims and interests; (ii) specify unimpaired classes of claims and interests; (iii) specify treatment of impaired classes of claims and interests; (iv) provide for equality of treatment within each class; (v) provide adequate means for the plan's implementation; (vi) provide for the inclusion in the reorganized debtor's charter of a prohibition against nonvoting equity securities and an appropriate distribution of voting power among the classes of securities; and

(vii) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized debtor's officers and directors. *See* 11 U.S.C. § 1123(a). As demonstrated herein, the Plan fully complies with each requirement of section 1123(a) of the Bankruptcy Code.

          **1.     The Plan Designates Classes of Claims and Interests (11 U.S.C. § 1123(a)(1))**

As required by section 1123(a)(l) of the Bankruptcy Code, Article III of the Plan designates nine Classes of Claims and Interests, other than claims arising under sections 507(a)(2) and (8) of the Bankruptcy Code. In accordance with section 1123(a)(l), Administrative Expense Claims and Priority Tax Claims have not been classified. The Plan therefore complies with section 1123(a)(l) of the Bankruptcy Code.

          **2.     The Plan Specifies Unimpaired Classes and Adequately Specifies the Treatment of Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3))**

As required by sections 1123(a)(2) and (3) of the Bankruptcy Code, Article III of the Plan specifies that:[3]

      (a)     Class 1C (Secured Tax Claims on Grandview), Class 3A (Secured Claim Held by Bank of the West on Oak Knoll), Class 3B (Secured Claim Held by Providers of Subordinated Loan on Oak Knoll), Class 4 (Secured Claim Held by US Bank on Grandview), Class 5 (Priority Unsecured Claims) and Class 8 (Existing Equity Interests) are *__unimpaired__* under the Plan and are deemed to accept the Plan;

      (b)     Class 1A (Secured Tax Claims on Messina Gardens) is impaired under the Plan and will receive payment of the amount due on each lot as the closing for that lot occurs, with interest at a rate of five percent per annum;

      (c)     Class 1B (Secured Tax Claims on Oak Knoll) is impaired under the Plan and will receive payment of the amount due on each home as each closing occurs, with interest at a rate of five percent per annum;

---

[3] The following is a brief summary of the treatment afforded each Class under the Plan and is not intended to amend, supplement or otherwise alter the treatment afforded each Class as set forth in the Plan.

(d)     Class 2A (Secured Claim Held by Bank of the West on Messina Gardens) is impaired under the Plan and will receive payment as follows:  (i) the Net Proceeds as closings occur in Messina Gardens will be distributed to the Holder of the Class 2A Claim in the amount of the Minimum Release Price set forth in the Messina Loan Documentation; (ii) the Holder of the Allowed Class 2A Claim will receive the Net Proceeds as Closings occur in Oak Knoll after payment in full of the Allowed Class 3A Claim and the funding of the Deferred Equity Account; and (iii) assuming no defaults have occurred under the Messina Loan Documents, the balance owed as of December 31, 2012 shall be amortized over twelve months and payable in four quarterly installments of principal and interest, with interest to accrue at the rate of seven percent per annum;

(e)     Class 2B (Mechanics' Liens on Messina Gardens) is impaired under the Plan and will receive payment from the Net Proceeds in excess of the Minimum Release Prices set forth in the Messina Loan Documentation as closings occur in Messina Gardens on a pro rata basis;

(f)     Class 6 (General Unsecured Claims Not Otherwise Classified) is impaired under the Plan and will receive payment from the Net Proceeds of Messina Gardens and Oak Knoll after Class 1A, 1B, 2A, 2B, 3A, 3B and 5 Claims have been paid in full and the Deferred Equity Account has been fully funded; and

(e)     Class 7 (Unsecured Claims Held by Insiders) is impaired under the Plan and will receive payment from the Net Proceeds of Messina Gardens and Oak Knoll after Class 1A, 1B, 2A, 2B, 3A, 3B, 5 and 6 Claims have been paid in full and the Deferred Equity Account has been fully funded.

The Plan therefore complies with sections 1123(a)(2) and (3) of the Bankruptcy Code.

### 3.     The Plan Provides Equal Treatment for Claims or Interests within Each Class (11 U.S.C. § 1123(a)(4))

Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). The Plan complies with section 1123(a)(4) as it provides equal treatment for all Claims or Interests within a particular Class.

### 4. The Plan Provides Adequate Means for Its Implementation (11 U.S.C. § 1123(a)(5))

Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means for the plan's implementation." Section V of the Plan provides adequate means for implementation of the Plan by providing for, among other things:

- Payment of Allowed Administrative Expenses and Claims;
- Procedures governing the Reorganized Debtor's allocation and distribution of monies on account of Disputed Claims;
- Procedures governing the Reorganized Debtor's treatment of undeliverable or unclaimed distributions; and
- The preservation of Litigation, including the right to bring Claim Objections, so that such Litigation may be prosecuted by and for the benefit of the Reorganized Debtor.

In sum, the Plan sets forth a dependable method for determination and payment of Allowed Administrative Expenses and Claims. In light of the foregoing, the Debtor submits that the Plan complies with section 1123(a)(5) of the Bankruptcy Code.

### 5. The Reorganized Debtor Will Modify its Charter Regarding Voting Equity Interests (11 U.S.C. § 1123(a)(6))

Section 1123(a)(6) of the Bankruptcy Code requires that a plan of reorganization provide for inclusion in the charter of the debtor, if the debtor is a corporation, of a provision prohibiting the issuance of nonvoting equity securities, and providing for an appropriate distribution of voting power among classes of securities possessing voting power. The proposed order confirming the Plan (the "Order") attached hereto as **Exhibit A** authorizes the Reorganized Debtor to amend its articles of incorporation to prohibit the issuance of nonvoting equity securities, and the Reorganized Debtor will file amended articles of incorporation with the Secretary of State upon entry of the Order.

### 6. The Plan Contains Adequate Provisions with Respect to the Establishment of Post-Confirmation Management (11 U.S.C. § 1123(a)(7))

As required by section 1123(a)(7) of the Bankruptcy Code, the Plan contains adequate provisions regarding the post-confirmation management of the Debtor. Section V.E of the Plan provides that BWS, Inc. will manage the Reorganized Debtor's operations.

BWS, Inc.'s management of the Reorganized Debtor is consistent with the interests of the Holders of Claims and Interests. BWS, Inc. has significant construction management experience that it will utilize to effectively oversee the completion of construction at Messina Gardens and Oak Knoll. In addition, because BWS, Inc. is wholly owned by the holders of the equity interests in the Debtor, it has a vested interest in the success of the Reorganized Debtor. Therefore, the Debtor submits that the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

Accordingly, the Plan satisfies all of the requirements of section 1123(a) of the Bankruptcy Code.[4]

### b. Section 1123(b)

Section 1123(b) sets forth various provisions that may, but need not, be included within a Chapter 11 plan, including any "provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1123(b)(6). The Plan contains several of the permissive provisions authorized by section 1123(b).

#### 1. Section 1123(b)(1)

Section 1123(b)(l) of the Bankruptcy Code allows a plan to impair or leave unimpaired any class of interests or secured or unsecured claims. Under Section III.A of the Plan, Classes 1C, 3A, 3B, 4, 5 and 8 are unimpaired, while Classes 1A, 1B, 2A, 2B, 6 and 7 are impaired, as allowed by section 1123(b)(l). *See* 11 U.S.C. § 1123(b)(l); *Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 184 B.R. 648, 654 (S.D.N.Y. 1995).

#### 2. Section 1123(b)(2)

Section 1123(b)(2) of the Bankruptcy Code specifies that a plan may, subject to Bankruptcy Code section 365, "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under [section 365]." 11 U.S.C. § 1123(b)(2); *see In re Amerivision Comms., Inc.*, 349 B.R. 718, 722 (B.A.P. 10th Cir. 2006) ("An assumption or rejection may . . . be accomplished as part of a Chapter 11 plan, obviating the need to file a separate motion as a contested matter.") Section IV of the Plan provides for the assumption of all executory

---

[4] Bankruptcy Code section 1123(a)(8) is inapplicable in the instant case because the Debtor is not an individual.

contracts and unexpired leases to which the Debtor is a party, to the extent any such contracts or leases exist.

### 3. Section 1123(b)(3)

Section 1123(b)(3) of the Bankruptcy Code provides that a plan may provide for: "(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or (B) the retention and enforcement by the debtor . . . of any such claims or interests." 11 U.S.C. § 1123(b)(3). Section V.D of the Plan provides that all Litigation, including Avoidance Actions, actions to subordinate or disallow Claims, any causes of action that could be brought by the Debtor, whether arising prior to or after the Petition Date, and any causes of action that exist under applicable bankruptcy or non-bankruptcy law, shall be retained, preserved and vested with the Reorganized Debtor free and clear of all Claims and Interests. The Plan specifically contemplates that the Reorganized Debtor will have standing to pursue any claims or interests the Debtor or the Estate may have against third parties, including avoidance actions and claim objections. The preservation of Litigation Rights, as set forth in the Plan, is allowed under section 1123(b)(3)(B) of the Bankruptcy Code. 11 U.S.C. § 1123(b)(3)(B); *see In re Associated Vintage Group, Inc.*, 283 B.R. 549, 563 (B.A.P. 9th Cir. 2002) ("A plan...may provide that particular causes of action, or categories of causes of action, are preserved and not affected by confirmation and may, likewise, prescribe terms for conducting post-confirmation litigation over specific matters or categories of matters.") (citing *In re County of Orange*, 219 B.R. 543, 564 (Bankr. C.D. Cal. 1997)).

### 4. Section 1123(b)(5)

Section 1123(b)(5) of the Bankruptcy Code provides that a plan may "modify the rights of holders of secured claims . . . or of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1123(b)(5). The modification or other treatment of Claims and Interests under Section III of the Plan is permitted under section 1123(b)(5) of the Bankruptcy Code.

### 5. Section 1123(b)(6)

Section 1123(b)(6) permits a plan to include other provisions not inconsistent with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1123(b)(6). All other provisions of the Plan not previously discussed are consistent with the applicable provisions of the Bankruptcy Code.

Based upon the foregoing, the Debtor submits that the Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code, as well as with all other provisions of the Bankruptcy Code, and thus satisfies the requirements for confirmation set forth in section 1129(a)(l).

**B.     Section 1129(a)(2): The Debtor Has Complied with the Applicable Provisions of the Bankruptcy Code**

Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The principal purpose of section 1129(a)(2) is to ensure compliance with the disclosure and solicitation requirements of sections 1125 and 1126 in the course of soliciting acceptances to the Plan. *See In re Texaco*, 84 B.R. at 906-07; *see also In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Code.").

The Court entered an order on May 18, 2011 approving the Disclosure Statement as containing "adequate information" within the meaning of section 1125(b) of the Bankruptcy Code and the Debtor served the Disclosure Statement and the Plan on those entities required by Federal Rules of Bankruptcy Procedure 2002 and 3017(d) to receive the Disclosure Statement and Plan. *See* Docket Nos. 261 and 262. Thus, the Debtor has complied with section 1125 of the Bankruptcy Code.

Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of the Plan. Under section 1126, only Holders of Allowed Claims in Impaired Classes of Claims that will receive or retain property under the Plan on account of such Claims may vote to accept or reject the Plan. As set forth in the Plan and Disclosure Statement, in accordance with section 1126 of the Bankruptcy Code, the Debtor has solicited acceptances of the Plan from the Holders of Claims in Classes 1A, 1B, 2A, 2B, 6 and 7, which are Impaired and are to receive distributions under the Plan, although it has not been finally determined which of those Claims will ultimately be allowed under section 502 of the Bankruptcy Code. The Plan reflects that Classes 1C, 3A, 3B, 4, 5 and 8 are Unimpaired and, thus, are conclusively presumed to have accepted the Plan. The Debtor did not

solicit acceptances from the Holders of Claims and Interests in such Unimpaired Classes or the Holders of Unclassified Claims or Administrative Expenses. Based upon the foregoing, the Debtor submits that the requirements of section 1129(a)(2) have been satisfied. *See In re Sound Radio, Inc.*, 93 B.R. 849, 852-53 (Bankr. D.N.J. 1988), *aff'd in part and remanded in part*, 103 B.R. 521 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir. 1990).

## C.    Section 1129(a)(3): The Plan Has Been Proposed in Good Faith and Not By Any Means Forbidden by Law

Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3); *see Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988) (requiring a showing that "the plan was proposed with honesty and good intentions"). In the context of a chapter 11 plan, courts have held that "a plan is proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code." *In re Leslie Fay Cos., Inc.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997); *see also Ryan v. Loui (In re Corey)*, 892 F.2d 829, 835 (9th Cir. 1989). The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of chapter 11. *In re Leslie Fay*, 207 B.R. at 781; *see In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986) ("Good faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process.").

In this case, the Plan was proposed in good faith in accordance with section 1129(a)(3). The Debtor filed its chapter 11 case to prevent foreclosures by Pacific National Bank, predecessor to US Bank, and to protect the value of its business for other creditors and equity holders. After lengthy negotiations with Bank of the West, the Debtor was able to secure postpetition financing, allowing the Debtor to propose a Plan that provides for its reorganization and the payment of all creditors in full.

Inasmuch as the Plan promotes the objectives and purposes of the Bankruptcy Code, including the preference for reorganization over liquidation, the Plan has been filed in good faith and the requirements of section 1129(a)(3) of the Bankruptcy Code have been satisfied. *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) ("The paramount policy and goal

of Chapter 11, to which all other bankruptcy policies are subordinated, is the rehabilitation of the debtor.") (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("the fundamental purpose of reorganization is to prevent the debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources.")).

**D.    Section 1129(a)(4): Payments Made for Professional Fees are Subject to Court Approval**

Section 1129(a)(4) has been construed to require that all payments of professional fees which are made from estate assets be subject to review and approval as to their reasonableness by the court. *See In re Drexel Burnham Lambert Groups, Inc.*, 138 B.R. at 760; *In re Texaco, Inc.*, 84 B.R. at 907-08; *In re Resorts Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990).

The court-appointed professionals in the Debtor's chapter 11 case are subject to established procedures for presenting applications for fees and reimbursement of costs and expenses set forth in sections 330 and 331 of the Bankruptcy Code. 11 U.S.C. §§ 330, 331. All fees and expenses incurred by court-appointed professionals prior to the Confirmation Date will be subject to final approval by the Court following the filing of final fee applications under section 330 of the Bankruptcy Code. These procedures for the Court's review and ultimate determination of the fees and expenses to be paid to the Debtor's professionals satisfy section 1129(a)(4) of the Bankruptcy Code.

**E.    Section 1129(a)(5): Information Regarding Post-Confirmation Management and Insiders is Adequately Disclosed in the Plan**

Section 1129(a)(5) of the Bankruptcy Code requires, in relevant part, (i) disclosure of the identity and affiliations of the proposed management of the reorganized debtor, (ii) that the appointment or continuance of such management be consistent with the interests of creditors and equity security holders and with public policy, and (iii) disclosure of the identity and nature of compensation for any insider to be employed or retained by the reorganized debtor. 11 U.S.C. § 1129(a)(5).

The Plan adequately discloses the identity of the proposed post-confirmation manager of the Reorganized Debtor. Section V.E of the Plan provides that BWS, Inc. will manage the Reorganized

Debtor's operations. The Plan also discloses that BWS, Inc. is an affiliate of the Debtor and provides that BWS, Inc. will receive a fee equal to 5% of the gross revenue produced by operations. BWS, Inc. will not receive this management fee until all Allowed Claims have been paid.

In light of the foregoing, the Debtor submits that the Plan adequately discloses the identity of post-confirmation management and insiders to be employed by the Debtor, as well as the compensation they will receive prior to payment of Allowed Claims in full. As set forth above, the Debtor further submits that management by BWS, Inc. is consistent with the interests of the Holders of Claims and Interests, as well as with public policy. As such, the Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code.

**F.    Section 1129(a)(6): The Plan Contains No Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission**

Section 1129(a)(6) requires that any regulatory commission having jurisdiction over the rates charged by the reorganized debtor in the operation of its business approve any rate change provided for in the debtor's plan. 11 U.S.C. § 1129(a)(6). This provision is inapplicable in the instant case, as the Plan does not provide for any such rate changes.

**G.    Section 1129(a)(7): The Plan is in the Best Interests of the Debtor's Creditors and Equity Interest Holders**

Section 1129(a)(7) requires that a plan be in the best interests of creditors. The so-called best interests test focuses on individual, dissenting creditors rather than classes of claims. *See Bank of America Nat'l Trust & Sav. Assoc. v. 203 North LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999). The best interests test requires that each holder of a claim or interest in an impaired class either accepts the plan or receives or retains value under the plan not less than the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7)(A); *see also 203 North LaSalle*, 526 U.S. at 441 n.13. The best interests test is applicable only when a creditor has voted to reject the Plan. 11 U.S.C. § 1129(a)(7)(A)(ii); *In re Avila*, 296 B.R. 95, 112 (Bankr. S.D.N.Y. 2003) ("The court cannot confirm a plan if the rejecting creditors within an accepting class receive less than they would in a chapter 7 case.") As set forth in Exhibit A to the Declaration of Abigail V. O'Brient Regarding Voting on, and Tabulation of, Ballots

1   Accepting the Debtor's Revised Second Amended Plan of Reorganization (Dated May 16, 2011)

2   (the "O'Brient Declaration"), no creditor has voted to reject the Plan, and thus the best interests test

3   does not apply.  If the best interests test applied, it would be satisfied because creditors receive no

4   less of a recovery under the Plan than they would in a hypothetical chapter 7 liquidation, as set forth

5   more fully in Section XII.A of the Disclosure Statement and Exhibit 3 to the Disclosure Statement.

6          Liquidation under chapter 7 would yield a less favorable result for Holders of Class 1A, 1B,

7   2A, 2B, 3A, 3B, 6 and 7 Claims.  In such a liquidation, Oak Knoll and Messina would be liquidated

8   for an amount less than the value of the secured debt against each.  Accordingly, Holders of Class

9   1A, 1B, 2A, 2B and 3A Claims would not be paid in full and Holders of Class 3B, 5, 6 and 7 Claims

10  would receive no distributions.

11  **H.     Section 1129(a)(8): Each Impaired Class Has Voted to Accept the Plan or Can Be**
12  **        Crammed Down**

13         Section 1129(a)(8) of the Bankruptcy Code requires that each class of impaired claims or

14  interests accepts the plan.  11 U.S.C. § 1129(a)(8).  A class of claims accepts a plan if the holders of

15  at least two-thirds in dollar amount and more than one-half in number of claims in that class vote to

16  accept the plan, counting only those claims whose holders actually vote.  11 U.S.C. § 1126(c).

17         Classes 1C, 3A, 3B, 4, 5 and 8 are unimpaired under the Plan and are conclusively deemed to

18  have voted to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Classes 1A, 1B,

19  2A, 2B, 6 and 7 are impaired under the Plan and were entitled to vote on the Plan prior to the voting

20  deadline of June 10, 2011 at 5:00 p.m. (the "Voting Deadline").  Attached as Exhibit C to the

21  O'Brient Declaration is a schedule of the Claimants in Classes 1A through 8, as proposed in the

22  Disclosure Statement, and the results of voting by those Claimants.  As set forth below, no impaired

23  Class has voted to reject the Plan.

24         **1.      Class 1A**

25         Class 1A consists of Secured Tax Claims against Messina Gardens.  No ballots were cast by

26  holders of Class 1A Claims.

27

28

Class 1A may be crammed down pursuant to section 1129(b)(2)(A)(i) because the holders of the Class 1A Claims will retain their liens on Messina Gardens and will receive cash payments over time equal to the allowed amount of each holder's Class 1A Claim, with interest.

**2.  Class 1B**

Class 1B consists of Secured Tax Claims against Oak Knoll. No ballots were cast by holders of Class 1B Claims.

Class 1B may be crammed down pursuant to section 1129(b)(2)(A)(i) because the holders of the Class 1B Claims will retain their liens on Oak Knoll and will receive cash payments over time equal to the allowed amount of each holder's Class 1B Claim, with interest.

**3.  Class 2A**

Class 2A is comprised of the Secured Claim held by Bank of the West against Messina Gardens. Class 2A voted unanimously to accept the Plan.

**4.  Class 2B**

Class 2B consists of Mechanics' Liens against Messina Gardens. Two votes accepting the Plan and no votes rejecting the Plan were cast by Class 2B Creditors. Therefore, Class 2B has voted to accept the Plan.

**5.  Class 6**

Class 6 consists of General Unsecured Claims Not Otherwise Classified. Four votes accepting the Plan and no votes rejecting the Plan were cast by Class 6 Creditors. Therefore, Class 6 has voted to accept the Plan.

**6.  Class 7**

Class 7 is comprised of General Unsecured Claims of Insiders. Class 7 voted unanimously to accept the Plan.

Based on the foregoing, the Debtor submits that section 1129(a)(8) has been satisfied with respect to the Plan.

**I.  Section 1129(a)(9): The Plan Provides for Payment in Full of Allowed Priority Claims**

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding allowed claims entitled to priority under section 507(a) receive specified payments under the plan. Unless the holder

of a particular claim agrees to a different treatment with respect to such claim, section 1129(a)(9) sets forth the treatment the plan must provide. 11 U.S.C. § 1129(a)(9).

### 1. U.S. Trustee Fees

Pursuant to section 1129(a)(9)(A), Section III.B.1.a of the Plan provides that all U.S. Trustee Fees due and owing will be allowed in accordance with 28 U.S.C. § 1930 and paid in Cash on the Effective Date.

### 2. Professional Fee Expenses

Pursuant to section 1129(a)(9)(A), Section III.B.1.b of the Plan provides that Professional Fee Expenses allowed under section 503(b)(2) will be paid in Cash within three business days after the date on which the Bankruptcy Court order Allowing such Expense becomes a Final Order, unless the Professional seeking payment of such Expense agrees to different payment terms. The Plan requires entities seeking payment to file a fee application or motion requesting Allowance of such Administrative Expenses on or before ninety (90) days after the Effective Date.

As of June 30, 2011, the estimated unpaid fees and expenses owing to general bankruptcy counsel, Mintz Levin Cohn Ferris Glovsky and Popeo, P.C. ("Mintz Levin"), will be approximately $325,000, and unpaid fees and expenses owing to the Debtor's financial advisor, OSAS, Inc., will be approximately $130,000. Mintz Levin currently holds in its client trust account $350,000 to pay allowed fees and expenses of professionals. The Debtor will pay allowed fees and expenses upon confirmation of the Plan. Subsequent allowed fees and expenses will be paid by the Debtor when allowed.

### 3. Ordinary Course Administrative Expenses

Pursuant to section 1129(a)(9)(A), Section III.B.1.c of the Plan provides that Ordinary Course Administrative Expenses will be paid by the Reorganized Debtor in accordance with the terms and conditions of the particular transaction that gave rise to the Administrative Expense.

### 4. Non-Ordinary Course Administrative Expenses

Pursuant to section 1129(a)(9)(A), Section III.B.1.d of the Plan provides that Allowed Non-Ordinary Course Administrative Expenses will be paid in full in Cash on or before the Effective Date, or, if not Allowed by the Effective Date, not later than ten Business Days after such

Administrative Expense is Allowed by a Final Order. The Plan requires entities seeking payment of a Non-Ordinary Course Administrative Expense to file a motion requesting allowance of the Non-Ordinary Course Administrative Expense on or before the Plan Objection Deadline. The Debtor is not aware of any Allowed but unpaid Non-Ordinary Course Administrative Expenses which would require payment on the Effective Date.

     **5.**      **Priority Tax Claims**

The Debtor is not aware of any Priority Tax Claims.

In light of the foregoing, the Debtor submits that the Plan satisfies the requirements of section 1129(a)(9).

**J.**      **Section 1129(a)(10): At Least One Class of Impaired Claims Has Accepted the Plan**

Section 1129(a)(10) of the Bankruptcy Code requires that "[i]f a class of claims is impaired under the plan, at least one class of [non-insider] claims that is impaired under the plan has accepted the plan." 11 U.S.C. § 1129(a)(10). Classes 1A, 1B, 2A, 2B and 6 are impaired non-insider Classes under the Plan. Classes 2A, 2B and 6 have voted to accept the Plan. *See* Section II.H, *supra*. Classes 2A, 2B and 6, therefore, would qualify as impaired accepting Classes within the meaning of section 1129(a)(10). As such, the Debtor submits that section 1129(a)(10) is satisfied.

**K.**      **Section 1129(a)(11): The Plan is Not Likely To Be Followed By Further Reorganization or Liquidation**

Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that the Plan is feasible as a condition precedent to confirmation. The feasibility test requires the court to determine whether the Plan is workable and has a reasonable likelihood of success. *See Internal Revenue Service v. Kaplan (In re Kaplan)*, 104 F.3d 589, 596-97 (3d Cir. 1997). The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan can be performed. The purpose of the feasibility test is to protect against speculative or unrealistic plans. *See Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) ("The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.") (quoting 5 COLLIER ON BANKRUPTCY 71, 129.02[11], 1129-34

(Allan N. Resnick & Henry J. Summer, eds., 15th ed. rev. 1984)). However, just as speculative prospects of success cannot sustain feasibility, speculative prospects of failure do not defeat feasibility. The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds. *See In re Johns-Manville Corp.*, 843 F.2d at 649 ("the feasibility standard is whether the plan offers a reasonable assurance of success...[s]uccess need not be guaranteed") (citations omitted); *In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 945 (S.D.N.Y. 1994) ("the plan proponent need only demonstrate that there exist[s] the reasonable probability that the provisions of the [p]lan can be performed" (quoting *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. at 762)).

As set forth in the Bergthold Declaration filed concurrently herewith, the income from the Debtor's operations, coupled with the postpetition financing from Bank of the West, is sufficient to fund construction and allow the Debtor to pay its creditors, while allowing the Debtor to earn income on its property. Based on the Debtor's projected cash flow, the Debtor will have sufficient funds to pay its creditors as set forth in the Plan.

Based on the foregoing, the Debtor submits the Plan is feasible and satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**L.      Section 1129(a)(12): All Statutory Fees Have Been or Will Be Paid**

Section 1129(a)(12) of the Bankruptcy Code requires that a plan provide that all fees payable under 28 U.S.C. § 1930 (consisting primarily of quarterly fees owing to the United States Trustee) be paid on or before the plan's effective date. 11 U.S.C. § 1129(a)(12). In accordance with this provision, Section III.B.1.a of the Plan provides the Reorganized Debtor will pay in Cash on the Effective Date all U.S. Trustee Fees due and owing under 28 U.S.C. § 1930. As such, the Plan satisfies the requirements of section 1129(a)(12).

**M.      Section 1129(a)(13): The Debtor is Not Required to Pay Retiree Benefits**

Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114. Section 1129(a)(13) does not apply in the instant case because the Debtor does not provide any company-sponsored retiree benefits and is not otherwise obligated to provide such benefits. Accordingly, the Plan satisfies the requirements of section 1129(a)(13).

**N.** **Sections 1129(a)(14)-(16) are not Applicable in this Case**

Section 1129(a)(14) of the Bankruptcy Code requires a debtor to pay any postpetition domestic support obligations required by a judicial or administrative order or statute. Section 1129(a)(15) contains requirements applicable to plans involving individual debtors. Section 1129(a)(16) limits the permissible transfers under a plan by a non-profit entity. As such, sections 1129(a)(14), (15) and (16) are not applicable in this case.

## III.

## CONCLUSION

Each Impaired Class has voted to accept the Plan or can be crammed down. The Plan provides for payment in full of Creditor Claims with interest to certain Classes of Creditors. In a time of economic turmoil, particularly in the residential real estate market, the result proposed by the Debtor—payment in full—can only be in the best interests of creditors and the Plan should be confirmed.

WHEREFORE, the Debtor respectfully requests that this Court enter an Order: (i) confirming the Plan pursuant to Bankruptcy Code section 1129; (ii) making such findings of fact and conclusions of law as are helpful or necessary to fulfill the purposes of the Plan; and (iii) granting such other and further relief as is just and proper.

Dated: June 16, 2011

/s/ Jeffry A. Davis
Jeffry A. Davis
Joseph R. Dunn
Abigail V. O'Brient
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.

Attorneys for Debtor in Possession
Blossom Valley Investors, Inc.